# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| OLIN CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 84 CIV 1968 (JSR) |
| | ) |
| LAMORAK INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |
| ------------------------------------------------------------------X | |
| LAMORAK INSURANCE COMPANY | ) |
| f/k/a OneBeacon America Insurance Company | ) |
| | ) |
| Third-Party Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CERTAIN UNDERWRITERS AT LLOYD'S, | ) |
| LONDON and LONDON MARKET | ) |
| INSURANCE COMPANIES, et al. | ) |
| | ) |
| CONTINENTAL CASUALTY COMPANY, | ) |
| | ) |
| GENERAL REINSURANCE CORPORATION, | ) |
| | ) |
| FIREMAN'S FUND INSURANCE COMPANY, | ) |
| | ) |
| MUNICH REINSURANCE AMERICA, INC., | ) |
| f/k/a AMERICAN RE-INSURANCE COMPANY | ) |
| | ) |
| -and- | ) |
| GREAT AMERICAN INSURANCE COMPANY | ) |
| | ) |
| Third-Party Defendants. | ) |

# MEMORANDUM OF LAW IN SUPPORT OF
# LAMORAK INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

Confidential Information Governed by Protective Order dated 11/02/17 -- REDACTED VERSION

# TABLE OF CONTENTS

<strong>Page</strong>

Preliminary Statement .................................................................................................... 1

Statement Of Facts ...................................................................................................... 5

   I. Olin's Insurance Coverage Program ...................................................................... 5

   II. Olin's Settlements With Prior Insurers .................................................................. 6

   III. Proceedings In This Court ................................................................................... 7

   IV. The Second Circuit's Decision And Mandate In Olin IV .................................... 8

Argument ...................................................................................................................... 9

   I. Standard For Summary Judgment ........................................................................ 9

   II. The New Judgment Should Include A Reduction of Limits For Amounts Due From Prior Insurers Pursuant To The Prior Insurance Provision Of Lamorak's Policies ........... 9

      A. The Prior Insurance Provision Should Be Applied As Written ...................... 9

      B. The New Judgment Against Lamorak Should Not Exceed $3.8 Million ........ 10

   III. Alternatively, If The Court Declines To Reduce Lamorak's Limits Pursuant To The Prior Insurance Provision, The Court May Follow The Third Circuit's Approach In Koppers ........ 15

      A. The New Judgment Against Lamorak Should Not Exceed $22.4 Million Under The Koppers Approach ........................................................................... 15

      B. Set-Off Of Pro Rata Shares Is Preferred Method Of Allocation In Other All Sums Jurisdictions ........................................................................................ 15

      C. Set-Off Of Pro Rata Shares Is Supported By New York Law ...................... 19

      D. Lamorak Should Only Pay Its Pro Rata Share Of Prejudgment Interest ...... 22

   IV. ████████████████████████████████████ .......................................... 23

Conclusion ................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aurecchione v. N.Y. State Div. of Human Rights*,
 771 N.E.2d 231 (N.Y. 2002) ................................................................... 23

*Bondex Int'l, Inc. v. Hartford Acc. & Indem. Co.*,
 No. 1:03-cv-01322, 2007 WL 405938 (N.D. Ohio Feb. 1, 2007) *aff'd*,
 667 F.3d 669 (6th Cir. 2011) ................................................................. 19

*Charles v. Giant Eagle Mkts.*,
 513 Pa. 474, 522 A.2d 1 (1987) ............................................................. 23

*Didner v. Keene Corp.*,
 624 N.E.2d 979 (N.Y. 1993) ................................................................... 22

*E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*,
 241 F.3d 154 (2d Cir. 2001) ............................................................ passim

*Emhart Indus. v. Century Indem. Co.*,
 559 F.3d 57 (1st Cir. 2009) .................................................................... 18

*GenCorp, Inc. v. AIU Ins. Co.*,
 297 F. Supp. 2d 995 (N.D. Ohio 2003) .................................................. 19

*In re Joint E. Dist. & S. Dist. Asbestos Litig.*,
 18 F.3d 126 (2d Cir. 1994) ..................................................................... 24

*In re N.Y.C. Asbestos Litig.*,
 593 N.Y.S.2d 43 (N.Y. App. Div. 1993), *aff'd*, 625 N.E.2d 588 (N.Y.
 1993) (emphasis added) ................................................................... 22, 24

*In re Viking Pump, Inc.*,
 52 N.E.3d 1144 (N.Y. 2016) ............................................................ passim

*Koppers Co. v. Aetna Cas. & Sur. Co.*,
 98 F.3d 1440 (3d Cir. 1996) ............................................................ passim

*Love v. State*,
 583 N.E.2d 1296 (N.Y. 1991) ................................................................. 24

*MacLean Townhomes, LLC v. Charter Oak Fire Ins. Co.*,
 No. C06-1093BHS, 2008 WL 11344648 (W.D. Wash. Aug. 18, 2008) ................ 19

*Maryland Cas. Co. v. W.R. Grace & Co.*,
    218 F.3d 204 (2d Cir. 2000)................................................................ 11, 15, 20, 25

*Mass. Elec. Co. v. Commercial Union Ins.*,
    No. 9900467B, 2005 WL 3489874 (Mass. Sup. Ct. Oct. 25, 2005)....................................... 23

*Olin Corp. v. American Home Assurance Co.*,
    704 F.3d 89 (2d Cir. 2012)................................................................ 9, 11

*Olin v. OneBeacon Am. Ins. Co.*,
    864 F.3d 130 (2d Cir. 2017).................................................................. passim

*OneBeacon Am. Ins. Co. v. Am. Motorists Ins. Co.*,
    679 F.3d 456 (6th Cir. 2012) ................................................................ 19

*RSR Corp. v. Int'l Ins. Co.*,
    No. 3:00-cv-0250-P, 2009 WL 927527 (N.D. Tex. Mar. 23, 2009)....................................... 23

*Stonewall Ins. Co. v. E.I. du Pont de Nemours & Co.*,
    996 A.2d 1254 (Del. 2010) ................................................................ 18

*United States Fid. & Guar Co. v. Treadwell Corp.*,
    58 F. Supp. 2d 77 (S.D.N.Y. 1999) ................................................................ 19

*Westinghouse Elec. Corp. v. Amer. Home Assur. Co.*,
    Nos. A-6706-01T5 & A-6720-01T5, 2004 WL 1878764 (N.J. Super.
    Ct. App. Div. July 8, 2004)................................................................ 18

*Zeig v. Mass. Bonding & Ins. Co.*,
    23 F.2d 665 (2d Cir. 1928)................................................................ passim

**Statutes**

Fed. R. Civ. P. 56................................................................ 10

Local Civil Rule 56.1 ................................................................ 1

New York General Obligations Law § 15-108 ........................................................ 21, 22, 23, 24

Defendant and Third-Party Plaintiff Lamorak Insurance Company ("Lamorak")

respectfully submits this memorandum of law, along with its Statement of Undisputed Material

Facts Pursuant to Local Civil Rule 56.1 ("56.1"), the Declaration of Thomas More Ryan, dated

January 22, 2018 (the "Ryan Decl."), the Declaration of Ralph Luongo, dated January 22, 2018

(the "Luongo Decl.") and the Declaration of Marc Scarcella, dated January 22, 2018 (the

"Scarcella Decl."), in support of its Motion for Summary Judgment.  By this motion, Lamorak

requests entry of a new post-trial judgment pursuant to the Second Circuit's instructions in *Olin*

*Corp. v. OneBeacon Am. Ins. Co.*, 864 F.3d 130, 151 (2d Cir. 2017) ("*Olin IV*").

## PRELIMINARY STATEMENT

In *Olin IV*, the Second Circuit remanded this case with instructions to enter a new

judgment that applies the Lamorak insurance policies' Prior Insurance Provision consistent with

the Circuit's guidance and the New York Court of Appeals' decision in *In re Viking Pump, Inc.*,

52 N.E.3d 1144, 1153 (N.Y. 2016) (a "New Judgment").  The Prior Insurance Provision states, in

relevant part:

> It is agreed that if any loss covered hereunder is also covered in
> whole or in part under any other excess policy issued to the Insured
> prior to the inception date hereof, ***the limit of liability hereon . . .***
> ***shall be reduced by any amounts due*** to the Insured on account of
> such loss under such prior insurance.

56.1 ¶ 11 (emphasis added).

The evidence submitted with this motion shows that the losses covered by the Lamorak

Policies are also covered by policies issued by its prior insurers in the same layer of insurance.

The evidence is the terms and conditions of the policies, the jury's findings and the fact that the

co-insurers settled, and were released from, the losses at issue here.  This satisfies any burden the

policy language puts on Lamorak to reduce its limits of liability pursuant to the Prior Insurance

Provision.  Lamorak also shows the results of calculating damages after reducing the limits of the

Confidential Information Governed by Protective Order dated 11/02/17 -- REDACTED VERSION

Lamorak Policies pursuant to the Prior Insurance Provision.  The evidence shows that the New Judgment (including prejudgment interest through February 13, 2018) should be entered in the amount of $3.8 million.

The Second Circuit invited this Court to consider the "effect," if any, of Olin's pre-trial settlements with its other insurers.[1]  The "effect" of the settlement agreements is to confirm payment of the full limits of the prior insurance policies issued by those settling insurers for each of the sites released in the settlements.  In *Zeig v. Mass. Bonding & Ins. Co.*, 23 F.2d 665, 666 (2d Cir. 1928) and *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154 (2d Cir. 2001), the Second Circuit considered similar questions to the one presented here and concluded that a policyholder's settlement with one insurer should, for purposes of determining the liability of a non-settling insurer, be treated as though the full share of the settling insurer's liabilities was paid.  *Id.* at 172–73.  Thus, here, this Court should treat the settling insurers as having paid a full policy limit for each of the released environmental sites.  For purposes of the Prior Insurance Provision, the full policy limits were amounts due to Olin for each site, and, through the settlements, are amounts paid.  Accordingly, the Court should reduce Lamorak's limits by the full policy limits of the settling insurers for each site.  As set forth in the Scarcella Declaration, the result of these calculations is that Lamorak owes a total of $3.8 million, under all of the Lamorak Policies listed in Olin's Third Amended Complaint, for the Five Sites.

---

[1]   As discussed below, Olin's settlement agreements with its other insurers were not before the Second Circuit.  Further, because the New York Court of Appeals only recently adopted an all sums approach to allocation in *Viking Pump*, courts in the Second Circuit have not, to date, had the opportunity to evaluate the effect of a policyholder's settlements with certain excess insurers on a judgment against other non-settling insurers in the all sums allocation setting and where the policies contain a Prior Insurance Provision.  Accordingly, the Second Circuit remanded to this Court to determine the effect of Olin's settlements on Lamorak's liability.

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████   ████████████████████████████████

████████████████████████████████  Lamorak has proven that value equals

the amount due to Olin under each settling insurer's policies.  It is also the amount by which

Lamorak is entitled to reduce its policy limits pursuant to the Prior Insurance Provision.  Any

other result would allow a policyholder like Olin a double (or greater) recovery by manipulating

settlement agreement language or otherwise.  As explained in Sections II and III below, that is

not allowed under well-settled law in New York.

The Second Circuit held that Lamorak is liable for Olin's total losses subject to policy

limits and, among other things, the "contractual protections" of the Prior Insurance Provision.

Those contractual protections require the reduction of any Lamorak policy limit when the

insured seeks to "stack" coverage.  Thus, the premise for Lamorak's "all sums" liability is the

same principle that reduces Lamorak's policy limits when Olin seeks coverage from, or settles

with, prior insurers triggered for the same losses.  To permit recovery from Lamorak without

appropriate limits reduction in instances where the insured has already settled a loss under prior

---

[2]    While *Olin IV* did often interchange the words "amounts due" that are in the Lamorak
Policies and the phrase "amounts paid," it did not rule that the policy language "amounts
due" means amounts paid in cash.  Such a rewrite of policy language would be impermissible
under New York law and contrary to Second Circuit precedent in *Zeig* and *Squibb*.

insurance would impermissibly allow the stacking of policy limits and permit the insured a double recovery.

However, if this Court determines not to apply the plain language of the Prior Insurance Provision and reduce Lamorak's limits in accordance with Second Circuit precedent, there is nonetheless ample authority for the Court to calculate a New Judgment by holding Lamorak liable for "all sums" and applying a set-off of the pro rata shares of liability of Olin's settled insurers. In *Viking Pump* the New York Court of Appeals held for the first time that an insurer can be liable on an "all sums" basis under New York law, 52 N.E.3d at 1156, and *Olin IV* directed this Court to treat Lamorak as liable for "all sums." 864 F.3d at 149–50. Therefore, this Court can look to how other "all sums" jurisdictions determine the liability of a non-settling insurer where other insurers have settled pre-judgment: they set-off the pro rata share of co-insurers' liability in entering judgment against the non-settled insurer.

The weight of authority follows the Third Circuit's decision in *Koppers Co. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440 (3d Cir. 1996). In that case (i) the policyholder, Koppers, sought insurance coverage for remediation of environmental contamination at numerous plant and disposal sites, and (ii) all of the triggered primary insurers and some of the excess insurers had previously settled with Koppers. *Id.* at 1443. Following a jury's determinations that Koppers had incurred a total of $70 million in property damage liability, the trial court entered judgment for Koppers and held Koppers' excess insurers jointly and severally liable under an all sums theory for the full amount of that judgment without reducing it to account for Koppers' settlements with its other insurers. *Id.* The *Koppers* Court reversed and remanded for the "purpose of allowing the district court to mold the verdict to take account of the settling insurers' apportioned shares of liability." *Id.* at 1456. *Koppers* set forth two options for how to account

for the prior settlements: "either (1) reduce the judgment to account for the settling insurers'
apportioned shares of liability, or (2) permit the non-settling insurers to seek contribution from
the settling insurers and, in turn, permit the settling insurers to seek reimbursement from
Koppers." *Id.* at 1452. *Koppers* held that the first option – the "apportioned share set-off rule" –
is preferable and predicted that is the approach the Pennsylvania Supreme Court would adopt.
*Id.* As explained in detail in Section III below, there is good reason to believe that the New York
Court of Appeals would come to a similar conclusion in an "all sums" case. Applying *Koppers*
(without the Prior Insurance Provision limit reduction), the judgment against Lamorak should not
exceed $22.4 million.[3]

## STATEMENT OF FACTS[4]

### I.    Olin's Insurance Coverage Program

In 1984, Olin, a chemical manufacturing company, brought an action seeking insurance
coverage for environmental contamination at Olin manufacturing sites throughout the United
States. Over the last three decades, the case has proceeded in this Court on a site by site basis.
In 2010, Olin filed the Third Amended Complaint against Lamorak seeking indemnity for
remediation costs and other sums related to five environmental sites (the "Five Sites") under
certain excess general liability policies issued (the "Lamorak Policies"). *See* 56.1 ¶ 5.

Each of these Lamorak Policies contains the following condition to coverage, known as
"Condition C":

---

[3]   Were that not enough, if the Court accepts Olin's invitation to study its settlement
agreements ████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████.

[4]   Citations in this Section are to Lamorak's R. 56.1 Statement.

PRIOR INSURANCE AND NON-CUMULATION OF LIABILITY

It is agreed that if any loss covered hereunder is also covered in whole or in part under any other excess policy issued to the Insured prior to the inception date hereof, the limit of liability hereon . . . shall be reduced by any amounts due to the Insured on account of such loss under such prior insurance.

Subject to the foregoing paragraph and to all the other terms and conditions of this Policy in the event that personal injury or property damage arising out of an occurrence covered hereunder is continuing at the time of termination of this Policy, the Company [Lamorak] will continue to protect the Insured for liability in respect of such personal injury or property damage without payment of additional premium.

56.1 ¶ 11.  Together, the Lamorak Policies make up a small fraction of the hundreds of millions of dollars of insurance coverage provided by various insurers and available to indemnify Olin for occurrences of property damage at the Five Sites.  *See id.* ¶ 12.  In the year 1970, Lamorak issued several policies that were the subject of *Olin IV*, each of which is preceded in time by prior insurance in the same layer of coverage.  *See id*.  These other insurance policies provide substantially the same coverage as that provided by the Lamorak Policies for the Five Sites.  *Id.* ¶ 16.

## II.    Olin's Settlements With Prior Insurers

Certain Underwriters at Lloyd's, London and London Market Insurance Companies (together, "LMI"), Continental Casualty Company ("Continental") and General Reinsurance Company ("GenRe") issued the policies listed on Attachment 2 to the Scarcella Declaration that provide coverage for the Five Sites.  *See id.* ¶ 6.  ███████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████  The settlement agreements are attached as Exhibits C-F to the Luongo Declaration.

███████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████

## III.    Proceedings In This Court

After LMI, Continental and GenRe entered settlement agreements with Olin, Lamorak and Olin tried the issue of coverage for the Five Sites in year 1970. *Id.* ¶ 25.   In April and May 2015, this Court entered two judgments against Lamorak for approximately $87 million (breach of contract damages plus prejudgment interest) relating to Olin's liability for contamination at the Five Sites (the "Five Sites Judgments").  *Id.* ¶ 29.

With respect to allocation of the Five Sites Judgments, Olin selected the 1970 Lamorak Policies.  This Court, pursuant to prior rulings in the case by the Second Circuit, interpreted Condition C in those policies as requiring Lamorak to pay for damages based on a "pro rata" allocation of liability.  *Id.*  This Court also denied Lamorak's motion seeking a ruling, as a matter of law, that the Prior Insurance Provision in Condition C requires that the occurrence limits of the Lamorak Policies be reduced by the occurrence limits of any prior policy in the same layer of coverage triggered by the same occurrence, regardless of which insurer issued the earlier policy or policies.  5/29/13 Tr. 63:5-17, June 21, 2013, ECF No. 1696.  Both Lamorak and Olin appealed to the Second Circuit.  *See* Notices of Appeal, June 26, 2015, ECF Nos. 1835 & 1836.

Confidential Information Governed by Protective Order dated 11/02/17 -- REDACTED VERSION

## IV.    The Second Circuit's Decision And Mandate In Olin IV

While the appeals were pending, the New York Court of Appeals entered a decision in *Viking Pump*.  Distinguishing prior New York cases, *Viking Pump* held that a particular insurance policy that included language like Lamorak's Condition C was subject to an "all sums" allocation of liability, which essentially permits the insured to collect its total liability from any policy in effect during the periods that the damage occurred.  *In re Viking Pump, Inc.*, 52 N.E.3d 1144, 1156 (N.Y. 2016).  The *Viking Pump* court further noted that clauses like Condition C were designed to "prevent stacking, the situation in which an insured who has suffered a long term or continuous loss which has triggered coverage across more than one policy period . . . wishes to add together the maximum limits of all consecutive policies that have been in place during the period of the loss."  *Id.* at 1152.  In order to effectuate that purpose, the *Viking Pump* Court held, Condition C must be enforced "in accordance with [its] plain language . . . despite the limiting impact that [it] may have on an insured's recovery."  *Id.*

On July 18, 2017, the Second Circuit vacated the Five Sites Judgment and remanded the case to this Court for entry of a new judgment relating to the Five Sites.  *Olin IV*, 864 F.3d at 135.  With respect to the question of allocation, the Second Circuit held that an all sums allocation method should apply consistent with *Viking Pump*.  The Second Circuit further held that this Court had failed to give effect to the Prior Insurance Provision in the Lamorak Policies consistent with its prior decision in *Olin Corp. v. American Home Assurance Co.*, 704 F.3d 89 (2d Cir. 2012) ("*Olin III*").  In that decision, which addressed Olin's coverage claim against American Home Assurance Company ("American Home") for its Morgan Hill, California manufacturing sites, the Second Circuit had determined that the effect of a Prior Insurance Provision was to limit the insured's recovery for any one loss to a single limit in any policy layer.  *Id.* at 104.

Based on *Viking Pump* and *Olin III*, the Second Circuit directed that on remand, this Court is to: (i) apply an all sums allocation that allows Olin to seek indemnification from Lamorak for the full amount of damage incurred over the relevant period up to the Policies' applicable limits; (ii) reduce the limits of the Lamorak Policies by amounts due under any prior insurance policy providing for coverage for the same loss in the same layer, pursuant to the prior insurance provision in Lamorak's policy; and (iii) issue a decision in the first instance as to the effect on the judgment against Lamorak of Olin's prior "global settlement[s]" with its other insurers. *See Olin IV*, 864 F.3d at 135 n.1.

By this Motion, Lamorak requests the Court enter a judgment that includes prejudgment interest through February 18, 2018 in an amount of $3.8 million.

## ARGUMENT

### I.  Standard For Summary Judgment

Lamorak is entitled to summary judgment because the pleadings, depositions, and admissions, together with the Luongo, Ryan, and Scarcella Declarations, show that there is no genuine issue as to any material fact.  Fed. R. Civ. P. 56(c).

### II.  The New Judgment Should Include A Reduction of Limits For Amounts Due From Prior Insurers Pursuant To The Prior Insurance Provision Of Lamorak's Policies

#### A.  The Prior Insurance Provision Should Be Applied As Written

In *Olin IV*, the Second Circuit held that the Prior Insurance Provision of Lamorak's policies should apply as written so that Lamorak's limits are reduced by amounts due under prior insurance policies issued by any other insurer.  *Olin IV*, 864 F.3d at 151.  In so holding, the Second Circuit reversed the determination of this Court that the Prior Insurance Provision only applies to reduce limits when a loss is covered by another excess policy issued by Lamorak.  *Id.*

However, the Second Circuit did not decide how amounts due under prior insurance policies should be applied to reduce Lamorak's limits, or how, if at all, Olin's settlements with certain prior insurers would impact that calculation.  Instead, the Second Circuit expressly remanded the case to this Court to: "apply the [Lamorak] insurance policies' prior insurance provision and to determine the effect of Olin's prior settlements . . . on the recovery available under the [Lamorak] policies."  *Olin IV*, 864 F.3d at 135 n.1.  Although the Second Circuit refers in some instances to Lamorak's policy limits being reduced by "amounts paid," it is very clear that the Second Circuit did ***not*** determine that the effect of the settlements would be a reduction of any New Judgment by amounts previously paid in cash and specifically allocated to one or more policies for each of the Five Sites.  To the contrary, the question of how the Prior Insurance Provision should be applied and the "effect" of Olin's settlements with certain prior insurers was expressly left to this Court to decide in the first instance.  As discussed below, relevant to this Court's determination, is the Second Circuit's decisions in similar circumstances in *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154 (2d Cir. 2001), *Maryland Cas. Co. v. W.R. Grace & Co.*, 218 F.3d 204 (2d Cir. 2000), and *Zeig v. Mass. Bonding & Ins. Co.*, 23 F.2d 665, 666 (2d Cir. 1928).

### B.      The New Judgment Against Lamorak Should Not Exceed $3.8 Million

A judgment requiring Lamorak to pay up to its reduced limit accords with the language of the Lamorak Policies, as confirmed by the Second Circuit in *Olin IV*.  The Prior Insurance Provision of the Lamorak Policies states, in relevant part:

> It is agreed that if any loss covered hereunder is also covered in whole or in part under any other excess policy issued to the Insured prior to the inception date hereof, ***the limit of liability hereon . . . shall be reduced by any amounts due*** to the Insured on account of such loss under such prior insurance.

56.1 ¶ 11 (emphasis added).  As the Second Circuit held in *Olin III*, the Prior Insurance
Provision limits Olin to one occurrence limit for a single loss by reducing the occurrence limits
of each Condition C policy by the amounts due to Olin on account of such loss covered in whole
or in part by prior insurance in the same excess layer.  *Olin III*, 704 F.3d at 104 (describing the
application as "sweeping a continuing loss into the earliest triggered policy, with that policy then
fully indemnifying the insured for that loss").  Specifically, the Second Circuit held that the $1
million occurrence limit of the second American Home policy at issue must be reduced by the $1
million occurrence limit of the prior American Home policy, such that only the first of the two
policies remained available to Olin.  *Id.* at 104.  Nothing in *Olin IV* altered that holding.  Nor
does anything in *Olin IV* undercut the New York Court of Appeals' holding in *Viking Pump* that
a prior insurance provision must be enforced "in accordance with [its] plain language . . . despite
the limiting impact that [it] may have on an insured's recovery."  *In re Viking Pump, Inc.*, 52
N.E.3d 1144, 1152 (N.Y. 2016).

Accordingly, in this case, the Prior Insurance Provision in Lamorak's Policies must
operate to reduce Lamorak's limits by the limits of prior excess policies applicable to a particular
loss under policies issued by any settled insurers.  The chart below provides an illustration of
how this applies in practice.  Specifically, in the years prior to 1970, Lamorak as well as other
insurers issued multiple successive policies that also contain Prior Insurance Provisions and that
are in the same layers of coverage as the 1970 Lamorak Policies.  *See* Ryan Decl. ¶ 15; 56.1 ¶
17.  Three of the 1970 Lamorak Policies are depicted in the chart as yellow blocks labeled "A,"
"B," and "C."  The relevant prior excess policies that sit in the same level as those three Lamorak
Policies are depicted in the chart as light blue blocks.



In the illustration above, where the insured has settled losses under prior insurance, the

Prior Insurance Provision must be applied so that the $1 million limit of Lamorak Policy A is

reduced by the limit of any of the three prior excess policies that attach at the same level (*i.e.*,

$300,000); the $4 million limit of Lamorak Policy B is reduced by the limit of any of the three

prior excess policies that attach at the same level (*i.e.*, $1,300,000); and the $15 million limit of

Lamorak Policy C is reduced by the limit of any of the three prior excess policies that attach at

the same level (*i.e.*, $5.3 million) to the extent those settled limits apply to the same loss. These

same calculations must be applied to all of the 1970 Lamorak Policies listed in Olin's Third

Amended Complaint. As set forth in the Scarcella Declaration, the result of these calculations is

that Lamorak owes a total of $3.8 million, under all of the Lamorak Policies listed in Olin's

Third Amended Complaint, for the Five Sites.

Importantly, the fact that Olin entered into settlements with its prior insurers, including LMI, Continental and GenRe, does not change this calculus.  As set forth above, the Court should rule that those settlements constitute a payment of the amounts due under those settling insurers' policies, which are the full limits of each settled policy for each released environmental site, including the Five Sites at issue.  Because those policy limits are amounts due and amounts paid under the insurers' settlement agreements, this Court should apply those policy limits to reduce Lamorak's limits pursuant to the Prior Insurance Provisions in Lamorak's policies.  Such a ruling prevents the stacking of Lamorak policy limits with prior settled coverage in the same layer, is in accordance with the Prior Insurance Provision, prevents a double recovery by Olin, and is in accord with longstanding Second Circuit precedent.

For example, in *Zeig v. Mass. Bonding & Ins. Co*., 23 F.2d 665, 666 (2d Cir. 1928), the Second Circuit held that when a policyholder settles with its primary insurer, the actual amount recovered is irrelevant for purposes of determining the excess insurer's liability and instead the full limits of the primary policy are deemed to have been exhausted.  This holding was based, in part, on the Second Circuit's determination that "[t]here is no need of interpreting the word 'payment' as only relating to payment in cash.  It often is used as meaning the satisfaction of a claim by compromise, or in other ways."  *Id.*

Likewise, in *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154 (2d Cir. 2001), the Second Circuit held that where a policyholder settles with its primary insurer, the liability of the non-settling excess insurers should be determined based on an assumption that the settling insurer's liability was satisfied by its settlement, "regardless of the actual settlement amounts." *Id.* at 172–73.  The Second Circuit further recognized that the advantage to the approach adopted in *Squibb* is it places the risk of settlement on the settling parties, while the "non-settling parties

are left precisely as they would have been had no settlement occurred." *Id.* at 173.  This same principle applies in equal force here.  Olin should not permitted to manipulate Lamorak's liability or the amount of its own recovery based on the amount, terms, or timing of its prior settlements with Lamorak's co-insurers.  Indeed, as the Second Circuit has held: "[t]he contract of settlement an insurer enters into with the insured cannot affect the rights of another insurer who is not a party to it." *Maryland Cas. Co. v. W.R. Grace & Co.*, 218 F.3d 204, 211 (2d Cir. 2000).  Here, the fact that Olin settled with certain of its prior insurers ███████████████ ███████████████does not and cannot impair Lamorak's right to a full and fair reduction of its limits pursuant to the Prior Insurance Provision in its Policies.

Accordingly, the Court should find that Olin's settlements with its insurers reflect a release of policy limits that must be applied to reduce Lamorak policy limits, and the New Judgment to be entered against Lamorak should be no more than $3.8 million, calculated as follows (*see* Scarcella Decl., Figure 1):

| Remand Site | Past Costs | PJI | Past Costs Allocable to Pre-1970 Policies | PJI Allocable to Pre-1970 Policies | Lamorak Share of Past Costs Allocable Pre-1970 Policies | Lamorak Share of PJI Allocable Pre-1970 Policies | Potential Judgment Against Lamorak |
|---|---|---|---|---|---|---|---|
| Rochester | $17.1M | $25.3M | $17.1M | $25.3M | $0.6M | $1.0M | $1.6M |
| Augusta | $17.0M | $24.2M | $17.0M | $24.2M | $0.7M | $0.6M | $1.2M |
| Fields Brook | $4.8M | $7.3M | $4.8M | $7.3M | $0.0M | $0.0M | $0.0M |
| McIntosh OU2 | $15.9M | $14.8M | $15.9M | $14.8M | $0.5M | $0.5M | $1.0M |
| BROS | $3.0M | $5.7M | $3.0M | $5.7M | $0.0M | $0.0M | $0.0M |
| **TOTAL** | **$57.8M** | **$77.4M** | **$57.8M** | **$77.4M** | **$1.8M** | **$2.0M** | **$3.8M** |

### III.     Alternatively, If The Court Declines To Reduce Lamorak's Limits Pursuant To The Prior Insurance Provision, The Court May Follow The Third Circuit's Approach In Koppers

#### A.     The New Judgment Against Lamorak Should Not Exceed $22.4 Million Under The Koppers Approach

If the Court (incorrectly) declines to apply anti-stacking principles and the limit reduction language of the Prior Insurance Provision, this becomes a basic "all sums" case.  In such cases, the weight of authority applies the straightforward and efficient approach articulated in *Koppers Co. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440 (3d Cir. 1996) of applying a set-off of the pro rata shares of the damages amount of Lamorak's settled co-insurers who are joint and severally liable for the Five Sites Judgments.  This approach accounts for the policy language, the law of contribution and has the salutary effect of favoring the settlement of disputes and ending all collateral litigation related to responsibility for the subject judgment, with each responsible party allocated their fair share.  Under *Koppers,* the Court's New Judgment to be entered against Lamorak should be no more than $22.4 million, calculated as follows (see Scarcella Decl., Figure 2):

| Olin Site | Judgment for Past Costs | PJI | LMI Share of Past Costs | LMI Share of PJI | Other Share of Past Costs | Other Share of PJI | Judgment Reduction | Potential Judgment Against Lamorak |
|---|---|---|---|---|---|---|---|---|
| Rochester | $17.1M | $25.3M | $14.6M | $21.9M | $0.2M | $0.1M | $36.9M | $5.6M |
| Augusta | $17.0M | $24.2M | $13.4M | $19.4M | $0.2M | $0.1M | $33.2M | $8.0M |
| Fields Brook | $4.8M | $7.3M | $3.9M | $5.9M | $0.0M | $0.0M | $9.7M | $2.5M |
| McIntosh OU2 | $15.9M | $14.8M | $14.2M | $13.3M | $0.0M | $0.0M | $27.5M | $3.2M |
| BROS | $3.0M | $5.7M | $1.9M | $3.6M | $0.0M | $0.0M | $5.5M | $3.2M |
| **TOTAL** | **$57.8M** | **$77.4M** | **$48.0M** | **$64.1M** | **$0.5M** | **$0.2M** | **$112.8M** | **$22.4M** |

#### B.     Set-Off Of Pro Rata Shares Is Preferred Method Of Allocation In Other All Sums Jurisdictions

In 1996, the Court of the Appeals for the Third Circuit addressed the effect of an insurer settlement on a non-settling insurer in the all sums context in *Koppers Co. v. Aetna Cas. & Sur.*

Confidential Information Governed by Protective Order dated 11/02/17 -- REDACTED VERSION

*Co.*, 98 F.3d 1440 (3d Cir. 1996). In *Koppers*, (i) the policyholder, Koppers, sought insurance coverage for remediation of environmental contamination at numerous plant and disposal sites, and (ii) all of the triggered primary insurers and some of the excess insurers had previously settled with Koppers. *Id.* Following a jury's determinations that Koppers had incurred a total of $70 million in property damage liability, the trial court entered judgment for Koppers and held Koppers' excess insurers jointly and severally liable under an all sums allocation for the full amount of that judgment without reducing it to account for Koppers' settlements with its other insurers. The Third Circuit reversed and remanded for the "purpose of allowing the district court to mold the verdict to take account of the settling insurers' apportioned shares of liability." *Id.* at 1456.

*Koppers* set forth two options for how to account for the prior settlements, similar to the guidance provided by the Second Circuit in *Olin IV*: "either (1) reduce the judgment to account for the settling insurers' apportioned shares of liability, or (2) permit the non-settling insurers to seek contribution from the settling insurers and, in turn, permit the settling insurers to seek reimbursement from Koppers." *Id.* at 1452. Importantly, both of these options preclude the policyholder from obtaining a "double recovery" – something that the Second Circuit expressly directed this Court to avoid in recalculating a New Judgment – by precluding the policyholder from both obtaining the benefit of settlements with some of its insurers, while seeking duplicate "all sums" liability from other non-settled insurers. *Olin IV*, 864 F.3d at 150.

Nonetheless, *Koppers* held that the first option – the "apportioned share set-off rule" – is preferable and predicted that is the approach the Pennsylvania Supreme Court would adopt.

*Koppers*, 98 F.3d at 1452.[5]  Specifically, *Koppers* held that "the apportioned share set-off rule is superior to a rule permitting (or requiring) suits for contribution and indemnity because the former rule promotes both judicial economy and settlement—while also avoiding collusive settlements by placing the burden of a low settlement on the plaintiff."  *Id.* at 1453 n.15.

The *Koppers* decision is hardly an outlier.  To the contrary, courts in other jurisdictions that apply the all sums method of allocation have taken the same approach and, rather than require the targeted joint and several insurer to seek contribution from settled its co-insurers in subsequent rounds of litigation, those courts have applied, on the front-end calculation of a judgment, a set-off of pro rata shares of those settled insurers.  *See, e.g.*, *Emhart Indus. v. Century Indem. Co.*, 559 F.3d 57, 73–74 (1st Cir. 2009) (affirming district court's allocation of costs where selected insurer was given set-off based on "the combined pro rata shares of other settling (primary and excess) insurers" (quoting *Koppers*, 98 F.3d at 1455)); *Stonewall Ins. Co. v. E.I. du Pont de Nemours & Co.*, 996 A.2d 1254, 1260–61 (Del. 2010) (affirming trial court's decision to apply set-offs based on equitable shares of settled insurers rather than on amounts paid); *Westinghouse Elec. Corp. v. Amer. Home Assur. Co.*, Nos. A-6706-01T5 & A-6720-01T5, 2004 WL 1878764, at *9–*13 (N.J. Super. Ct. App. Div. July 8, 2004) (selected insurers received credits for pro rata shares of settling insurers; calculation of pro rata share was governed by state law).[6]

---

[5]   The Pennsylvania Supreme Court has not issued a decision on this question; accordingly, courts in the Third Circuit and around the country cite the Third Circuit's decision in *Koppers* as controlling law.

[6]   As this Court may recall, Olin has cited cases outside of the Second Circuit in an attempt to argue that Lamorak may not seek contribution against its settled co-insurers.  Notably, in each of these cases, the courts declined to allow contribution against settled insurers **on the grounds that applying a set-off of those insurers' liability was preferable**.  *See, e.g.*, *OneBeacon Am. Ins. Co. v. Am. Motorists Ins. Co.*, 679 F.3d 456, 463–64 (6th Cir. 2012) ("Normally, as in *Koppers*, the reviewing court may reduce the amount of the underlying

Because the New York Court of Appeals only recently adopted an all sums approach to allocation in *Viking Pump*, courts in the Second Circuit have not, to date, had the opportunity to evaluate the effect of a policyholder's settlements with certain excess insurers on a judgment against other non-settling insurers in the all sums allocation setting.  They have, nonetheless, relied on *Koppers* in analogous contexts.  *See, e.g.*, *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos*., 241 F.3d 154, 173 (2d Cir. 2001) (citing *Koppers* for proposition that non-settling insurers are entitled to setoff for pro rata share of settled policies because "the settling parties are the ones who took the risk of the settlement"); *United States Fid. & Guar Co. v. Treadwell Corp*., 58 F. Supp. 2d 77, 96–97 (S.D.N.Y. 1999) (citing *Koppers* throughout explanation of how all sums allocation works and noting "if the joint and several approach is warranted, . . . the question of whether to prorate to Treadwell would merely be postponed to a second proceeding").

---

verdict to reflect settlement credits because both the decision against the excess insurer and the action for contribution emanate from the same litigation"); *MacLean Townhomes, LLC v. Charter Oak Fire Ins. Co.*, No. C06-1093BHS, 2008 WL 11344648, at *3 (W.D. Wash. Aug. 18, 2008) (non-settling insurers could not seek contribution but were entitled to offset to remaining claims and could prove proportionate liability at trial); *Bondex Int'l, Inc. v. Hartford Acc. & Indem. Co.*, No. 1:03-cv-01322, 2007 WL 405938, at *4 (N.D. Ohio Feb. 1, 2007) ("[A]llowing contribution actions by those parties is not the only way for those parties to protect themselves if [the policyholders] chose to settle their claims against [another insurer] for less than the coverage limit in the [respective] policies.  [The non-settling insurers] are still protected, to the same degree they were before, by the terms of their insurance policy contracts . . . [and] are also able to assert that the settlement from [the settling insurer] should reduce whatever award is made against them, to ensure that the risk of settling too low remains where it should—on [the policyholders]."), *aff'd, Bondex Int'l, Inc. v. Hartford Acc. & Indem. Co*., 667 F.3d 669 (6th Cir. 2011); *GenCorp, Inc. v. AIU Ins. Co.*, 297 F. Supp. 2d 995, 1001 (N.D. Ohio 2003) ("By GenCorp's logic, all defendants who do not settle should be penalized for their reluctance regardless of the merits of their claims [by refusing credits for settlements].  As defendants note, Ohio law encourages settlement; it does not require it. . . . Nothing in the cases cited by GenCorp supports the proposition that a party with meritorious or even arguable claims should be penalized for failing to compromise its position rather than take those claims to trial").

### C.  Set-Off Of Pro Rata Shares Is Supported By New York Law

Decisions by New York courts in analogous contexts confirm that the judgment entered against a non-settled insurer following an all sums allocation should be reduced, at the very least, by the pro rata shares of settled insurers as in *Koppers*.  Indeed, as discussed above, New York courts have expressly adopted the principles underlying the Third Circuit's decision in *Koppers*, including that an insured cannot be awarded a "double recovery" and, relatedly, that the risk of settlement between a policyholder an insurer should fall squarely on those parties to the settlement, and should not in any way impact the liability of any third party insurer.

*First*, the Second Circuit has held in *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154 (2d Cir. 2001) that where a policyholder settles with its primary insurer, the non-settling excess insurers are entitled to a set-off of the primary insurers' pro rata shares of liability, rather than a set-off of the amounts paid under the settlement.  Citing *Koppers*, the *Squibb* Court held that the best approach in this setting was to (i) determine the pro rata shares of all of the insurers "as if there had been no settlements," and (ii) treat "the settling insurers' portions as satisfied by the settlements regardless of the actual settlement amounts."  *Id.* at 172–73.  The decision is premised on the principle, well-established in New York law, that the risk of settlement should be placed on the settling parties, and not on any third party.  *See, e.g.*, *Maryland Cas. Co. v. W.R. Grace & Co.*, 218 F.3d 204, 211 (2d Cir. 2000) ("The contract of settlement an insurer enters into with the insured cannot affect the rights of another insurer who is not a party to it.").  As the Second Circuit recognized in *Squibb*, the advantage to the pro rata share set-off approach is it places the risk of settlement on the settling parties, while the "non-settling parties are left precisely as they would have been had no settlement occurred."  *Squibb*, 241 F.3d at 173.

Indeed, in *Olin IV*, the Second Circuit recognized the benefits of the pro rata set-off approach applied in *Squibb*.  *Olin IV*, 864 F.3d at 150.  Specifically, the Second Circuit held that

the effect of Olin's settlements with prior insurers must be accounted for in any New Judgment, but noted that "there is no easy way to determine the amount of [the settlements] that [are] properly associated with claims arising from the five manufacturing sites that are the focus of this appeal." *Id.* The Second Circuit further observed that the Court had "previously recognized the difficulties that arise when trying to set off an insured's recovery against prior settlements" and cited *Squibb*, which of course, avoids those very difficulties by providing set offs from that liability of the pro rata shares of non-settled insurers. *Id.*

For the reasons acknowledged by the Second Circuit in *Olin IV*, among others, the *Squibb* Court's pro rata set-off approach may be appropriately applied here. In these circumstances, the *Squibb* pro rata set-off approach should be applied as it appropriately places the risk of settlement on the settling parties, precludes Olin from obtaining a double recovery, and does not improperly impose the cost of those settlements on third-party Lamorak. *See Squibb*, 241 F.3d at 173.

*Second*, New York courts apply set-offs of equitable shares of liability to address allocation of liability among joint tortfeasors pursuant to New York General Obligations Law § 15-108. That rule provides that when one joint tortfeasor enters into a settlement, the court should reduce the liability of the remaining tortfeasors by the equitable share of liability that was settled and released:

> When a release or a covenant not to sue or not to enforce a
> judgment is given to one of two or more persons liable or claimed

> to be liable in tort for the same injury . . . it reduces the claim of
> the releasor against the other tortfeasors to the extent of any
> amount stipulated by the release or the covenant, or in the amount
> of the consideration paid for it, ***or in the amount of the released
> tortfeasor's equitable share of the damages . . . , whichever is the
> greatest***.

N.Y. Gen. Oblig. L. § 15-108 (emphasis added).  Courts have regularly applied this rule, noting

the same policies articulated in *Squibb* and *Koppers* discussed above.  For example, in applying

setoffs of equitable shares of settled defendant tortfeasors, pursuant to § 15-108, the New York

Court of Appeals affirmed a New York Appellate Division ruling, which noted:

> Where the amounts received in settlement are less than the
> equitable share collectively attributable to the settling tortfeasors,
> the plaintiff will be undercompensated to the same extent . . .
> however, ***this is entirely attributable to the plaintiff's willingness
> to compromise for less than the full amount of liability ultimately
> assessed by the jury*** . . . and is not the result of any windfall
> received by the nonsettling defendant by virtue of the method of
> computation employed.  Furthermore, ***this outcome encourages
> settlement by holding the nonsettling defendant fully liable for
> his proportionate share of the verdict while allowing the other
> defendants to reach a compromise settlement***.

*In re N.Y.C. Asbestos Litig.*, 593 N.Y.S.2d 43, 44–48 (N.Y. App. Div. 1993), *aff'd*, 625 N.E.2d

588 (N.Y. 1993) (emphasis added).  *See also Didner v. Keene Corp.*, 624 N.E.2d 979 (N.Y.

1993) (applying setoffs under § 15-108 by aggregating settlement amounts and apportioned

shares, then reducing damages by the greater of those two aggregate amounts).

    In determining the "effect" of a policyholder's settlement on the liability of a non-settled

insurer, the New York Court of Appeals would undoubtedly consider and make its determination

consistent with this state tort law.  Indeed, the determination in *Koppers* that "the apportioned

share set-off rule is superior to a rule permitting (or requiring) suits for contribution and

indemnity" was based substantially on the Pennsylvania Supreme Court's adoption of the

apportioned share set-off rule in the joint and several tort liability context.  *Koppers Co. v. Aetna*

*Cas. & Sur. Co.*, 98 F.3d 1440, 1453 (3d Cir. 1996) (citing *Charles v. Giant Eagle Mkts.*, 513 Pa.

474, 522 A.2d 1, 2–3 (1987), in which the Pennsylvania Supreme Court held that "verdict

amount against litigating defendants shall be reduced by amount of settling defendants'

apportioned share of liability regardless of amount received by plaintiff in settlement").[7]  Here,

because New York General Obligations Law § 15-108 applies a pro rata set-off in the context of

joint and several tort liability, the Court should follow the same approach in recalculating the

judgment against Lamorak.  Specifically, Lamorak is entitled to a set-off for the full pro rata

shares of the settled insurers.

### D.      Lamorak Should Only Pay Its Pro Rata Share Of Prejudgment Interest

Prejudgment interest is properly calculated on the actual damages amount charged to

Lamorak after application of the Prior Insurance Provision or the *Koppers* set-off.  Because Olin

had already settled with most of its insurers, Lamorak is liable for prejudgment interest only on

those amounts of the judgment that fall within Lamorak's share.  This result accords with the

purposes and usual application of CPLR § 5001.  The purpose of prejudgment interest is to make

a plaintiff "whole."  *Aurecchione v. N.Y. State Div. of Human Rights*, 771 N.E.2d 231, 233 (N.Y.

2002). "[I]nterest is not a penalty.  Rather, it is simply the cost of having the use of another

person's money for a specified period . . . and is not meant to punish defendants for delaying the

---

[7]   By contrast, courts that have determined to reduce a non-settling insurer's liability solely by
amounts actually paid in cash prior insurer settlements (the so-called "pro tanto" approach)
have done so based on the particular tort law applicable in those states.  *See, e.g.*, *RSR Corp.
v. Int'l Ins. Co.*, No. 3:00-cv-0250-P, 2009 WL 927527, at *15 (N.D. Tex. Mar. 23, 2009)
(applying pro tanto method because, unlike Pennsylvania and Ohio, Texas "appl[ies] the one-
satisfaction rule to tort claims, [so] the defendant seeking a settlement credit may elect to
seek a dollar-for-dollar settlement credit); *Mass. Elec. Co. v. Commercial Union Ins.*, No.
9900467B, 2005 WL 3489874, at *2 (Mass. Sup. Ct. Oct. 25, 2005) (declining to apply the
"apportioned share set-off" rule discussed in *Koppers* because "[i]n Massachusetts, a non-
settling tortfeasor is entitled to only a pro tanto credit in the amount of the actual settlement
received").

final resolution of the litigation." *Love v. State*, 583 N.E.2d 1296, 1298 (N.Y. 1991).  Therefore, under New York law, prejudgment interest is generally calculated after liability is reduced based on settlements of co-defendants.  *In re N.Y.C. Asbestos Litig*., 593 N.Y.S.2d 43 (N.Y. App. Div. 1993), *aff'd*, 625 N.E.2d 588 (N.Y. 1993) ("calculation of interest . . . [is] based upon the net verdict (as reduced for settlements pursuant to General Obligations Law § 15-108)").  In the alternative, a court may "[a]dd prejudgment interest to the verdict," then "subtract the greater of either (a) the aggregate of the settlements converted into judgment-time dollars . . . , or (b) the settling defendants' total equitable shares of liability including prejudgment interest."  *In re Joint E. Dist. & S. Dist. Asbestos Litig*., 18 F.3d 126, 132–33 (2d Cir. 1994).  Lamorak's treatment of prejudgment interest accords with these principles.



| Olin Site | Judgment for Past Costs | PJI | LMI Share of Past Costs | LMI Share of PJI | Judgment Reduction | Reduced Judgment & PJI |
|---|---|---|---|---|---|---|
| Rochester | $17.1M | $25.3M | $14.6M | $21.9M | $36.6M | $5.9M |
| Augusta | $17.0M | $24.2M | $13.4M | $19.4M | $32.8M | $8.4M |
| Fields Brook | $4.8M | $7.3M | $3.9M | $5.9M | $9.7M | $2.5M |
| McIntosh OU2 | $15.9M | $14.8M | $14.2M | $13.3M | $27.5M | $3.2M |
| BROS | $3.0M | $5.7M | $1.9M | $3.6M | $5.5M | $3.2M |
| **TOTAL** | **$57.8M** | **$77.4M** | **$48.0M** | **$64.1M** | **$112.1M** | **$23.1M** |

## <u>CONCLUSION</u>

Lamorak respectfully requests that the Court grant Lamorak's Motion for Summary

Judgment.

Dated: New York, New York
       January 22, 2018

Respectfully submitted,

SIMPSON THACHER & BARTLETT LLP

By:      /s/ *Susannah S. Geltman*
         Bryce L. Friedman  (BF9108)
         Susanna S. Geltman  (SG2243)
         425 Lexington Avenue
         New York, New York 10017-3954
         Tel.: (212) 455-2000
         Fax: (212) 455-2502
         Email: bfriedman@stblaw.com
                sgeltman@stblaw.com

KENNEDYS CMK, LLP

         Ralph J. Luongo (RL1342)
         Elaine Whiteman Klinger (EW9967)
         Bradley J. Mortensen (BM6153)
         Two Liberty Place
         50 South 16th Street, Suite 2625
         Philadelphia, PA 19102
         Tel.: (267) 479-6700
         Fax: (267) 479-6710
         Email: Ralph.Luongo@Kennedyscmk.com
                Elaine.Klinger@Kennedyscmk.com
                Bradley.Mortensen@Kennedyscmk.com

         and: 570 Lexington Avenue, 8th Floor
         New York, NY 10022
         Tel.: (646) 625-4000
         Fax: (646) 625-4044

         *Attorneys for Defendant and Third-Party Plaintiff*
         *Lamorak Insurance Company*