**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x

OLIN CORPORATION,                                   :

               Plaintiff,

                                 :       84 Civ. 1968 (JSR)

     - against -

                                 :

LAMORAK INSURANCE COMPANY,

                                 :

              Defendant.
----------------------------------------------------------------x

LAMORAK INSURANCE COMPANY
f/k/a OneBeacon America Insurance Company,        :

               Third-Party Plaintiff,

                                 :

     - against -

                                 :

CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON and LONDON MARKET                          :
INSURANCE COMPANIES, ET AL.,

                                 :

             Third-Party Defendants.
----------------------------------------------------------------x

**MEMORANDUM OF LAW IN OPPOSITION TO LAMORAK INSURANCE**
**COMPANY'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

FACTUAL BACKGROUND .......................................................................................2

   I.  Background .................................................................................................2

   II.  Proceedings In The Second Circuit....................................................3

   III. Proceedings On Remand.......................................................................6

ARGUMENT ...............................................................................................................8

   I.  Lamorak's Policy Limits May Be Reduced By The Amount Other Insurers Have Paid To Settle Claims Regarding The Five Sites, Not By The Total Policy Limits For Each Settled Policy.......................................................................................8

     A.  The Second Circuit's Decision Squarely Rejects Lamorak's Reading Of The Prior Insurance Provision Of Condition C.........................................9

     B.  New York Law Rejects Lamorak's Interpretation Of The Prior Insurance Provision Of Condition C. .......................................................11

     C.  Lamorak's Declarations Supporting Its Position Are Inadmissible.............13

   II.  The Court Should Reject Lamorak's "Set-Off" Argument................15

     A.  Lamorak's Set-Off Argument Conflicts With The Second Circuit's Ruling Concerning The Express Terms Of Lamorak's Policies.............16

     B.  Lamorak's Set-Off Argument Improperly Seeks to Reinject Equitable Contribution into This Remand Proceeding. .......................................18

   III. Lamorak Cannot Take Shelter In A Contractual Provision That Governs The Relationship Between Olin And London Market Insurers. ................19

     nd Thus Lacks Third-Party Standing To Enforce That Agreement.............19

     .............21

     .............22

CONCLUSION.........................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*APL Co. Pte. v. Blue Water Shipping U.S. Inc.*,
  779 F. Supp. 2d 358 (S.D.N.Y. 2011).................................................................................11

*Burns Jackson Miller Summit & Spitzer v. Lindner*,
  451 N.E.2d 459 (N.Y. 1983)..............................................................................................20

*Burrell v. United States*,
  467 F.3d 160, 165 (2d Cir. 2006)......................................................................................11

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993)...........................................................................................................13

*E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*,
  241 F.3d 154 (2nd Cir. 2001).......................................................................................12, 13

*Gulino v. Bd. of Educ.*,
  907 F. Supp. 2d 492, 510 (S.D.N.Y. 2012)........................................................................11

*In re Prudential Lines Inc.*,
  158 F.3d 65 (2d Cir. 1998).................................................................................................12

*In re Viking Pump, Inc.*,
  52 N.E.3d 1144 (N.Y. 2016)....................................................................................*passim*

*Keene Corp. v. Ins. Co. of N. Am.*,
  667 F.2d 1034 (D.C. Cir. 1981).........................................................................................12

*Koppers Co. v. Aetna Cas. & Sur. Co.*,
  98 F.3d 1440 (3d Cir. 1996)........................................................................................15, 16

*Mass. Elec. Co. v. Commercial Union Ins. Co.*,
  2005 WL 34898742005 (Mass. Super. Ct. Oct. 25, 2005) ...................................................19

*Olin Corp. v. Ins. Co. of N. Am.*,
  221 F.3d 307 (2d Cir. 2000)........................................................................................11, 17

*Olin Corp. v. OneBeacon Am. Ins. Co.*,
  864 F.3d 130 (2d Cir. 2017).....................................................................................*passim*

*Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of N.Y.*,
  734 F. Supp. 2d 368 (S.D.N.Y. 2010)................................................................................20

*Tyco Int'l Ltd. v. Walsh,*
    870 F. Supp. 2d 327 (S.D.N.Y. 2012) .......................................................................11

*United States v. Ben Zvi,*
    242 F.3d 89 (2d Cir. 2001) ...................................................................... 11, 13, 15

*United States v. Charley,*
    189 F.3d 1251 (10th Cir. 1999) .............................................................................14

*United States v. Feliciano,*
    223 F.3d 102 (2d Cir. 2000) ..................................................................................14

*Weyerhaeuser Co. v. Commercial Union Ins. Co.,*
    15 P.3d 115 (Wash. 2001) .....................................................................................18

*Zeig v. Massachusetts Bonding & Insurance Co.,*
    23 F.2d 665 (2d Cir. 1928) ............................................................................. 12, 13

## OTHER AUTHORITIES

Fed. R. Civ. P. 54(b) ........................................................................................ 1, 19, 23

## INTRODUCTION

The Second Circuit remanded this case to this Court with specific instructions:  "first to recalculate Lamorak's liability based on the all sums approach," and second, to "calculate what amounts were paid by other insurers to settle Olin's claims with respect to the Five Sites" and to reduce the limits of Lamorak's policies by that amount.  ECF 2024.  The Second Circuit made clear that it was Lamorak's burden "to prove its entitlement" to any policy limit reduction.  *Olin Corp. v. OneBeacon Am. Ins. Co.*, 864 F.3d 130, 151 (2d Cir. 2017).

In its motion for summary judgment, Lamorak has not even tried to meet that burden. Lamorak has not attempted to recalculate the judgment based on an all sums approach.  And Lamorak has conceded that it cannot carry its burden under the all sums approach to show that there were any "amounts paid" by Olin's prior insurers to settle Olin's claims on the Five Sites. *Id.* at 149; *see* Olin 56.1(b) ¶¶ 22-23.[1]  As a result, Lamorak's motion should be denied.  Olin requests that this Court enter a Rule 54(b) judgment for $135,995,748.98.  *See* ECF No. 2091.

In an effort to evade the questions before this Court, Lamorak has filed a motion for summary judgment that attempts to relitigate multiple aspects of the Second Circuit's holding and expand the scope of the Second Circuit's narrow mandate on remand.  Specifically, Lamorak argues that this Court should reduce Lamorak's liability by the policy limits of prior insurers, regardless of what those insurers actually paid—ignoring the Second Circuit's specific direction to reduce liability by the "amounts paid."  *Olin Corp.*, 864 F.3d at 149; *see* ECF 2024.  Lamorak then argues that the Court should set off, against Olin's recovery, the amount of loss allocated *pro rata* to other insurers based on their time on the risk—ignoring the Second Circuit's directive

---

[1] "Olin 56.1(b)" refers to Olin's contemporaneously filed Counterstatement of Material Facts in Opposition to Lamorak's Motion for Summary Judgment.  The evidence cited in Olin 56.1(b) is attached to the contemporaneously filed Declaration of Craig Martin in support of Olin's opposition to Lamorak's motion for summary judgment.

to "recalculate Lamorak's liability based on the all sums approach."  ECF 2024.  Finally,

Lamorak argues that the judgment against it should be reduced under a settlement agreement

between Olin and Certain Underwriters at Lloyd's, London, and London Market Insurance

Companies (collectively, "London Market Insurers")—ignoring that it was not a party to that

agreement and has no standing to enforce its provisions, as well as the fact that even if that

provision applied (which Olin strongly disputes), the provision has not been triggered because

Lamorak has not succeeded on a contribution action against other insurers.

This Court should resist Lamorak's thinly veiled attempts to have this Court decide what

the Second Circuit already decided.  Lamorak's motion for summary judgment should therefore

be denied.

**FACTUAL BACKGROUND**

**I.    Background**

Since 1984, Olin has been seeking indemnification from its insurers for certain costs of

remediating environmental contamination at various manufacturing sites.  *See* Olin 56.1(b)

¶¶ 3-4.  At issue in this remand from the Second Circuit is the amount Lamorak owes Olin for

remediating the "Five Sites":  Augusta, BROS, Fields Brook, McIntosh OU2, and Rochester.

Olin 56.1(b) ¶¶ 27-30.  Olin's insurance policies with Lamorak include various policies from

1970 that apply to each of these Five Sites.  Olin 56.1(b) ¶¶ 7, 25-26.

In 2013, this Court granted summary judgment to Olin regarding Lamorak's liability for

costs at the BROS site.  Olin 56.1(b) ¶¶ 28-29.  It then held a trial on Lamorak's liability to Olin

related to the McIntosh OU2, Fields Brook, August, and Rochester sites, and a jury returned a

verdict in favor of Olin.  Olin 56.1(b) ¶ 27.

The parties disagreed as to the proper method for calculating Olin's damages, and in particular, the proper construction of a condition to coverage included in each of Olin's policies with Lamorak, known as "Condition C." That provision states:

> PRIOR INSURANCE AND NON-CUMULATION OF LIABILITY
>
> It is agreed that if any loss covered hereunder is also covered in whole or in part under any other excess policy issued to the Insured prior to the inception date hereof, the limit of liability hereon … shall be reduced by any amounts due to the Insured on account of such loss under such prior insurance. ["Prior Insurance Provision"]
>
> Subject to the foregoing paragraph and to all the other terms and conditions of this Policy in the event that personal injury or property damage arising out of an occurrence covered hereunder is continuing at the time of termination of this Policy, the Company will continue to protect the Insured for liability in respect of such personal injury or property damage without payment of additional premium. ["Continuing Coverage Provision"]

Olin 56.1(b) ¶ 11.

Applying then-existing law, the Court held that the property damage at each of the Five Sites should be allocated *pro rata* to each year of the occurrence. *See* Olin 56.1(b) ¶¶ 25-29. The Court then held that Lamorak was liable to indemnify Olin for all property damage that was allocated to the year 1970—the year of Lamorak's policies. *Id.* In addition, applying the Continuing Coverage Provision of Condition C, the Court held that Lamorak was liable to indemnify Olin for property damage allocated to the years after 1970. *Id.* However, Lamorak was not deemed liable for property damage allocated to years preceding 1970. *Id.* The Court entered two judgments accordingly. Olin 56.1(b) ¶ 29.

## II.   Proceedings In The Second Circuit

Lamorak appealed both this Court's finding of liability regarding the Five Sites and its calculation of damages to the Second Circuit. Olin 56.1(b) ¶ 37. While the appeal was pending, the New York Court of Appeals clarified New York law, holding that "in policies containing

3

non-cumulation clauses or non-cumulation and prior insurance provisions," such as Condition C, "all sums is the appropriate allocation method." *In re Viking Pump, Inc.*, 52 N.E.3d 1144, 1153 (N.Y. 2016).  Under an all sums allocation method, each insurer is jointly and severally liable for *all* property damage arising from a covered occurrence, regardless of whether the property damage took place before, after, or during the insurer's policy period.  *Id.* at 1149, 1155-56.

Accordingly, after affirming this Court's findings of liability, the Second Circuit applied *Viking Pump* to hold that the judgment against Lamorak for the Five Sites needed to be recalculated on an all sums basis.  Olin 56.1(b) ¶ 43(a), (d), (f) (excerpts of Second Circuit's decision).  The Second Circuit also explained what this recalculation would entail:  "[Lamorak's] total liability to Olin . . . can be computed as Olin's total remediation cost, less $300,000 [the attachment point of the policy], at each of the manufacturing sites at issue, with Olin's total recovery capped only by the relevant policy limits"—regardless of whether the damage occurred before, during, or after the 1970 policy period.  Olin 56.1(b) ¶ 43(a).

The Second Circuit then turned to the Prior Insurance Provision of Condition C, which "requires reducing the limits of liability on the [Lamorak] policy at issue by amounts paid under any prior insurance policy at the same level of coverage that did, in fact, provide coverage to Olin for the same loss."  Olin 56.1(b) ¶ 44 (Second Circuit errata sheet).  First, the court reversed the district court and held that the provision applied to prior insurance issued by any other insurer at the same level of coverage, not just prior insurance issued by Lamorak.  Olin 56.1(b) ¶ 43(b). Second, the court emphatically rejected Lamorak's argument that the "amounts due" from prior insurers should be calculated based on the prior policies' limits of liability, rather than the amounts that prior insurers had actually paid Olin.  *Compare* Olin 56.1(b) ¶ 39, *with id.* ¶¶ 43-44.

The Second Circuit explained that the term "amounts due … on account of such loss" referred to the amounts actually paid to Olin by the prior insurers:

> Just as the all sums allocation method allows Olin to seek recovery from any insurer of its choosing up to the limits of the relevant policy, by the same token, it also requires reducing the limits of liability on the OneBeacon policy at issue by amounts paid under any prior insurance policy at the same level of coverage that did, in fact, provide coverage to Olin for the same loss.

Olin 56.1(b) ¶ 44.  The Second Circuit explained that this approach was consistent with the policy's language and the "principle animating the all sums approach" because it prevented a double recovery by Olin, while at the same time ensuring that it could recover its entire loss. Olin 56.1(b) ¶¶ 43-44.[2]

Having decided that the "amounts due" under Condition C are the amounts Olin actually received from other insurers, rather than the policy limits of prior insurance policies, the Second Circuit next "determine[d] the effect of Olin's settlements with its prior insurers—the London Market Insurers—on OneBeacon's obligations."  Olin 56.1(b) ¶ 43(d).  It held that this Court should account for "the effect of Olin's settlements" by reducing Lamorak's "limits of liability … by *amounts paid to settle claims* with respect to the five manufacturing sites at issue here." Olin 56.1(b) ¶ 43(e) (emphasis added).  It recognized that determining those amounts "presents a difficult question, since Olin recovered from the London Market Insurers in settlement of its claims for indemnification, and the record is devoid of any information about these settlements." Olin 56.1(b) ¶ 43(d).  Because "there [was] no basis in the record" to "calculate that amount," the Second Circuit "conclude[d] that remand is appropriate in order for the district court to be able to

---

[2] The Second Circuit's initial decision stated that "[j]ust as the all sums allocation method allows Olin to seek recovery from any insurer of its choosing up to the limits of the relevant policy, it also, by the same token, requires reducing the limits of liability of any prior insurance policy providing coverage for the same loss."  Olin 56.1(b) ¶ 44.  But in an errata sheet issued the following day, the Second Circuit amended that sentence as it appears in its final form.  *Id*.

enhance the record and issue a decision in the first instance as to the effect of Olin's prior"

settlements.  Olin 56.1(b) ¶ 43(e).  It held that it is "the burden of the insurer to prove its

entitlement" to a policy limit reduction under Condition C, recognizing that "there is no easy

way to determine the amount of [a global] settlement that is properly associated with claims

arising from the five manufacturing sites that are the focus of this appeal."  Olin 56.1(b) ¶¶ 43(e),

(f).

Thus, the Second Circuit held that for Lamorak "to offset its indemnification

obligations," it had the burden to prove the "amounts already paid to cover the loss by another

insurer in the same coverage tier."  Olin 56.1(b) ¶ 43(f).  The Second Circuit remanded to this

Court "for further proceedings on this issue."  *Id.*

## III.    Proceedings On Remand

On remand, Lamorak sought leave to file a third-party complaint seeking equitable

contribution for the Five Sites from insurers that had previously settled with Olin.  *See* Olin

56.1(b) ¶ 45 (ECF 2024).  The Court denied leave, concluding that allowing Lamorak to

"implead[] third-party defendants" with respect to the Five Sites "would prejudice Olin by

complicating the proceedings on remand and unduly delaying final resolution of those claims."

*Id.*  The Court explained that its task on remand was narrow and focused:  "to determine what

amounts paid by other insurers to settle claims with Olin compensated for damage stemming

from the Five Sites and to reduce Lamorak's liability by that amount."  *Id.*  Allowing a

contribution claim against other insurers would dramatically expand "the scope and nature of

proceedings on remand."  *Id.*

Evidence adduced on remand shows that Olin settled with five of the insurers that issued

policies to Olin for years prior to 1970 at the same level as the Lamorak policies.  Olin 56.1(b)

¶¶ 20, 34.  Two of those settlements ██████████████████████:



To support its computation of damages, Lamorak proffered the expert report of Marc C.

Scarcella.

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

       In support of its motion, Lamorak submitted a new declaration by Scarcella. Olin 56.1(b)

¶ 50.  Rather than ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████, Mr. Scarcella's

declaration asserts that Lamorak is entitled to a judgment reduction of more than $100 million.

*Id.*  Lamorak also offered a declaration from Thomas More Ryan, the president of Resolute

Management, Inc., which "[s]ince 2001 has been responsible for handling" Olin's claims "on

behalf of Lamorak."  Olin 56.1(b) ¶ 51.  Rather than offering his own calculation or expert

opinion, Mr. Ryan states that Lamorak is properly relying on Mr. Scarcella's analysis, and then

repeats that analysis at length.  *Id.*

## ARGUMENT

### I.    Lamorak's Policy Limits May Be Reduced By The Amount Other Insurers Have Paid To Settle Claims Regarding The Five Sites, Not By The Total Policy Limits For Each Settled Policy.

       In place of addressing the questions before this Court on remand, Lamorak's lead

argument seeks to resurrect an argument the Second Circuit has already rejected:  that "the Prior

Insurance Provision in Lamorak's Policies must operate to reduce Lamorak's limits by the limits

of prior excess policies applicable to a particular loss under policies issued by any settled

insurers."  Lamorak Br. 11.  The premise of this argument is that the "amounts due" under the

Prior Insurance provision of Condition C are calculated by determining the policy limits of other

excess policies issued at the same level of coverage, rather than amounts actually paid in

settlement.  Lamorak made that same argument to the Second Circuit, and the Second Circuit

rejected it.  Consequently, Lamorak is wrong because the Second Circuit already has said

Lamorak is wrong, and because Lamorak's argument is meritless now for the same reason the Second Circuit found it to be meritless last summer.

### A.     The Second Circuit's Decision Squarely Rejects Lamorak's Reading Of The Prior Insurance Provision Of Condition C.

Lamorak asks the Court to reduce its policy limits by the policy limits of prior insurers at the same level of coverage, rather than by the amounts those insurers actually paid to settle Olin's claims as to the Five Sites.  Lamorak, in other words, wants to treat all settled insurers as having paid out their policies in full.  Lamorak already made that same argument to the Second Circuit, which rejected it.

Lamorak argued at length in the Second Circuit—both before and after *Viking Pump*—that the "amounts due" under the Prior Insurance Provision were the policy limits of prior policies at the same level of coverage—not what Olin actually recovered under those policies. Olin 56.1(b) ¶¶ 39-41.

Throughout its opinion, the Second Circuit was clear and consistent in rejecting Lamorak's interpretation of the Prior Insurance Provision, instead holding that Lamorak's policy limits must be reduced by "*amounts paid*" by other insurers for settling the Five Sites—not by those insurers' policy limits.  Thus, the Second Circuit explicitly stated:

- "Just as the all sums allocation method allows Olin to seek recovery from any insurer of its choosing up to the limits of the relevant policy, by the same token, it also requires reducing the limits of liability on the OneBeacon policy at issue *by amounts paid* under any prior insurance policy at the same level of coverage that did, in fact, provide coverage to Olin for the same loss."  *Olin Corp.*, 864 F.3d at 149 (emphasis added).

- Lamorak's "limits of liability should be reduced *by amounts paid* to settle claims with respect to the five manufacturing sites at issue here…."  *Id.* at 150 (emphasis added).

- The Prior Insurance Provision of Condition C "allows the insurer to offset its indemnification obligations *by amounts already paid* to cover the loss by another insurer in the same coverage tier."  *Id.* at 151 (emphasis added).

Nor can Lamorak's position be squared with the purpose of the remand.  The Second Circuit remanded this case so that this Court could develop a factual record to calculate the "amounts paid to settle claims with respect to the five manufacturing sites at issue here…."  *Id.* at 150.  If the Second Circuit had accepted Lamorak's argument, no remand would have been needed because the prior insurers' policy limits were not disputed and Lamorak put evidence of the applicable policy limits under the London Market Insurers' policies into the record.  *See* Olin 56.1(b) ¶ 42.  Lamorak's position also is inconsistent with the Second Circuit's observation that calculating the "amounts due" might be particularly challenging "if … Olin entered into a global settlement" with insurers, since "there is no easy way to determine the amount of this settlement that is properly associated with claims arising from the five manufacturing sites that are the focus of this appeal."  *Olin Corp.*, 864 F.3d at 151.  According to Lamorak, there would be no need to apportion a settlement among the sites being settled; instead, one would simply reduce Lamorak's policy limits by the policy limits of prior insurers.

Last, underscoring its holding that "amounts due" refers to amounts paid, the Second Circuit specifically *amended* its opinion to reject Lamorak's position.  The initial version of the Second Circuit's opinion had one sentence that arguably supported Lamorak, stating that "[j]ust as the all sums allocation method allows Olin to seek recovery from any insurer of its choosing up to the limits of the relevant policy, it also, by the same token, requires reducing the limits of liability of any prior insurance policy providing coverage for the same loss."  Olin 56.1(b) ¶ 44.  But in an errata sheet issued the following day, the Second Circuit amended that sentence to read that Lamorak's policy limit should be reduced by "*amounts paid* under any prior insurance policy at the same level of coverage *that did, in fact, provide coverage* to Olin for the same loss."  *Id.* (emphasis added); *see also Olin Corp.*, 864 F.3d at 149-50.

In sum, consistent with the Second Circuit's prediction, discovery has borne out that in light of Olin's global settlements, Lamorak cannot meet its burden "to prove its entitlement" to a reduction of its policy limits.  *See Olin*, 864 F.3d at 151.  Faced with that reality, it is not surprising that Lamorak chose to ignore entirely the two questions before this Court on remand—how to recalculate the Five Sites judgment, and what "amounts [were] paid" by Olin's prior settled insurers to settle Olin's claims as to the Five Sites.  Lamorak may wish it could relitigate the Second Circuit's holding instead of addressing those questions.  But Lamorak's position is still meritless.  And Lamorak's attempt to relitigate these issues is procedurally barred in any event.  Under the "mandate rule," a district court hearing a case on remand cannot reconsider a decision made explicitly or implicitly by the appellate court.  *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001); *Tyco Int'l Ltd. v. Walsh*, 870 F. Supp. 2d 327, 334 (S.D.N.Y. 2012); *APL Co. Pte. v. Blue Water Shipping U.S. Inc.*, 779 F. Supp. 2d 358, 366 (S.D.N.Y. 2011).  Rather, the district court "must follow the decision of the appellate court 'where issues have been explicitly or implicitly decided on appeal.'"  *Gulino v. Bd. of Educ.*, 907 F. Supp. 2d 492, 510 (S.D.N.Y. 2012) (quoting *Burrell v. United States*, 467 F.3d 160, 165 (2d Cir. 2006)), *aff'd*, 555 F. App'x 37 (2d Cir. 2014).

### B.    New York Law Rejects Lamorak's Interpretation Of The Prior Insurance Provision Of Condition C.

Even if the Second Circuit had not already rejected its arguments, Lamorak still would not be entitled to summary judgment because its arguments fail as a matter of law.  As the New York Court of Appeals held in *Viking Pump*, "the insured [may] collect its total liability … under *any* policy in effect during the periods that damage occurred."  52 N.E.3d at 1149 (internal quotations omitted); *Olin Corp. v. Ins. Co. of N. Am.*, 221 F.3d 307, 322 (2d Cir. 2000) (explaining that under an all sums approach, "[t]he claim is paid under the policy that the insured

11

selects").  The purpose of the Prior Insurance Provision is to prevent an insured from obtaining

double recovery by stacking multiple per-occurrence limits at the same level of coverage that

cover the same loss during earlier policy periods.  *Viking Pump*, 52 N.E.3d at 1149, 1152; *Olin*

*Corp.*, 864 F.3d 150.  Thus, as the Second Circuit explained, an insurer's policy limits are

reduced by the "amounts paid" under prior policies issued at the same level.  *Olin Corp.*, 864

F.3d at 149.

 If a prior insurer does not pay out on its policy, however, then there is no prospect of

double recovery or improper "stacking."  Instead, the all sums approach allows the insured to

collect its total liability from the later insurer.  Accordingly, the later insurer is only entitled to

reduce its limits by amounts actually paid by prior insurers, because only those payments create

any risk of double recovery.  *Accord id.* at 149-50.  And crediting the later insurer for amounts

*not* paid by prior insurers would leave the insured unable to collect its total liability, thereby

defeating the purpose of the "all sums" approach.  To the extent Lamorak believes it has borne

more than its fair share of Olin's loss, *Viking Pump* places the "burden" on Lamorak to "seek

contribution from the insurers that issued the other triggered policies," to the extent such

contribution is available at all.  52 N.E.3d at 1149-50; *see also In re Prudential Lines Inc.*, 158

F.3d 65, 85 (2d Cir. 1998); *Keene Corp. v. Ins. Co. of N. Am.*, 667 F.2d 1034, 1049-50 (D.C. Cir.

1981).[3]

 In response, Lamorak cites *Zeig v. Massachusetts Bonding & Insurance Co.*, 23 F.2d 665,

666 (2d Cir. 1928), and *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154 (2nd Cir.

2001).  But neither case supports Lamorak's position—let alone overcomes the Second Circuit's

---

[3] Olin reserves the right to argue on appeal that, as a matter of New York law, a non-settling insurer cannot seek equitable contribution from a prior settled insurer.  *See* ECF No. 1994.

controlling holding in this very case.  *See, e.g., Ben Zvi*, 242 F.3d at 95 (describing mandate rule).  The court in *Zeig* held only that the attachment point of an excess policy can be reached based on a settlement with a primary insurer for less than the limit of that policy.  23 F.2d at 666. But that does not mean the specific contractual language of Condition C treats a settlement with a prior excess insurer at the same level of coverage as though that insurer fully paid to the policy limit.  As for *E.R. Squibb*, the Second Circuit held that when a primary insurer settles for an amount *greater* than its obligation, an excess insurer is not permitted to reduce its *pro rata* share by the amount that the primary insurer overpaid.  241 F.3d at 172-73.  *E.R. Squibb* says nothing about how the Prior Insurance Provision should be applied under an "all sums" framework, other than the proposition for which the Second Circuit cited *E.R. Squibb*: that "there is no easy way to determine the amount of this settlement that is properly associated with claims arising from the five manufacturing sites that are the focus of this appeal."  *Olin Corp.*, 864 F.3d at 150 (citing *E.R. Squibb*, 241 F.3d at 172 n.10).  If the Second Circuit thought *E.R. Squibb* required this Court to treat settled prior insurance policies as having fully paid out their limits, it would have said so, and it would not have remanded this case with directions for this Court to determine the amounts those settled insurers actually paid.  The Second Circuit's opinion in this case controls, and it squarely contradicts Lamorak's point.

### C.    Lamorak's Declarations Supporting Its Position Are Inadmissible.

In support of its motion, Lamorak opted not to rely on the previously disclosed opinion of its expert, Marc C. Scarcella, ███████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████     *See* Olin 56.1(b) ¶¶ 46, 48.  Olin has moved to strike that opinion pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), *see* ECF No. 2089, but that opinion ███████████████████████

███████████████████████████████████████████████████████████████████████████

███   Apparently dissatisfied with the outcome under that method, however, Lamorak now submits a new declaration from Mr. Scarcella asserting that Lamorak is entitled to an offset under Condition C of more than $100 million.  *See* Olin 56.1(b) ¶ 50.  But that new opinion is irrelevant because it is premised on Lamorak's legally erroneous theory.  Mr. Scarcella asserts that Lamorak owes Olin only $1.8 million of Olin's remediation costs (or $3.8 million including prejudgment interest), on the theory that Lamorak's policy limits must be reduced by the policy limits of all settling insurers at the same levels of coverage.  *Id.*  As discussed above, that is not the law.

Lamorak also purports to rely on the declaration of Thomas More Ryan, the president of Resolute Management, Inc., which "[s]ince 2001 has been responsible for handling" Olin's claims "on behalf of Lamorak."  Olin 56.1(b) ¶ 51.[4]  But his declaration should be excluded in its entirety.  Primarily, Mr. Ryan offers a series of legal opinions, despite having not been offered as an expert witness on any subject, explaining why he believes the Second Circuit's decision supports Lamorak.  *Id.*  This is well outside the bounds of admissible testimony.  *E.g., United States v. Feliciano*, 223 F.3d 102, 121 (2d Cir. 2000).  Beyond those legal conclusions, Mr. Ryan largely vouches for Mr. Scarcella, stating that Lamorak is properly relying on Mr. Scarcella's analysis, which Mr. Ryan repeats at length.  Olin 56.1(b) ¶ 51.  That too is inadmissible.  *United States v. Charley,* 189 F.3d 1251, 1267 (10th Cir. 1999).

---

[4] Mr. Ryan conspicuously fails to mention that Resolute also simultaneously handles Olin's claims on behalf of London Market Insurers and on behalf of Continental Casualty Company. That conflict of interest, among other reasons, is a strong reason to grant Olin's motion to intervene in Lamorak's third-party claims.  *See* ECF No. 2069.

14

**II.      The Court Should Reject Lamorak's "Set-Off" Argument.**

Lamorak attempts to relitigate the Second Circuit's ruling from a second angle.  Relying on *Koppers Co. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440 (3d Cir. 1996), Lamorak argues that the Court should "set-off" from Olin's judgment the *pro rata* share of Olin's damages apportioned to settled insurers, based on their time on the risk.  Lamorak Br. 15.  The Court should reject Lamorak's argument for two fundamental reasons.

First, the Second Circuit has already told this Court how to calculate the set-off to Lamorak's liability, based on the express terms of Lamorak's policies:  "the Second Circuit instructed this Court to calculate *what amounts were paid* by other insurers to settle Olin's claims with respect to the Five Sites and reduce Lamorak's liability by that amount."  Olin 56.1(b) ¶ 45 (emphasis added).   Lamorak's argument that its set-off should be based instead on the *pro rata* share of liability allocated to other insurers simply relitigates the question of whether loss should be allocated under a "*pro rata*" or "all sums" approach.  But that is not what Lamorak's policy says.  Lamorak already lost its argument when the Second Circuit instructed this Court to "recalculate Lamorak's liability based on the all sums approach," *id.*, and this Court cannot reconsider the Second Circuit's holding, *Ben Zvi*, 242 F.3d at 95.

Second, even if Lamorak's policy did not set forth a method for calculating set-off, Lamorak's argument would still be misplaced.  Under Lamorak's own analysis, set-off is a way to implement equitable contribution.  But this Court already decided that the issue of equitable contribution is outside the scope of proceedings on remand, and that issue is now being litigated in state court.  Lamorak should not be allowed to reinject equitable contribution into this case by relabeling it as a "set-off."

A.      **Lamorak's Set-Off Argument Conflicts With The Second Circuit's Ruling Concerning The Express Terms Of Lamorak's Policies.**

As the Second Circuit held, Lamorak's policies contain a provision describing how Lamorak intended to account for prior insurance covering the same occurrence.  Under the Prior Insurance Provision, Lamorak's "limits of liability should be reduced by *amounts paid to settle claims* with respect to the five manufacturing sites at issue here."  *Olin Corp.*, 864 F.3d at 150 (emphasis added).  The Second Circuit thus directed this Court to develop a factual record on the actual amounts paid by prior insurers to settle Olin's claims relating to the Five Sites and, to the extent Lamorak could factually establish such amounts, to reduce Lamorak's policy limits by those amounts.  That is the set-off Lamorak bargained for and this Court should reject any effort by Lamorak to expand its set-off beyond the terms of the insurance contract it drafted.

In support of its argument for an expanded set-off, Lamorak cites *Koppers*, 98 F.3d 1440, a case predicting "that the Pennsylvania Supreme Court would choose" to "reduc[e] the judgment to account for the settling insurers' apportioned shares of liability," rather than allowing "the non-settling insurers to seek contribution from the settling insurers."  *Id.* at 1452.[5] Notably, however, *Koppers* did not address the application of its holding to insurance policies like Lamorak's that contain a Prior Insurance Clause.  That contractual provision already accounts for the presence of prior insurance by reducing the later insurer's policy limits.  The express terms of the insurance contracts, which Lamorak drafted, must be given controlling effect.  *Viking Pump*, 52 N.E.3d at 1146, 1151 (reaffirming that "under New York law, the

---

[5] Olin neither endorses the procedural options mentioned in *Koppers* nor views those options as the only potential options.  Olin reserves all rights regarding the proper procedure and the substantive method for any set-off as discussed in *Koppers*, including that any set-off should be calculated using a *pro tanto* method rather than *pro rata*.

16

contract language of the applicable insurance policies controls" and that "ambiguities in an insurance policy are to be construed against the insurer" (internal quotation marks omitted)).

Indeed, Lamorak's set-off argument would make the Second Circuit's actual directive to this Court a hollow exercise. If Lamorak is correct, Lamorak may reduce its judgment based on prior insurers' *pro rata* allocation of loss based on their time on the risk, as opposed to the evidence of the actual settlement payments Olin received. If, at the end of the day, what really matters is the prior insurers' *pro rata* allocation of loss, then the process directed by the Second Circuit—determining the amount of actual settlement payments Olin received—serves no practical purpose.

Lamorak's set-off argument also defies the Second Circuit's decision in a more fundamental respect. The Second Circuit ruled that, in light of *Viking Pump*, Olin "can pursue any insurer whose policy contains Condition C, and whose policy covers property damage during the relevant period, for all damage reaching the insurer's policy layer regardless of 'when' it took place." *Olin Corp.*, 864 F.3d at 144. This marked a change from the *pro rata* allocation the Second Circuit had previously applied to Olin's loss. *See Olin Corp.*, 221 F.3d 307. As the Second Circuit explained, "*Viking Pump* departs from the 'legal fiction' that property damage can be cleanly allocated between policy years, and instead adopts a joint and several liability theory that allows the insured to seek indemnification for the full amount of damage incurred over the continuing damage period from any insurer whose policy language dictates all sums liability with language similar to Condition C." *Olin Corp.*, 864 F.3d at 144. Lamorak's set-off argument, however, effectively reimposes a *pro rata* allocation of damages—this time at the back end, rather than the front end—based on the very "legal fiction" *Viking Pump* rejected.

17

The Court thus should refuse to entertain Lamorak's set-off argument.  It is foreclosed by the express terms of the Prior Insurance Provision, and would effectively nullify the substance of both *Viking Pump* and the Second Circuit's holding.

**B.    Lamorak's Set-Off Argument Improperly Seeks to Reinject Equitable Contribution into This Remand Proceeding.**

Lamorak's set-off argument not only is foreclosed by the Second Circuit's ruling, but it is also out of bounds under this Court's November 27, 2017 Order refusing to entertain on remand any equitable contribution claim for the Five Sites.  *See* Olin 56.1(b) ¶ 45.  Lamorak's proposed "set-off" is nothing more than a thinly veiled attempt to seek the same reduction it seeks in the context of its separate equitable contribution claims.  Indeed, the set-off Lamorak seeks is almost exactly the same amount, and uses the same overarching philosophy, as the "judgment reduction" that its own expert, Mr. Scarcella, calculated based on his purported "equitable allocation" of loss to other insurers.  *See* Olin 56.1(b) ¶ 50.  But this Court already has ruled that if Lamorak wishes to pursue equitable contribution claims concerning the Five Sites, it may not do so as part of this remand proceeding.  This Court ruled that Lamorak may pursue such a claim in a separate proceeding and Lamorak has chosen to do so in New York State Supreme Court.

To be clear, Olin disputes that Lamorak's *pro rata* allocation should be applied to the Five Sites judgment in any context.  But that issue is already being litigated in state court where it is subject to several affirmative defenses by the other insurers, and if and when Olin is permitted to intervene in that action, will be the subject of even further defenses.  Among other things, Olin contends that, under the Second Circuit's ruling, the proper amount of any set-off or contribution is the amounts actually paid by prior insurers to settle Olin's claims.  That measure—known as a *pro tanto* allocation—is widely accepted in all sums jurisdictions as the proper measure for settled insurers' equitable share of a judgment.  *See, e.g.*, *Weyerhaeuser Co.*

*v. Commercial Union Ins. Co.*, 15 P.3d 115, 125-27 (Wash. 2001); *Mass. Elec. Co. v. Commercial Union Ins. Co.*, 2005 WL 34898742005, at *6 (Mass. Super. Ct. Oct. 25, 2005).  But to the extent Lamorak disagrees, that is an issue this Court directed Lamorak to raise elsewhere.  This Court thus should refuse to allow Lamorak to bring the issue back into these remand proceedings.  And any implications for prejudgment interest of any set-off or contribution that the state court might award should likewise be resolved elsewhere.

### III.   Lamorak Cannot Take Shelter In A Contractual Provision That Governs The Relationship Between Olin And London Market Insurers.

Lamorak goes even further afield of this Court's task on remand by demanding the benefit of a contractual provision between Olin and the London Market Insurers by way of a "judgment reduction."  Lamorak Br. 23.  The Court should reject that argument for three reasons.

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████

**A.**   ██████████████████████ **And Thus Lacks Third-Party Standing To Enforce That Agreement.**

█████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████   To the extent that a third-party insurer like Lamorak is entitled to an equitable contribution from a settling insurer, it should be indifferent as to how that contribution is paid—whether by the settling insurer directly, or through a reduction in the insured's judgment against it.

In New York, only the parties to a contract can enforce that contract, unless a non-party is intended to be a third-party beneficiary.  *Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of N.Y.*, 734 F. Supp. 2d 368, 376 (S.D.N.Y. 2010).  To qualify as a third-party beneficiary, Lamorak must show that:  (1) there is a valid contract between Olin and the London Market Insurers; (2) the contract was intended for Lamorak's benefit; and (3) the benefit of the contract is so immediate that a creates a duty to compensate Lamorak if the benefit is lost.  *E.g.*, *Burns Jackson Miller Summit & Spitzer v. Lindner*, 451 N.E.2d 459, 469 (N.Y. 1983).  Lamorak cannot pass that test.  ████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████

███████████████████████████████████████████████

█████████████████████████████████████   Accordingly, Lamorak lacks standing to seek enforcement of the Olin-London settlement agreement.



Indeed, this Court already has declined to hear Lamorak's equitable contribution claim regarding the Five Sites because it

21

recognized that to conduct such proceedings in this Court would improperly and unfairly delay Olin's receipt of a final judgment on the Five Sites. *See* Olin 56.1(b) ¶ 45. ████████████

█████████████████████████████████████████████████████████ Such derivative issues are properly addressed in the state court, following resolution of the equitable contribution claim, and should not delay final judgment in this Court, for the reasons this Court has already expressed.

And in all events, the inquiry Lamorak envisions is entirely outside the scope of the Second Circuit's mandate. Again, the Second Circuit instructed this Court to reassess Lamorak's obligations under the 1970 policies given the revised interpretation of Condition C under *Viking Pump*. *Olin Corp.*, 864 F.3d at 147-151 (discussing Condition C's prior insurance provision). To be sure, determining the effect of Condition C requires the Court to look to the financial terms of Olin's settlement agreement with London Market Insurers because, as the Second Circuit held, Condition C accounts for the amounts paid by the settling insurers in connection with the Five Sites. That is why the Second Circuit instructed the Court to "determine the effect of Olin's settlements with its prior insurers … on [Lamorak's] obligations"—the settlement agreement determines what amounts paid under a prior insurance policy "did, in fact, provide coverage to Olin for the same loss." *Id.* at 149-50. But Condition C, which determines Lamorak's obligations under the 1970 policies, does not depend on Olin's obligations to London under the settlement agreement.

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████



.

it still would not provide any basis for this Court to alter its judgment as part of this remand.  The Court thus should simply enter a judgment that is consistent with the Second Circuit's clear directions on remand.

## CONCLUSION

For the reasons submitted herein, this Court should deny Lamorak's Motion for Summary Judgment.

Respectfully Submitted,

OLIN CORPORATION

Dated:  February 2, 2018            */s/ Craig C. Martin*            

**JENNER & BLOCK LLP**
Craig C. Martin
Peter J. Brennan
Matthew J. Thomas
353 N. Clark Street
Chicago, Illinois 60654
312-222-9350

-- and --

**HUSCH BLACKWELL LLP**
David W. Sobelman
Jerry Ronecker
Joel B. Samson
190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105
314-480-1500

***Attorneys for Plaintiff Olin Corporation***

24

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing MEMORANDUM OF LAW IN OPPOSITION TO LAMORAK INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT was served on the following Counsel of Record via CM/ECF (redacted) and by e-mail (unredacted) on February 2, 2018:

| | |
|---|---|
| Ralph J. Luongo<br>Elaine Whiteman Klinger<br>Bradley J. Mortensen<br>Benjamin A. Blume<br>Erik B. Derr<br>Victoria Allen<br>Elizabeth A. Sutton<br>Diana M. Karnes<br>Gary S. Kull<br>KENNEDYS CMK, LLP<br>Two Liberty Place<br>Suite 2625<br>Philadelphia, PA  19102<br>Ralph.Luongo@kennedyscmk.com<br>Elaine.Klinger@kennedyscmk.com<br>Bradley.Mortensen@kennedyscmk.com<br>Benjamin.Blume@kennedyscmk.com<br>Erik.Derr@kennedyscmk.com<br>Victoria.Allen@kennedyscmk.com<br>Elizabeth.Sutton@kennedyscmk.com<br>Diana.Karnes@kennedyscmk.com<br>Gary.Kull@kennedyscmk.com<br><br>Bryce L. Friedman<br>Susannah S. Geltman<br>SIMPSON THACHER & BARTLETT  LLP<br>425 Lexington Avenue<br>New York, NY 10017-3954<br>bfriedman@stb.com<br>sgeltman@stb.com<br><br>Michael J. Balch<br>BUDD LARNER, P.C.<br>150 John F. Kennedy Parkway<br>Short Hills, NJ  07078<br>mbalch@buddlarner.com | Matthew B. Anderson<br>John McAndrews<br>William Seo<br>MENDES & MOUNT, LLP<br>750 Seventh Avenue<br>New York, NY  10019-6829<br>Matthew.Anderson@mendes.com<br>john.mcandrews@mendes.com<br>William.seo@mendes.com<br><br>Michael L. Anania<br>Gregory R. Bruno<br>FORD, MARRIN, ESPOSITO, WITMEYER & GLESER, LLP<br>Wall Street Plaza<br>New York, NY  10005<br>manania@fordmarrin.com<br>gbruno@fordmarrin.com<br><br>Robert J. Bates , Jr.<br>BATES & CAREY LLP<br>191 North Wacker Drive<br>Suite 2400<br>Chicago, IL 60606<br>rbates@batescarey.com<br><br>Miranda H. Turner<br>James P. Ruggeri<br>Joshua P. Mayer<br>SHIPMAN & GOODWIN LLP<br>1875 K Street NW, Suite 600<br>Washington, DC  20006<br>mturner@goodwin.com<br>jruggeri@goodwin.com<br>jmayer@goodwin.com |

_/s/ Gabriel K. Gillett_

25