**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x

OLIN CORPORATION,                                    :

        Plaintiff,

                                      :    84 Civ. 1968 (JSR)

    - against -

                                      :

LAMORAK INSURANCE COMPANY,

                                      :

        Defendant.
---------------------------------------------------------------x

LAMORAK INSURANCE COMPANY
f/k/a OneBeacon America Insurance Company,      :

        Third-Party Plaintiff,
                                      :

    - against -

                                      :

CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON and LONDON MARKET                          :
INSURANCE COMPANIES, ET AL.,

                                        :

        Third-Party Defendants.
---------------------------------------------------------------x

**OLIN CORPORATION'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT ON THE AMOUNT OF THE
<u>RECALCULATED JUDGMENTS ON THE FIVE REMAND SITES</u>**

1

## **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT........................................................................................................................3

I.   There is No Dispute Regarding The Calculation Of Olin's Total Remediation Costs
     Under All Sums Method. ...........................................................................................3

II.  Lamorak May Not Reduce Its Policy Limits Under the Prior Insurance Provision. .................4

III. The ███████████████ of the Olin-London Settlement Does Not Preclude
     Summary Judgment In Favor Of Olin. ........................................................................6

IV.  The Court Should Reject Lamorak's "Set-Off" Argument Based On *Koppers*. .......................7

CONCLUSION....................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*,
 241 F.3d 154 (2d Cir. 2001)...........................................................................................5, 6

*Goodrich Corp. v. Commercial Union Ins. Co.*,
 2008 WL 2581579 (Ohio App. Ct. 2008) ..........................................................................9

*Koppers Co. v. Aetna Cas. & Sur. Co.*,
 98 F.3d 1440 (3d Cir. 1996)...............................................................................................7

*Liberty Mutual Ins. Co. v. Black & Decker Corp.*,
 383 F. Supp. 2d 200 (D. Mass. 2004) ................................................................................9

*Marine Midland Bank, N.A. v. A&M Warehouse, Inc.*,
 461 N.Y.S.2d 200 (1983)...................................................................................................7

*Mass. Elec. Co. v. Commercial Union Ins. Co.*,
 2005 WL 3489874 (Mass. Super. Ct. 2005) ......................................................................9

*Olin Corp. v. OneBeacon Am. Ins. Co.*,
 864 F.3d 130 (2d Cir. 2017).......................................................................................passim

*Rock v. Reed-Prentice Div. of Package Mach. Co.*,
 39 N.Y.2d 34 (1976) ........................................................................................................10

*In re Viking Pump*, 52 N.E.3d 1144 (N.Y. 2016) ...........................................................5, 7, 8, 10

*Weyerhaeuser Co. v. Commercial Union Ins. Co.*,
 142 Wash.2d 654 (2001)..............................................................................................9, 10

**STATUTES**

N.Y. General Obligations Law § 15-108 ........................................................................................8

**INTRODUCTION**

Lamorak's opposition brief (ECF No. 2111 ("Lamorak Br.")) reflects its continuing inability to come to grips with the Second Circuit's holding: the set-off to which it is entitled under Condition C is a reduction in its policy limits by the "*amounts paid* under any prior insurance policy at the same level of coverage that did, in fact, provide coverage to Olin for the same loss." *Olin Corp. v. OneBeacon Am. Ins. Co.*, 864 F.3d 130, 149 (2d Cir. 2017) ("*Olin IV*") (emphasis added).  As the Second Circuit explained, Condition C "allows the insurer to offset its indemnification obligations by amounts already paid to cover the loss by another insurer in the same coverage tier." *Id.* at 151.  Lamorak bears the burden of establishing the amounts paid. *Id.*

Lamorak concedes it cannot meet that burden.  It does not dispute that Olin's settlements with other insurers ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Indeed, the Second Circuit anticipated that Lamorak might face this difficulty on remand. *Id.*  Nevertheless, it assigned the burden to Lamorak. *Id.*

Faced with this reality, Lamorak seeks only to relitigate the Second Circuit's holding by making the same argument now that Lamorak made before: that it is entitled to a set-off based on prior insurers' policy limits, rather than what prior insurers actually paid.  The Second Circuit rejected that argument.  As Olin explained to the Second Circuit, the settling insurers did not admit liability and thus did not acknowledge that any amounts were due.  To the contrary, they asserted numerous affirmative defenses, which they agreed to forgo in exchange for a release.  Lamorak is not entitled to benefit because it improperly chose to deny coverage, litigate to the hilt, and then, after it finally lost, presume that every other insurer would also have lost and paid out their full policy limits.  The Second Circuit rejected that argument "out-of-hand." *Id.* at 150.

1

Lamorak contends that Olin is placing "an additional burden on Lamorak to show how much Olin and its prior insurers 'intended to allocate' to the Five Sites" (Lamorak Br. 2), but that is not so. Olin's position, consistent with the Second Circuit's holding, is that Lamorak must demonstrate the "amounts already paid" by prior insurers "to cover the loss." *Olin IV*, 864 F.3d at 151. In the face ███████████████████████████████████████, that means Lamorak must show what, if any, ███████████████████ were "paid" to cover the losses at the Five Sites. Indeed, Lamorak itself acknowledged this task: its own expert ███████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████ Dissatisfied with that result, Lamorak now seeks to change course and claim a presumption that the settling insurers paid out their policy limits in full. That would impermissibly shift the burden back to Olin, and is belied by the clear holding of *Olin IV* and Lamorak's own expert's opinion.

The remainder of Lamorak's arguments are equally meritless. ████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████ ██████████████████████████████████████████████████████. But even if that provision ultimately is held to apply, *cf.* ECF No. 2124 at Parts II-III, this Court has already held that "it would be inappropriate … to determine how much the London Market Insurers owe in contribution, since that is the very subject that the New York state court is presently adjudicating." ECF No. 2123 at 9-10 n.3. Also misplaced is Lamorak's reliance on a Third Circuit decision predicting that under Pennsylvania law an insured would be entitled to a set-off equal to the *pro rata* share of loss allocated to prior insurance based on those insurers' time on the risk. That

decision did not address a policy containing Condition C, like Lamorak's.  The Prior Insurance provision in Lamorak's policies expressly addresses how to account for settled insurers:  Lamorak may reduce its policy limits by amounts prior insurers paid to settle the loss at issue.  Indeed, even when the insurance policy lacks such a provision, the majority rule in all sums jurisdictions leads to a similar result:  the set-off that a non-settling insurer may claim is simply the amount the settling insurers paid in settlement.  This method of allocating loss—called *pro tanto*—is the majority rule in all sums jurisdictions for good reason:  it holds the non-settling insurer to the benefit of its bargain by making it jointly and severally liable for "all sums" incurred by the policyholder; it ensures the policyholder can be made whole for its loss; it discourages insurers from litigating rather than meeting their contractual obligations or settling; and it prevents double recovery, by crediting the non-settling insurer for amounts the policyholder actually received for the loss.

## ARGUMENT

### I. There is No Dispute Regarding The Calculation Of Olin's Total Remediation Costs Under All Sums Method.

Lamorak does not dispute Olin's calculation of the total remediation costs, through the end of 2016, incurred at the Five Sites.  *See* ECF No. 2091 ("Olin Br.") 10-11.  Putting aside the application of the Prior Insurance Provision of Condition C, Lamorak also does not dispute that the "all sums" methodology makes it jointly and severally liable for this entire amount less $1.5 million (reflecting the $300,000-attachment point for each of the Five Sites), which is equal to $57,729,689.44, plus prejudgment interest.[1]  Olin Br. 11.

---

[1] There is no dispute about how to calculate the prejudgment interest Lamorak owes on these undisputed remediation costs. The parties' calculations differ by about $876,000 because Lamorak rounded its numbers and assumed that Olin paid certain invoices later than this Court held Olin is deemed to have paid them.  *See* Olin Br. 11.  Lamorak does not dispute this, but says it has been "unable to replicate Olin's calculations."  Lamorak Br. 14.  Prejudgment interest will be calculated when judgment is entered, and, as Lamorak acknowledges, the parties may resolve their dispute on this issue by then.  As a result, this dispute is insufficient to deny entry of summary judgment.

## II. Lamorak May Not Reduce Its Policy Limits Under the Prior Insurance Provision.

The Court's next task on remand—and the main subject of Lamorak's brief—is to determine whether Lamorak is entitled to "offset its indemnification obligations" based on Olin's prior settlement, pursuant to the policy's Prior Insurance provision. *Olin IV*, 864 F.3d at 151. The "guiding principle" of that inquiry is that Lamorak bears the burden of proving an entitlement to that offset. *Id.* Because the record before the Second Circuit was "devoid of any information about the[] settlements" Olin reached with its other insurers, the court remanded to give Lamorak the opportunity to meet its burden after "appropriate discovery" regarding these settlements. *Id.* at 150-51. That discovery is now complete.

Faced with its failure of proof, Lamorak resorts to rearguing the legal standard. It contends that it need not show what "amounts [were] paid to settle claims" for the Five Sites, *Olin IV*, 864 F.3d at 150, because it benefits from a presumption that when prior insurers settled Olin's claims, they paid their policy limits in full. *See* Lamorak Br. 5-6 (assuming "the settling insurer's liability was satisfied by its settlement" and equating "amounts paid" with policy limits). But the Second Circuit rejected that argument. Before that court, Lamorak argued that "the amounts paid in settlement for the [Five Sites] or whether specific amounts were allocated to a given site should be irrelevant. This Court should hold that … the 'amounts due' for each site is not determined by an insured's decision to accept (or forego) amounts that are due from an insurer for a covered loss in settlement, but rather by whether the settling insurers' policy is triggered based on the jury's finding in this case." Lamorak Reply Br. 26, No 15-2047 (2d Cir. July 13, 2016), Dkt. 184. If a policy is triggered, Lamorak argued, then the "amounts due" are that policy's limits.

The Second Circuit rejected Lamorak's position, repeatedly emphasizing that in applying

4

Condition C, this Court should determine the "amount paid" by the settling insurers to cover the loss incurred at the Five Sites. *Olin IV*, 864 F.3d at 149 (holding that Condition C requires "reducing the limits of liability on the OneBeacon policy at issue by amounts paid under any prior insurance policy at the same level of coverage that did, in fact, provide coverage to Olin for the same loss"); *id.* at 150 ("limits of liability should be reduced by amounts paid to settle claims" as to the Five Sites); *id.* at 151 ("the insurer [may] offset its indemnification obligations by amounts already paid to cover the loss by another insurer in the same coverage tier."); *id.* at 150-51. (directing this Court to determine "the amount of this settlement that is properly associated with claims arising from" the Five Sites); *see also* Errata Sheet, No. 15-2047 (2d Cir. July 19, 2017), Dkt. 233 (clarifying that policy limits are reduced by amounts "paid" under prior policies that "did, in fact, provide coverage to Olin for the same loss"). That is why the Second Circuit believed further fact-finding was necessary concerning the settlements. As Lamorak itself argued to the Second Circuit, if all that mattered were the policy limits of the settled policies, a remand and discovery would have been unnecessary. Lamorak Reply Br. 23-24, No 15-2047 (2d Cir. July 13, 2016), Dkt. 184 ("The jury decided which policy years are triggered by finding when … property damage occurred. Under *Viking Pump*, excess policies in those years are responsible for 'all sums' (because they have non-cumulation clauses). Those are the 'amounts due.' No further fact finding is necessary."); Lamorak Principal Br. 64-65, No. 15-2047 (2d Cir. July 13, 2016), Dkt. 183.

Lamorak relies on *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154 (2d Cir. 2001), a case it also emphasized in its Second Circuit briefs. But as the Second Circuit recognized in its decision in this case, *Squibb* is inapposite. The court in *Squibb* did not interpret the Prior Insurance provision of Condition C; it applied a *pro rata* rather than all sums allocation methodology, *id.* at 172; and it considered only whether an excess insurer should be able to *reduce* its coverage

5

obligation when a primary insurer paid in settlement an amount greater than the *pro rata* share for which it would have been liable. *Id.* at 172-73. The Second Circuit knew of *Squibb* and cited it for the only proposition it deemed relevant: namely, that in the face of a global settlement, Lamorak might have difficulty meeting its burden to establish the amount paid by prior insurers for the loss incurred at the Five Sites. *Olin IV*, 864 F.3d at 150.

There is good reason for the Second Circuit's holding. The settling insurers were never adjudged liable. They had numerous defenses to coverage, which they decided to forgo in exchange for a release of Olin's claims. If they had litigated, they might have prevailed. Lamorak should not be able to reduce its own liability on the assumption that other insurers' defenses would have been as meritless as Lamorak's proved to be. Rather, the purpose of the Prior Insurance provision—which is to prevent an insured from "stacking" coverage and recovering twice for the same loss, *id.* at 148-49—is fully satisfied by reducing Lamorak's policy limits by amounts that it can establish were actually paid for Olin's loss at the Five Sites.

### III. The ███████████████ of the Olin-London Settlement Does Not Preclude Summary Judgment In Favor Of Olin.

Lamorak next asserts that, under the terms of Olin's settlement with London, ███████



███████. Lamorak Br. 8. It is disputed, however, whether ███████

███████ or whether Lamorak is entitled to any contribution from London at all (which is the subject of a separate state court action). Those pending disputes do not preclude entering judgment now in favor of Olin against Lamorak, however. ███████

███████. As this Court has suggested, London can attempt to seek equitable relief to have any funds actually

6

paid by Lamorak put into an escrow account until those issues are resolved.  *See* ECF No. 2123 at 9-10 n.3.

### IV. The Court Should Reject Lamorak's "Set-Off" Argument Based On *Koppers*.

Finally, Lamorak contends that it is entitled to a set-off equal to the *pro rata* share of damages allocated to prior insurers, invoking *Koppers Co. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440 (3d Cir. 1996), which predicts Pennsylvania law.  Lamorak is wrong for several reasons.

First, Lamorak is simultaneously seeking equitable contribution from settled insurers.  Even *Koppers* acknowledges that it is inappropriate *both* to allow equitable contribution *and* a set-off, since both account for other insurers' policies.  98 F.3d at 1452.  Having filed a complaint pursuing equitable contribution for the Five Sites in state court, Lamorak should not simultaneously be permitted to litigate set-off in this Court.

Second, under the plain terms of its policies, Lamorak is not entitled to the *pro rata* set-off it now claims.  It is settled New York law that for issues of allocation among insurance policies, "courts first look to the language of the policy." *In re Viking Pump, Inc.*, 52 N.E.3d 1144, 1151 (N.Y. 2016); *see also Marine Midland Bank, N.A. v. A&M Warehouse, Inc.*, 461 N.Y.S.2d 200, 202 (1983) (reiterating maxim that equity must follow the law).  Here, the Prior Insurance provision, which Lamorak drafted and bargained for, expressly addresses how to account for payments by settled insurers.  As the Second Circuit explained, Lamorak's policy limits are to be reduced by the amounts other insurers paid in settlement. *Olin IV*, 864 F.3d at 150-51.  Sometimes that provision would redound to Lamorak's benefit.

7

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████ But in all events, Lamorak, as the holdout, must pay all remaining unpaid sums up to its policy limits – which is precisely what its "all sums" policies promised to do.[2]

Third, even putting aside the express language of the policy, the *pro rata* set-off rule invoked by Lamorak is not New York law. It would make pointless the New York Court of Appeals' decision to adopt an all sums method for allocating loss. The purpose of an all sums method is to allow an insured "to collect its total liability under any policy in effect during the periods that the damage occurred, up to the policy limits." *Viking Pump*, 52 N.E.3d at 1149. Lamorak's set-off rule—requiring the insured to reduce its all sums judgment by the amounts allocated *pro rata* to other insurers on the risk—would just reintroduce *pro rata* allocation.

Lamorak claims that New York tort law supports its *pro rata* set-off theory, but it is wrong. In the context of jointly and severally liable tortfeasors, N.Y. General Obligations Law § 15-108 provides for a set-off "in the amount of the consideration paid" by other tortfeasors in settlement, or by "the released tortfeasor's equitable share of the damages." A settled insurer's "equitable share of the damages" is not synonymous with its *pro rata* share. Here, for example, although other insurers agreed to settle and resolve their coverage obligations, Lamorak chose to stonewall

---

[2] ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
Unsatisfied with that amount, Lamorak chose to abandon its own expert's opinion and instead to seek $100+ million set-offs that are untethered to settlement amounts actually paid. *See* ECF No. 2095 at 14, 15, 24. Because of that tactical decision, Lamorak has not offered any evidence to meet its burden of obtaining a set-off by showing the amounts paid by prior insurers.

8

for decades, raising dozens of frivolous defenses and refusing to pay even for the portion of coverage it did not dispute. Lamorak adopted a general claims determination standard where payment depended not on whether the claim was covered, but on whether payment would allow claims handlers to hit financial targets. *See* ECF No. 1792 at 10-11; ECF No. 1832 ¶¶ 75-78. This method was based on the principle that "it's cheaper to litigate than pay a claim." ECF No. 1793-94, Ex. 25 (8/7/13 Burns Dep.) at 97:20-22. Thus, Lamorak did not conduct any investigation of Olin's claims for the Five Sites and instead forced Olin to litigate for decades. *Olin IV*, 864 F.3d at 141-42; *see also* ECF Nos. 1792 at 7-8, 1832 ¶¶ 47-51, 55-57. A court can and should consider this evidence in deciding whether it is equitable to allow Lamorak to reduce its liability at the expense of other insurers, which took their coverage obligations seriously and settled with Olin.

Indeed, other "all sums" jurisdictions have limited a set-off from an insured's judgment to amounts actually paid in settlement. *See, e.g., Goodrich Corp. v. Commercial Union Ins. Co.*, 2008 WL 2581579, at \*22-25 (Ohio App. Ct. 2008); *Mass. Elec. Co. v. Commercial Union Ins. Co.*, 2005 WL 3489874, at \*2 (Mass. Super. Ct. 2005); *Liberty Mutual Ins. Co. v. Black & Decker Corp.*, 383 F. Supp. 2d 200, 216-17 (D. Mass. 2004); *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wash.2d 654, 673-75 (2001). This is called *pro tanto* as opposed to *pro rata* allocation.

Lamorak argues that the other states that have adopted a *pro tanto* allocation have done so only because the particular tort law in their states adopted such a rule. That is false. In *Weyerhaeuser*, the Washington Supreme Court adopted a *pro tanto* rule for allocating loss to settled insurers even though the general rule for joint and several liability was otherwise. 15 P.3d at 126 (noting Washington courts have "refused the invitation" to "apply tort principles and statutes governing contribution in tort cases to interpret an insurance contract"). Tort concepts are not directly applicable to the insurance context because, in tort cases, a jury's findings of

9

comparative fault are used to determine tortfeasors' equitable shares. But in the insurance context there is no "fault"; there is just covered loss. And each insurer has bargained to take responsibility for "all sums." While equity might sometimes call for reallocating loss among the various insurers on the risk, there is no fundamental unfairness in holding an insurer to the "all sums" bargain it struck, while applying a *pro tanto* set-off to prevent any double recovery by the insured.

Courts have adopted a *pro tanto* allocation rule precisely because *pro rata* allocation creates perverse incentives for insurers. Under the *pro rata* rule favored by Lamorak, the insurer loses little by forcing the policyholder to litigate. Even though it contracted to assume liability for "all sums" arising from an occurrence, the insurer knows its liability will not exceed its *pro rata* share of the loss. Under the *pro tanto* rule, by contrast, insurers have strong incentives to pay their obligation or settle. Intransigent insurers who raise meritless defenses and force policyholders to litigate because it is cheaper than paying, as Lamorak did here, face the risk that they will pay more than their *pro rata* share if other insurers settle. This rule appropriately places the risk of litigation: the hold-out insurer is potentially liable for "all sums," as it bargained for; the insured is made whole but cannot recover more than its loss; and insurers have a strong incentive to honor coverage obligations or settle and avoid protracted litigation. *See, e.g.*, *Weyerhaueser*, 15 P.3d at 125-16 (policyholder "must first be fully compensated … before any setoff is ever allowed" and noting that *pro rata* contribution "would encourage litigation and reward the nonsettling insurer for refusing to settle"). A pro-settlement policy of this kind, which prioritizes making the policyholder whole, is fully consistent with New York law. *See Viking Pump*, 52 N.E.3d at 1149-50; *see also Rock v. Reed-Prentice Div. of Package Mach. Co.*, 39 N.Y.2d 34, 41 (1976).

## CONCLUSION

For these reasons and those in Olin's opening brief, Olin's motion should be granted.

|  |  |
|---|---|
|  | Respectfully Submitted, |
|  | OLIN CORPORATION |
| Dated: February 9, 2018 | */s/ Craig C. Martin* |
|  | **JENNER & BLOCK LLP**<br>Craig C. Martin<br>Peter J. Brennan<br>Matthew J. Thomas<br>353 N. Clark Street<br>Chicago, Illinois 60654<br>312-222-9350 |
|  | -- and -- |
|  | **HUSCH BLACKWELL LLP**<br>David W. Sobelman<br>Jerry Ronecker<br>Joel B. Samson<br>190 Carondelet Plaza, Suite 600<br>St. Louis, Missouri 63105<br>314-480-1500 |
|  | *Attorneys for Plaintiff Olin Corporation* |

## CERTIFICATE OF SERVICE

     The undersigned hereby certifies that a true and accurate copy of the foregoing OLIN CORPORATION'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON THE AMOUNT OF THE RECALCULATED JUDGMENTS ON THE FIVE REMAND SITES was served on the following Counsel of Record via CM/ECF (redacted) and by e-mail (unredacted) on February 9, 2018:

| | |
|---|---|
| Ralph J. Luongo<br>Elaine Whiteman Klinger<br>Bradley J. Mortensen<br>Benjamin A. Blume<br>Erik B. Derr<br>Victoria Allen<br>Elizabeth A. Sutton<br>Diana M. Karnes<br>Gary S. Kull<br>KENNEDYS CMK, LLP<br>Two Liberty Place<br>Suite 2625<br>Philadelphia, PA 19102<br>Ralph.Luongo@kennedyscmk.com<br>Elaine.Klinger@kennedyscmk.com<br>Bradley.Mortensen@kennedyscmk.com<br>Benjamin.Blume@kennedyscmk.com<br>Erik.Derr@kennedyscmk.com<br>Victoria.Allen@kennedyscmk.com<br>Elizabeth.Sutton@kennedyscmk.com<br>Diana.Karnes@kennedyscmk.com<br>Gary.Kull@kennedyscmk.com<br><br>Bryce L. Friedman<br>Susannah S. Geltman<br>SIMPSON THACHER & BARTLETT LLP<br>425 Lexington Avenue<br>New York, NY 10017-3954<br>bfriedman@stb.com<br>sgeltman@stb.com<br><br>Michael J. Balch<br>BUDD LARNER, P.C.<br>150 John F. Kennedy Parkway<br>Short Hills, NJ 07078<br>mbalch@buddlarner.com | Matthew B. Anderson<br>John McAndrews<br>William Seo<br>MENDES & MOUNT, LLP<br>750 Seventh Avenue<br>New York, NY 10019-6829<br>Matthew.Anderson@mendes.com<br>john.mcandrews@mendes.com<br>William.seo@mendes.com<br><br>Michael L. Anania<br>Gregory R. Bruno<br>FORD, MARRIN, ESPOSITO, WITMEYER & GLESER, LLP<br>Wall Street Plaza<br>New York, NY 10005<br>manania@fordmarrin.com<br>gbruno@fordmarrin.com<br><br>Robert J. Bates, Jr.<br>BATES & CAREY LLP<br>191 North Wacker Drive<br>Suite 2400<br>Chicago, IL 60606<br>rbates@batescarey.com<br><br>Miranda H. Turner<br>James P. Ruggeri<br>Joshua P. Mayer<br>SHIPMAN & GOODWIN LLP<br>1875 K Street NW, Suite 600<br>Washington, DC 20006<br>mturner@goodwin.com<br>jruggeri@goodwin.com<br>jmayer@goodwin.com |

                                               */s/ Gabriel K. Gillett*