# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| OLIN CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 84 CIV 1968 (JSR) |
| LAMORAK INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) | |
| ------------------------------------------------------------------X | | |
| LAMORAK INSURANCE COMPANY f/k/a OneBeacon America Insurance Company | ) ) ) | |
| Third-Party Plaintiff, | ) ) | |
| v. | ) ) | |
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON and LONDON MARKET INSURANCE COMPANIES, et al. | ) ) ) ) | |
| CONTINENTAL CASUALTY COMPANY, | ) ) | |
| GENERAL REINSURANCE CORPORATION, | ) ) | |
| FIREMAN'S FUND INSURANCE COMPANY, | ) ) | |
| MUNICH REINSURANCE AMERICA, INC., f/k/a AMERICAN RE-INSURANCE COMPANY | ) ) ) | |
| -and- GREAT AMERICAN INSURANCE COMPANY | ) ) ) | |
| Third-Party Defendants. | ) ) | |

**LAMORAK INSURANCE COMPANY'S REPLY MEMORANDUM OF LAW
<u>IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ........................................................................................................ 1

**ARGUMENT** .................................................................................................................................. 1

    I.   **Lamorak's Policy Limits Should Be Reduced By The Prior Insurers' Limits** ........... 1

    II.  **Alternatively, This Court May Apply A *Koppers* Set-Off Of Ratable Shares** ............ 7

    III. **The** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ **In The Olin-LMI Settlement Should Apply Now** ........................................................................................................................... 9

**CONCLUSION** ............................................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

*Diamond Castle Partners IV PRC, L.P. v. IAC/InterActiveCorp*,
  918 N.Y.S.2d 73 (1st Dep't 2011) ............................................................................... 9

*E.R. Squibb & Sons, Inc. v. Lloyd's & Cos*., 241 F.3d 154 (2d Cir. 2001) ................................ 5, 6

*In re Viking Pump, Inc.*,
  52 N.E.3d 1144 (N.Y. 2016 ............................................................................... 1, 5, 6, 7

*Koppers Co., Inc. v. Aetna Casualty & Surety Co.*,
  98 F.3d 1440 (3d Cir. 1996) ............................................................................... 1, 7, 8, 9

*Mass. Elec. Co. v. Commercial Union Ins. Co.*,
  2005 WL 3489874 (Mass. Super. Ct. Oct. 25, 2005) ................................................................ 9

*Md Cas. Co. v. W.R. Grace & Co.*,
  218 F.3d 204 (2d Cir. 2000) ............................................................................... 6

*Olin Corp. v. Am. Home Assur. Co.,*
  704 F.3d 89 (2d Cir. 2012) ............................................................................... 2, 3, 4

*Olin Corp. v. OneBeacon Am. Ins. Co.*,
  864 F.3d 130 (2d Cir. 2017) ............................................................................... passim

*Pergament Distribs., Inc. v. Old Republic Ins. Co.*,
  513 N.Y.S. 2d 467 (2d Dep't 1987) ............................................................................... 2

*Weyerhaeuser Co. v. Commercial Union Ins. Co.*,
  15 P.3d 115 (Wash. 2001) ............................................................................... 9

*Williams v. Niske*,
  81 N.Y.2d 437 (1993) ............................................................................... 10

*Zeig v. Mass. Bonding & Ins. Co.*,
  23 F.2d 665, 666 (2d Cir. 1928) ............................................................................... 6

**Statutes**

New York General Obligations Law § 15-108 ............................................................................... 9

**Other Authorities**

Restatement (Second) of Contracts § 302 ............................................................................... 10

## PRELIMINARY STATEMENT[1]

It is undisputed that Lamorak's co-insurers – LMI, Continental, and GenRe – provided coverage for the Five Sites and that Olin released those insurers' policy limits for the Five Sites in pre-trial settlements. Under *Olin IV* and *Viking Pump*, Lamorak's Prior Insurance Provision must therefore be applied "in accordance with [its] plain language . . . despite the limiting impact that [it] may have on [Olin's] recovery." *Olin IV*, 864 F.3d 130, 148 (2d Cir. 2017) (quoting *Viking Pump*, 52 N.E.3d 1144, 1152 (N.Y. 2016)). It is also unrebutted that applying the Prior Insurance Provision requires the Court to enter a $3.8 million judgment against Lamorak.

Contrary to Olin's contentions, the Second Circuit did not reject Lamorak's position as to how the Prior Insurance Provision applies in light of Olin's settlements with other insurers; nor could it have, as the question was not presented. And, this Court has recognized its broad discretion to craft a judgment on remand that is consistent with the facts and law. It should do so by applying the plain terms of the Prior Insurance Provision. In the alternative, the Court should apply a set-off in accordance with *Koppers Co., Inc. v. Aetna Casualty & Surety Co.*, 98 F.3d 1440 (3d Cir. 1996), which is consistent with *Olin IV* and New York law. Or, ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊. Both of those latter two paths lead to similar unrebutted set-offs detailed in Figures 2 and 3 of the Scarcella Declaration.

## ARGUMENT

**I. Lamorak's Policy Limits Should Be Reduced By The Prior Insurers' Limits**

---

[1] All defined terms used herein have the meaning set forth in Lamorak's summary judgment motion (Doc. No. 2099).

The undisputed facts confirm that Lamorak is entitled, as a matter of law, to a reduction of its policy limits in the amount of the settled insurers' limits for the Five Sites. Lamorak has demonstrated that the losses covered by its policies are also covered by policies issued by Olin's prior insurers in the same layer of insurance. 56.1 ¶¶ 14-19.[2] Further, Lamorak has shown that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. 56.1 ¶ 21.[3] These facts are not disputed and under *Olin III* and *IV,* the Prior Insurance Provision limit reduction must be applied.

Olin contends that the Court should not apply the plain language of the Prior Insurance Provision in Lamorak's policies to reduce its limits. None of Olin's arguments is availing.

*First*, Olin argues that the Second Circuit already rejected Lamorak's application of the Prior Insurance Provision. Olin is wrong. A brief summary of the procedural history of this case makes this clear. On April 3, 2013, Lamorak moved for partial summary judgment asking this Court to enter an order applying the Prior Insurance Provision to reduce its limits in accordance

---

[2] New York courts interpret "covered" to mean "whether the policy insures against a certain risk, not whether the insured can collect" on the policy. *Pergament Distribs., Inc. v. Old Republic Ins. Co.*, 513 N.Y.S. 2d 467, 469 (2d Dep't 1987). Olin purports to dispute that the LMI, Continental and GenRe policies provide substantially the same coverage as Lamorak's policies but does not cite any contradicting facts. *See* Olin 56.1 response, ¶ 16.

[3] Olin does not dispute that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *See* Olin 56.1 response, ¶ 21. Olin is also wrong that the Ryan Declaration contains inadmissible legal opinions. Ryan's factual statements about the coverage provided by the LMI, Continental and GenRe policies are based on his years of experience handling Olin's claims on behalf of Lamorak and are entirely proper. The cases Olin cites are inapposite as they concern character testimony of a pediatrician in a child molestation case and legal opinions of law enforcement officers in a racketeering case.

Olin's complaints about the Scarcella Declaration are likewise easily dismissed for the reasons explained in Lamorak's opposition to Olin's motion to strike. *See generally* Lamorak's Opp. to Mot. to Strike (Doc. No. 2114).

2

with the Second Circuit's decision in *Olin III*. *Olin III* had addressed Olin's coverage claim against American Home Assurance Company. In that case, the Second Circuit determined that the effect of a Prior Insurance Provision was to limit Olin's recovery for any one loss to a single limit in any policy layer. 704 F.3d 89, 104 (2d Cir. 2012). This Court denied Lamorak's summary judgment motion because, unlike in *Olin III* where American Home had issued all of the insurance in the layer, here the prior insurance in Lamorak's layer was issued by insurers other than Lamorak. *See Olin IV*, 864 F.3d at 140. It is this decision from which Lamorak appealed, and it is this question that the Second Circuit addressed, namely: "whether a prior insurance provision applies to any other excess policy issued within the same layer, and not just a prior policy issued by the same insurer." *Id.* at 147.

In *Olin IV*, the Second Circuit decided this question in Lamorak's favor, finding that this Court had failed to give effect to the Prior Insurance Provision by reducing the limits of Lamorak's policies by those of prior policies covering the same loss. *Id*. Thus, consistent with *Olin III*, all that was left to be done was to limit Olin's recovery for any one loss to a single limit in any policy layer. *Id.* at 149. However, Olin made a bald argument that it had reached settlements with its other insurers that precluded giving effect to the Prior Insurance Provision. Although Olin represented to the Second Circuit that it had reached a global settlement that included a release of coverage for the Five Sites, the settlement agreements were not in the record presented to this Court or the Second Circuit. The Second Circuit did ***not*** reject the application of the Prior Insurance Provision in the face of these settlement agreements as Olin now contends. Instead, the Second Circuit remanded the case to this Court to:

- (i) "apply the [Lamorak] insurance policies' prior insurance provision" consistent with *Viking Pump* (*i.e.*, pursuant to an "all sums" allocation; ***and*** "in accordance with [its] plain language . . . despite the limiting impact that [it] may have on an insured's recovery") (*Olin IV*, 864 F.3d at 135 n.1, 148), and

3

- (ii) "determine the effect of Olin's prior settlements . . . on the recovery available under the [Lamorak] policies." *Id.*

As this Court has recognized, the scope of the Second Circuit's mandate is far broader than Olin claims; this Court is not confined to determining Lamorak's entitlement to a reduction of policy limits based on amounts paid in cash to cover the loss by another insurer in the same coverage layer, but rather is directed, more broadly, to determine the effect of Olin's settlements with other insurers on Lamorak's liability. *See* 2/5/18 Mem. Order (Doc. No. 2123) at 5-6. And, for the reasons set forth in Lamorak's papers, the Court should determine that the "effect" of the settlements is to confirm that *Olin III* applies and Olin can only recover one limit per layer.

*Second*, Olin argues that the reduction of Lamorak's policy limits by the prior insurers' limits would be inconsistent with the Second Circuit's references to the Prior Insurance Provision reducing Lamorak's limits by "amounts paid" in settlement. This is a smokescreen. The Second Circuit was faced with an argument that because Olin had settled with prior insurers there were no longer any "amounts due" under the prior insurance policies. The Second Circuit used the term "amounts paid" instead of "amounts due" to reject this specious argument. The Second Circuit did not change the "amounts due" language in Lamorak's policies or allow Olin to escape the Prior Insurance Provision by saying there were no amounts due because they had already been paid in settlement. To the contrary, the Second Circuit expressly rejected Olin's argument and "agree[d] with [Lamorak]" that the limits of Lamorak's policies should be by amounts paid pursuant to settlements of coverage for the Five Sites. *Olin IV*, 864 F.3d at 150.

*Third*, Olin claims that if Lamorak's position were accepted, there would have been no need for the case to be remanded "because the prior insurers' policy limits were not disputed." This is disingenuous. As Olin well knows, the settlement agreements were not in the record. Only after discovery on remand could Lamorak prove coverage under prior insurance, and that

4

████████████████████████████████████████████████████████████, thereby satisfying any burden to demonstrate that the settled prior insurers' limits were due and paid for the Five Sites.

*Fourth*, Olin claims that reduction of Lamorak's policy limits by the prior insurers' limits is inconsistent with the Second Circuit's recognition of the difficulty in determining how much of each settlement was allocated to the Five Sites.  Lamorak agrees that the Second Circuit recognized this difficulty and in doing so directed the parties to its decision in *Squibb*, in which the Second Circuit dealt with this same difficulty in the analogous context of a policyholder settlement with its primary insurer, by holding the liability of the non-settling excess insurers should be determined based on an assumption that the settling insurer's liability was satisfied by its settlement, "regardless of the actual settlement amounts." *Id.* at 172–73 (citing *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154 (2d Cir. 2001)).  This is precisely what Lamorak seeks here – a determination that the "effect" of Olin's settlements with its prior insurers is a ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████.  Thus, far from undermining Lamorak's position, *Squibb* (and *Olin IV*'s citation to *Squibb*) validates it.

*Fifth*, Olin claims that reduction of Lamorak's limits by the prior insurers' limits is inconsistent with *Viking Pump*.  Olin is wrong.  *Viking Pump* made clear that the Prior Insurance Provision is designed to "prevent stacking, the situation in which an insured who has suffered a long term or continuous loss which has triggered coverage across more than one policy period…wishes to add together the maximum limits of all consecutive policies that have been in place during the period of the loss." *Viking Pump*, 52 N.E.3d at 1152 (internal quotation omitted).  When Olin settled with its other insurers, ████████████████████████████████

5

██████████████████████████.  ████████████████████████████████
████████████████████████████████████████  To do so would allow Olin to stack and grant Olin a double recovery that is expressly prohibited by *Viking Pump*.

Such a recovery is also contrary to Second Circuit precedent, which places the risk of settlement on the settling parties and prohibits settlements from affecting the rights of non-settled insurers. *See, e.g.*, *Squibb*, 241 F.3d at 172–73 (liability of non-settling excess insurers determined based on assumption that settling insurer's liability was satisfied by its settlement, "regardless of the actual settlement amounts," because "the settling parties are the ones who took the risk of the settlement"); *Zeig v. Mass. Bonding & Ins. Co.*, 23 F.2d 665, 666 (2d Cir. 1928) (same); *Md. Cas. Co. v. W.R. Grace & Co.*, 218 F.3d 204, 211 (2d Cir. 2000) ("[T]he contract of settlement an insurer enters into with the insured cannot affect the rights of another insurer who is not a party to it."). Olin claims that *Squibb* and *Zeig* are inapplicable because they addressed policyholder settlements with primary insurers, not excess insurers. This is a distinction without a difference. Olin has no answer to the clear reasoning of both of these cases, as well as *Grace*, which Olin ignores: Olin took the risk of settling with its other insurers and cannot now recover from Lamorak the policy limits that it released in those settlements.

*Finally*, Olin complains about Lamorak's limits reduction calculation on the grounds that the Scarcella and Ryan Declarations that sponsor that calculation are purportedly inadmissible. There is no basis for such a claim. Indeed, Olin had its trial counsel prepare a competing calculation.[4] In any case, any dispute that Olin may have regarding the mathematical calculation that was performed to reduce Lamorak's limits (and Olin has not identified any) is not a basis for

---

[4] As explained in the Declaration of Susannah S. Geltman, dated Feb. 9, 2018 (the "Geltman Declaration"), there are plain errors in Olin's calculation of all sums damage that render its assertion of damages plus prejudgment interest incorrect. *See* Geltman Decl. ¶¶ 6-11.

6

denying Lamorak's summary judgment motion. That type of calculation can easily be worked out between the parties once the Court has determined the appropriate legal standard.

## II. Alternatively, This Court May Apply A *Koppers* Set-Off Of Ratable Shares

This Court's task is to enter a New Judgment that applies the Prior Insurance Provision in an all-sums regime consistent with *Viking Pump*, while taking into account the effect of Olin's settlement with other insurers. While Olin attempts to construe the Second Circuit mandate as impracticably narrow, this Court has broad discretion to craft a judgment on remand that is consistent with the facts, circumstances and law presented. *See, e.g., New York v. Nat'l Serv. Indus., Inc.*, 380 F. Supp. 2d 122, 127 n.3 (E.D.N.Y. 2005), *aff'd,* 460 F.3d 201 (2d Cir. 2006). The Third Circuit's *Koppers* case arose under the same circumstances in Pennsylvania, where the state's highest court, like the New York Court of Appeals in *Viking Pump*, had determined when all sums should apply, but had not yet considered a case where the insured had settled with certain of its insurers. The *Koppers* set-off approach is consistent with the guidance provided in *Olin IV* as well as with New York law and should be followed if the Court declines to apply the Prior Insurance Provision.[5]

Olin claims that application of a *Koppers* set-off would conflict with the Second Circuit's direction to determine Lamorak's liability according to an "all sums" allocation, pursuant to *Viking Pump*. This argument makes no sense. *Koppers* specifically addressed the effect of an insurer's settlements ***in the context of an all sums allocation***. In other words, the question that *Koppers* sought to answer is the same one to be answered by this Court: in the context of an all

---

[5] Olin contends that *Koppers* is inapplicable because it did not address a Prior Insurance Provision. Even if true, this misses the point. Lamorak fully agrees that this Court should apply the plain terms of the Prior Insurance Provision. But if it declines to do so, it should follow the weight of authority and enter a judgment consistent with *Koppers*.

7

sums allocation, how should a court account for the fact of a policyholder's settlements with other insurers? *Koppers* set forth two options: "either (1) reduce the judgment to account for the settling insurers' apportioned shares of liability, or (2) permit the non-settling insurers to seek contribution from the settling insurers and, in turn, permit the settling insurers to seek reimbursement from Koppers." *Koppers*, 98 F.3d at 1452. While both of these options preclude the policyholder from obtaining a "double recovery" by procuring the benefit of settlements with some of its insurers, while also seeking "all sums" liability from other non-settled insurers, *Koppers* determined that the first option – the "apportioned share set-off rule" – is "superior" because it "promotes both judicial economy and settlement—while also avoiding collusive settlements by placing the burden of a low settlement on the plaintiff." *Id.* at 1453 n.15.

Olin also claims that Lamorak is seeking to "reinject equitable contribution" into this remand proceeding. To the contrary, in advocating for a set-off of the settled insurers' shares, Lamorak is simply following *Koppers*' well-established rule. For reasons explained in Lamorak's prior briefs, that rule is one that the New York Court of Appeals is likely to adopt in the new all sums allocation regime established by *Viking Pump* because it is consistent with the approach taken in the joint and several tortfeasor context where New York courts apply a set-off of ratable shares of settled tortfeasors pursuant to New York General Obligations Law § 15-108. Indeed, the determination in *Koppers* that "the apportioned share set-off rule" is the preferred approach to dealing with settled insurers was based substantially on the Pennsylvania Supreme Court's adoption of the apportioned share set-off rule in the joint and several tort liability context. *See Koppers*, 98 F.3d at 1453. While Olin argues that a *pro tanto* allocation should apply, pursuant to which only amounts actually paid by prior insurers in settlement are set off, neither of the out-of-state cases it cites supports that theory. In both *Weyerhaeuser Co. v.*

8

*Commercial Union Ins. Co.*, 15 P.3d 115, 125–27 (Wash. 2001) and *Mass. Elec. Co. v. Commercial Union Ins. Co.*, 2005 WL 3489874, *2 (Mass. Super. Ct. Oct. 25, 2005), the courts did not apply a *Koppers*-style ratable share set-off because of the particular laws and/or policies of those states, none of which applies in New York. In New York, *pro rata* (not *pro tanto*) set-off is the norm and should apply. Not only does New York apply the greater of *pro rata* and *pro tanto* credits in joint and several tort cases to protect non-settling defendants from paying more than their shares, but New York courts have long applied a *pro rata* approach in allocating liability among co-insurers.[6] Olin fails to mention a single one of these cases.

[REDACTED]

---

[6] Cases citing this rule are listed in paragraph 5 of the Geltman Declaration.

[7] *See* Restatement (Second) of Contracts § 302; *see also Diamond Castle Partners IV PRC, L.P. v. IAC/InterActiveCorp*, 918 N.Y.S.2d 73, 74–75 (1st Dep't 2011) (contract language negating third-party beneficiary claims was "boilerplate" and did not preclude third party from recovering benefits specifically granted to it).

[8] Further, New York courts permit non-settling defendants to invoke another defendant's settlement as a defense to joint and several obligations in analogous contexts in order to promote judicial economy, encourage future settlement, and ensure that non-settling

[REDACTED]

## **CONCLUSION**

For the foregoing reasons set forth above, Lamorak's summary judgment motion should be granted.

---

defendants do not pay more than their fair share. *See, e.g.*, *Williams v. Niske*, 81 N.Y.2d 437, 442 (1993) (applying this approach in joint and several tort context).

Dated: New York, New York
February 9, 2018

Respectfully submitted,

SIMPSON THACHER & BARTLETT LLP

By:   /s/ *Susannah S. Geltman*
Bryce L. Friedman  (BF9108)
Susannah S. Geltman  (SG2243)
425 Lexington Avenue
New York, New York 10017-3954
Tel.: (212) 455-2000
Fax: (212) 455-2502
Email:  bfriedman@stblaw.com
           sgeltman@stblaw.com

KENNEDYS CMK, LLP

Ralph J. Luongo (RL1342)
Elaine Whiteman Klinger (EW9967)
Bradley J. Mortensen (BM6153)
Two Liberty Place
50 South 16th Street, Suite 2625
Philadelphia, PA 19102
Tel.: (267) 479-6700
Fax: (267) 479-6710
Email:  Ralph.Luongo@Kennedyscmk.com
           Elaine.Klinger@Kennedyscmk.com
           Bradley.Mortensen@Kennedyscmk.com

and: 570 Lexington Avenue, 8th Floor
New York, NY 10022
Tel.: (646) 625-4000
Fax: (646) 625-4044

*Attorneys for Lamorak Insurance Company*

11