# THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| OLIN CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 84 CIV 1968 (JSR) |
| | ) | |
| LAMORAK INSURANCE COMPANY, | ) | ORAL ARGUMENT REQUESTED |
| | ) | |
| Defendant. | ) | |
| ------------------------------------------------------------------X | | |
| LAMORAK INSURANCE COMPANY | ) | |
| f/k/a OneBeacon America Insurance Company | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CERTAIN UNDERWRITERS AT LLOYD'S, | ) | |
| LONDON and LONDON MARKET | ) | |
| INSURANCE COMPANIES, et al. | ) | |
| | ) | |
| CONTINENTAL CASUALTY COMPANY, | ) | |
| | ) | |
| GENERAL REINSURANCE CORPORATION, | ) | |
| | ) | |
| FIREMAN'S FUND INSURANCE COMPANY, | ) | |
| | ) | |
| MUNICH REINSURANCE AMERICA, INC., | ) | |
| f/k/a AMERICAN RE-INSURANCE COMPANY | ) | |
| | ) | |
| -and- | ) | |
| GREAT AMERICAN INSURANCE COMPANY, | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

# LAMORAK INSURANCE COMPANY'S OPENING BRIEF
# IN RESPONSE TO THE COURT'S ORDER DATED FEBRUARY 28, 2018

# **TABLE OF CONTENTS**

Preliminary Statement ........................................................................................................ 1

Additional Factual Background ...................................................................................... 3

    I.     Olin's Liability Was Tried On A Site By Site Basis ............................... 3

    II.    Jury Findings Of Trigger Periods For Each Of The Five Sites............................. 4

    III.   The Settling Insurers' Policies In The Trigger Periods Cover The Loss ............... 4

    IV.   The Settlement Agreements ........................................................................... 4

         A.     Continental Settlement .............................................................................. 5

         B.     GenRe Settlement ..................................................................................... 6

         C.     LMI Settlement ........................................................................................ 6

Argument ............................................................................................................................ 7

    I.     The Court Should Reduce The Judgment Against Lamorak By The Settled
         Insurers' Pro Rata Shares Of Liability ...................................................... 7

         A.     Pro Rata Reduction Is The Preferred Way To Account For
             Settlements By Co-Insurers In The All Sums Context ............................. 8

         B.     A Pro Rata Reduction Accords With New York Law ............................ 10

         C.     A Pro Rata Set-Off Accounts For The Undisputed Facts
             Concerning The Settled Insurers' Liability And Settlements .................. 13

    II.    Even If The Court Determines Option 2 Is Viable Under New York Law
         And Policy, The Judgment Should Be Reduced By The Greater Of Option
         1 And Option 2 ..................................................................................... 14

Conclusion ........................................................................................................................ 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Air & Liquid Sys. Corp. v. Allianz Underwriters Ins. Co.*,
   No. 11-247, 2013 WL 5436934 (W.D. Pa. Sept. 27, 2013)...................................................... 10

*Beazley Ins. Co. v. Ace Am. Ins. Co.*,
   150 F. Supp. 3d 345 (S.D.N.Y. 2015), *aff'd in part,* 880 F.3d 64
   (2d Cir. 2018)....................................................................................................................... 12

*Bondex Int'l, Inc. v. Hartford Acc. & Indem. Co.*,
   No. 1:03-cv-01322, 2007 WL 405938 (N.D. Ohio Feb. 1, 2007)
   *aff'd*, 667 F.3d 669 (6th Cir. 2011)........................................................................................ 10

*Charles v. Giant Eagle Mkts.*,
   522 A.2d 1 (Pa. 1987) ........................................................................................................... 20

*Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*,
   177 F.3d 210 (3d Cir. 1999)................................................................................................... 10

*DaimlerChrysler Ins. Co. v. Universal Underwriters Ins. Co.*,
   Index No. 601238/2008, N.Y. Slip Op. 30775(U),
   2010 WL 1459007 (Sup. Ct. N.Y. Cnty. Mar. 31, 2010) ...................................................... 17

*Didner v. Keene Corp.*,
   624 N.E.2d 979 (N.Y. 1993).................................................................................................. 19

*E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*,
   241 F.3d 154 (2d Cir. 2001)................................................................................... 2, 13, 14, 18

*In re N.Y.C. Asbestos Litig.*,
   593 N.Y.S.2d 43 (N.Y. App. Div. 1993),
   *aff'd*, 625 N.E.2d 588 (N.Y. 1993) (emphasis added) .......................................................... 19

*Koppers Co. by Beazer East v. Certain Underwriters at Lloyd's*,
   Civ. Action No. 85-2136, 1997 U.S. Dist. LEXIS 16123 (June 23,
   1997) ..................................................................................................................................... 16

*Koppers Co. v. Aetna Cas. & Sur. Co.*,
   98 F.3d 1440 (3d Cir. 1996)........................................................................................... passim

*Lumbermens Mut. Cas. Co. v. Allstate Ins. Co.*,
   417 N.E.2d 66 (N.Y. 1980).................................................................................................... 12

*McDermott, Inc. v. AmClyde*,
  511 U.S. 202 (1994) ................................................................................ 9, 10

*Md. Cas. Co. v. W.R. Grace & Co.*,
  218 F.3d 204 (2d Cir. 2000) ........................................................... 11, 13, 17

*Nat'l Cas. Co. v. Vigilant Ins. Co.*,
  466 F. Supp. 2d 533 (S.D.N.Y. 2006) ..................................................... 11

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Essex Ins. Co.*,
  No. 13-32, 2013 WL 6328792 (W.D. Pa. Dec. 5, 2013) ...................... 10

*Olin Corp. v. OneBeacon Am. Ins. Co.*,
  864 F.3d 130 (2d Cir. 2017) .............................................................. 1, 9

*Scotts Co. v. Ace Indem. Ins. Co.*,
  Index No. 602712/05, 18 Misc. 3d 1139(A),
  2008 WL 518062 (Super. Ct., N.Y. Cnty. 2008) ................................. 18

*U.S. Fire Ins. Co. v. Fed. Ins. Co.*,
  858 F.2d 882 (2d Cir. 1988) .................................................................. 12

*Westinghouse Elec. Corp. v. Amer. Home Assur. Co.*,
  Nos. A-6706-01T5 & A-6720-01T5, 2004 WL 1878764 (N.J. Super.
  Ct. App. Div. July 8, 2004) ................................................................ 10

*Williams v. Niske*,
  615 N.E.2d 1003 (N.Y. 1993) ....................................................... 3, 18, 19

*Zeig v. Mass. Bonding & Ins. Co.*,
  23 F.2d 665 (2d Cir. 1928) ................................................................... 13

**Statutes**

New York General Obligations Law § 15-108 ................................................ passim

Lamorak Insurance Company ("Lamorak") submits this opening brief, along with the Supplemental Declaration of Susannah S. Geltman, dated March 6, 2018 ("Suppl. Geltman Decl."), in further support of its Motion for Summary Judgment, dated January 22, 2018, and pursuant to the Court's order dated February 28, 2018 (the "February 28 Order").  Lamorak respectfully requests oral argument on the briefing to be submitted by the parties in connection with the February 28 Order.

## PRELIMINARY STATEMENT

The judgment against Lamorak should be reduced by the pro rata shares of the settled insurers ("Option 1").  A reduction based on pro rata shares is most consistent with New York law and policy.  Under New York law, when one insurer has paid more than its fair share to the policyholder, that insurer can seek contribution from its co-insurers, even if those co-insurers have previously settled with the policyholder.  And, under New York law, apportionment of liability among co-insurers in the context of a contribution claim is done on a pro rata basis.  Pro rata judgment reduction here is most consistent with that precedent.

Further, pro rata judgment reduction serves three goals:  (i) precluding the policyholder from obtaining a "double recovery"—something that the Second Circuit directed this Court to avoid in calculating a new judgment—by precluding the policyholder from obtaining the benefit of settlements with some of its insurers while seeking duplicate "all sums" liability from other non-settled insurers, *Olin Corp. v. OneBeacon Am. Ins. Co.*, 864 F.3d 130, 150 (2d Cir. 2017) ("*Olin IV*"), (ii) ensuring that the all sums non-settling insurer (Lamorak) pays no more than its fair share as required by New York law, and (iii) eliminating the need for additional litigation in the form of a contribution action.  Because Lamorak is entitled to contribution of the settled insurers' pro rata shares of liability under New York law, Option 1 should be used to apply a judgment reduction in the most efficient fashion.

On the other hand, a judgment reduction by an amount calculated "by first determining what percentage of the policy limits for all the sites released under the settlement is comprised by the policy limits for the remand sites and then multiplying the total settlement amount by that percentage" ("Option 2") was not proposed by either party and finds no support in New York law addressing co-insurer liability.  Option 2 cannot be reconciled with the significant body of New York case law holding co-insurers liable for pro rata shares of the judgment, or the Second Circuit's finding in *Squibb* that "non-settling parties are [to be] left precisely as they would have been had no settlement occurred."  *See E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 173 (2d Cir. 2001).  Further, Option 2 may not give sufficient weight to settling insurers' joint and several liability █████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████████████████████████ ██████████████████████████████████████████████. An approach that overweights such factors will lead to gaming and manipulation ███████████████ ███████████████████.

There appear to be multiple ways to calculate the ratio of limits described in Option 2 and it is not clear what the Court intends.  However, to the extent Option 2 burdens Lamorak with more than its pro rata share of liability, the approach is inefficient and should not be used.  If the Court reduces the judgment against Lamorak by any amount less than the full pro rata shares of settled insurers, Lamorak will seek the difference from the settled insurers via contribution.  Further, even if the Court determines that Option 2 is a viable alternative under New York law and policy, it should grant Lamorak the greater reduction of Option 1 and Option 2 in accordance with the policies underlying New York General Obligations Law § 15-108, which applies set-

offs in the joint tortfeasor context based on the greater of (i) the settled insurer's equitable share and (ii) amounts paid in settlement.  "While the general purpose of General Obligations Law § 15-108 (a) is to encourage settlements, the statute is concerned as well with assuring that a nonsettling defendant does not pay more than its equitable share."  *Williams v. Niske*, 615 N.E.2d 1003, 1007 (N.Y. 1993).  The Court should apply a judgment reduction here that protects non-settling insurers consistent with New York policy, as embodied in § 15-108.

## ADDITIONAL FACTUAL BACKGROUND

### I.    Olin's Liability Was Tried On A Site By Site Basis

In 1984, Olin, a chemical manufacturing company, brought an action seeking insurance coverage for environmental contamination at Olin manufacturing sites throughout the United Sates.  *See* Lamorak's Statement of Undisputed Facts, dated Jan. 22, 2018 (Doc No. 2096) ("Lamorak 56.1"), ¶¶ 1, 3.  Over the last three decades, the case has proceeded in this Court on a site by site basis.  *Id.* ¶ 4.  In 2010, Olin filed the Third Amended Complaint against Lamorak seeking indemnity for remediation costs and other sums related to five environmental sites (the "Five Sites") under certain excess general liability policies issued (the "Lamorak Policies").  *Id.* ¶ 5.  On October 9, 2013, this Court granted summary judgment on Lamorak's liability to Olin related to the BROS site.  *See* Olin Statement of Undisputed Facts, Jan. 22, 2018 (Doc No. 2094) ("Olin 56.1"), ¶ 4.  On November 12, 2013, a jury returned a verdict in this Court finding that Lamorak is liable for coverage of damages incurred at the McIntosh OU2, Fields Brook, Augusta and Rochester sites.  *Id.* ¶ 5.  In 2015, this Court entered two judgments pursuant to Federal Rule of Civil Procedure 54(b) that awarded Olin over $80 million in indemnification costs for damages arising out of the Five Sites (including prejudgment interest).  Lamorak 56.1 ¶ 29.

## II.     Jury Findings Of Trigger Periods For Each Of The Five Sites

The Amended 54(b) Judgments set forth the findings of the jury and the Court regarding the periods of time during which damage occurred at each of the Five Sites.  Specifically, the judgments provided as follows:

| SITE | YEARS IN WHICH DAMAGE OCCURRED |
|------|-------------------------------|
| Augusta | |
|    - Groundwater | - 1965 through 1993 |
|    - Intake Canal | - 1965 through 2009 |
| Fields Brook | 1964 through 1978 |
| McIntosh OU2 | 1952 through 2016 |
| Rochester | 1962 through 1986 |
| BROS | 1968 through 1974 |

Lamorak 56.1 ¶ 27.

## III.    The Settling Insurers' Policies In The Trigger Periods Cover The Loss

The policies issued by the settling insurers—Certain Underwriters at Lloyd's, London and London Market Companies (together, "LMI"), Continental Casualty Company ("Continental") and General Reinsurance Corporation ("GenRe")—from 1961 onwards provide substantially the same coverage as provided by the 1970 Lamorak Policies for the Five Sites.  *Id.* ¶ 16.  These settling insurer policies incorporate Condition C and generally provide coverage for all sums Olin becomes legally obligated to pay for property damage during the policy period caused by an occurrence.  *Id.* ¶¶ 17-18.  Thus, the jury findings and other rulings that are incorporated into the Amended 54(b) Judgments of this Court against Lamorak as to the Five Sites apply equally to the policies issued by the settling insurers.  *Id.* ¶ 19.

## IV.     The Settlement Agreements

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

At the time of the GenRe and LMI settlements, Olin's Second Amended Complaint, which claimed insurance coverage for the Five Sites, among other sites, was the operative complaint.  *See* Declaration of Ralph Luongo, dated January 22, 2018 (Doc. No. 2100) ("Luongo Decl."), Ex. K.  At the time of the Continental settlement, Olin's Third Amended Complaint, which likewise claimed insurance coverage for the Five Sites, among sites, was the operative complaint.  *See id*., Ex. L.

A.     **Continental Settlement**

---

[1]     *See* Scarcella Decl., Attachment 2.

5

**B.      GenRe Settlement**



**C.      LMI Settlement**

---

2      *See* Scarcella Decl., Attachment 2.

3



## ARGUMENT

**I.    The Court Should Reduce The Judgment Against Lamorak By The Settled Insurers' Pro Rata Shares Of Liability**

Where a policyholder may recover all sums from one jointly and severally liable insurer and has already settled with other co-insurers, the preferred approach to account for the effect of those settlements on the non-settling insurer's liability is to apply a pro rata reduction of the settling parties' allocable shares of liability.  The Court should apply a pro rata reduction here because (1) the pro rata method is applied in the seminal case of *Koppers Co. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440 (3d Cir. 1996), recognized by the United States Supreme Court as the preferred approach in an analogous context, and applied by courts in other all sums jurisdictions; (2) a pro rata reduction accords with New York courts' longstanding pro rata apportionment of liability among co-insurers in contribution actions; (3) a pro rata reduction accords with New York insurance principles and policy; and (4) a pro rata reduction properly accounts for the factual circumstances of this particular case—namely, the settling insurers' liability for each of the Five Sites and the policy limits of the settled insurers available for the Five Sites.

---

[4]    *See* Suppl. Geltman Decl., Ex. A (determining all policies beginning in 1971 contain pollution exclusions).

[5]    *See* Scarcella Decl., Attachment 2.

### A.  Pro Rata Reduction Is The Preferred Way To Account For Settlements By Co-Insurers In The All Sums Context

In 1996, the Court of Appeals for the Third Circuit addressed the effect of an insurer settlement on a non-settling insurer in the all sums context.  *Koppers Co. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440 (3d Cir. 1996).  In *Koppers*, as in this case, (i) the policyholder, Koppers, sought insurance coverage for remediation of environmental contamination at numerous plant and disposal sites, and (ii) all of the triggered primary insurers and some of the excess insurers had previously settled with Koppers.  *Id.*  Following a jury's determinations that Koppers had incurred a total of $70 million in property damage liability, the trial court entered judgment for Koppers and held that Koppers' excess insurers were jointly and severally liable under an all sums allocation for the full amount of that judgment.  *Id.*  The trial court did not reduce that judgment to account for Koppers' settlements with its other insurers.  *Id.*  The Third Circuit reversed and remanded for the "purpose of allowing the district court to mold the verdict to take account of the settling insurers' apportioned shares of liability."  *Id.* at 1456.

The *Koppers* court set forth two options for how a court could account for prior settlements:  "either (1) reduce the judgment to account for the settling insurers' apportioned shares of liability, or (2) permit the non-settling insurers to seek contribution from the settling insurers and, in turn, permit the settling insurers to seek reimbursement from Koppers."  *Id.* at 1452.  Importantly, both of these options serve two goals.  First, both options preclude the policyholder from obtaining a "double recovery"—something that the Second Circuit expressly directed this Court to avoid in calculating a new judgment—by precluding the policyholder from obtaining the benefit of settlements with some of its insurers while seeking duplicate "all sums" liability from other non-settled insurers.  *Olin IV*, 864 F.3d at 150.  Second, both options ensure that the selected all sums insurer pays no more than its fair share.

Nonetheless, the *Koppers* court held that "the apportioned share set-off rule is superior to a rule permitting (or requiring) suits for contribution and indemnity because the former rule promotes both judicial economy and settlement—while also avoiding collusive settlement by placing the burden of a low settlement on the plaintiff." *Koppers*, 98 F.3d at 1453 n.15.  In determining that the set-off should be calculated based on the settling insurer's pro rata share, regardless of the amount received by the policyholder through settlement, *Koppers* held that "[t]he beneficent consequences of this formula are that the insured bears the risk of settling too low while the non-settling insurers bear the risk of being unable to redistribute equitably among themselves the burden of paying the balance (if, for example, some of their number are insolvent)." *Id.* at 1455.

Notably, the decision in *Koppers* to apply an apportioned share set-off was based, in part, on the United States Supreme Court's preference for a pro rata set-off, as articulated in *McDermott, Inc. v. AmClyde*, 511 U.S. 202 (1994).  There, the Supreme Court explained that a pro rata set-off, as compared to one based on amounts actually paid in settlement, is preferred because "settlements seldom reflect an entirely accurate prediction of the outcome of a trial," and "the settlement figure is likely to be significantly less than the settling defendant's equitable share of the loss, because settlement reflects the uncertainty of trial and provides the plaintiff with a 'war chest' with which to finance the litigation against the remaining defendants." *Id.* at 213.  The Court determined that this invited unfairness toward the non-settling defendants, and that hearings to determine the fairness of litigation could not reasonably predict, short of a mini-trial on the merits of all of the settled issues, whether the settlement was fair.  *Id.* at 213–14.

In applying a pro rata set-off, *Koppers* is not an outlier.  Other courts that apply the all sums method of allocation have taken the same approach with respect to settled insurers.  *See,*

*e.g.*, *Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*, 177 F.3d 210, 227–28 (3d Cir.

1999) (applying New Jersey law and holding that the non-settling insurers are entitled to a credit

of the settling insurer's policy limit rather than the amount paid in settlement); *Nat'l Union Fire*

*Ins. Co. of Pittsburgh v. Essex Ins. Co.*, No. 13-32, 2013 WL 6328792, at *9 (W.D. Pa. Dec. 5,

2013) (providing that the insurer would be entitled to a pro-rata set-off based on previous

settlements once joint and several liability was determined); *Air & Liquid Sys. Corp. v. Allianz*

*Underwriters Ins. Co.*, No. 11-247, 2013 WL 5436934, at *57–58 (W.D. Pa. Sept. 27, 2013)

(same); *Westinghouse Elec. Corp. v. Amer. Home Assur. Co.*, Nos. A-6706-01T5 & A-6720-

01T5, 2004 WL 1878764, at *9–*13 (N.J. Super. Ct. App. Div. July 8, 2004) (allowing selected

insurers to receive credits for pro rata shares of settling insurers); *see also Bondex Int'l, Inc. v.*

*Hartford Acc. & Indem. Co.*, No. 1:03-cv-01322, 2007 WL 405938, at *4 (N.D. Ohio Feb. 1,

2007), *aff'd*, 667 F.3d 669 (6th Cir. 2011) (providing that "the risk of settling too low" should

remain with the settling parties).

> **B.      A Pro Rata Reduction Accords With New York Law**
>
> >  **1.      New York Courts Apportion Liability Among Co-Insurers On A Pro Rata Basis In Contribution Actions**

A pro rata set-off accords with New York law, which has long held that apportioning

liability among co-insurers should be done on a pro rata basis relative to the liability at issue.  As

discussed above, *Koppers* sets forth two options for dealing with insurer settlements: either a set-

off of the settled insurers' pro rata shares on the front end, or a reduction of the non-settling

insurers' liability through a suit for contribution against the settled insurers on the back end.  The

ultimate effect on the liability of the non-settling insurer is the same under both approaches—a

reduction of the non-settling insurer's liability by the pro rata shares of the settled insurers for the

liabilities at issue.  The primary difference is a matter of judicial economy and timing (whether

the reduction is effected through a set-off in the first instance or later through a contribution action).

Here, if the Court determines not to apply a set-off, Lamorak is entitled to seek recovery of the settled insurers' pro rata shares in a separate suit for contribution. Indeed, as this Court has previously held in granting Lamorak's motion for leave to file a third-party complaint for contribution against the settling insurers, under New York law, when one insurer has paid more than its fair share to the policyholder, that insurer can seek contribution from its co-insurers, even if those co-insurers have previously settled with the policyholder. *See* Order, dated Oct. 13, 2017 (Doc. No. 2000); Mem., dated Nov. 27, 2017 (Doc. No. 2024) at 9; *see also Md. Cas. Co. v. W.R. Grace & Co.*, 218 F.3d 204, 210 (2d Cir. 2000) ("[W]hen one party jointly liable on an obligation pays more than its pro rata share, it may compel the co-obligors to contribute their share of the amount paid.") (internal citation omitted); *Nat'l Cas. Co. v. Vigilant Ins. Co.*, 466 F. Supp. 2d 533, 541 (S.D.N.Y. 2006) (recognizing that New York courts have allowed "a claim for contribution whenever one co-insurer has paid 'more than its fair share'").

It is also well-settled under New York law that apportionment of liability among co-insurers in the context of a contribution claim should be done on a pro rata basis. *See, e.g., U.S. Fire Ins. Co. v. Fed. Ins. Co.*, 858 F.2d 882, 885 (2d Cir. 1988) ("[I]f other policies similarly purported to provide final-tier coverage, all such insurers would be required 'to contribute ratably' toward any settlement.") (internal citations omitted); *Beazley Ins. Co. v. Ace Am. Ins. Co.*, 150 F. Supp. 3d 345, 357 (S.D.N.Y. 2015) ("[W]hen several insurers cover the same risk and payment for loss has been made by one, that carrier has a right to pro rata contribution from other insurers") (quotation and citation omitted), *aff'd in part*, 880 F.3d 64 (2d Cir. 2018); *Lumbermens Mut. Cas. Co. v. Allstate Ins. Co.*, 417 N.E.2d 66, 68 (N.Y. 1980) (holding there is

11

a "general rule of ratable contribution for multiple excess insurers"); *see also* Declaration of Susannah S. Geltman, dated February 9, 2018 (Doc. No. 2133) ("Geltman Decl."), ¶ 5 (listing cases reflecting New York courts' longstanding application of the pro rata approach in allocating liability among co-insurers).

Because Lamorak is entitled to contribution of the settled insurers' pro rata shares of liability under New York law, the same pro rata approach should be applied in applying a set-off. A set-off based on any other calculation would conflict with long-standing New York precedent. It would also negate the judicial efficiency to be achieved in applying a set-off because Lamorak would thereafter be entitled to seek contribution from the settled insurers to recover the balance of their ratable shares.

> **2.     A Pro Rata Reduction Is Consistent With New York Insurance Principles And New York Law In Analogous Insurance Contexts**

Decisions by New York courts in the insurance context confirm that the judgment entered against a non-settled insurer following an all sums allocation should be reduced, at the very least, by the pro rata shares of settled insurers as in *Koppers*.

For example, the Second Circuit has held in *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154 (2d Cir. 2001)—a case that the Second Circuit cited in *Olin IV* and directed this Court to consider on remand—that where a policyholder settles with its primary insurer, the non-settling excess insurers are entitled to a set-off of the primary insurers' pro rata shares of liability, rather than a set-off of the amounts paid under the settlement.  Citing *Koppers*, the *Squibb* court held that the best approach in this setting was to (i) determine the pro rata shares of all of the insurers "as if there had been no settlements," and (ii) treat "the settling insurers' portions as satisfied by the settlements, regardless of the actual settlement amounts."  *Id.* at 172. This decision is premised on the principle, well-established in New York law, that the risk of

settlement should be placed on the settling parties, and not on any third party.  As the Second

Circuit recognized in *Squibb*, the advantage to the pro rata share set-off approach is it places the

risk of settlement on the settling parties, while the "non-settling parties are left precisely as they

would have been had no settlement occurred."  *Id.* at 173; *see also Md. Cas. Co. v. W.R. Grace

& Co.*, 218 F.3d 204, 211 (2d Cir. 2000) ("The contract of settlement an insurer enters into with

the insured cannot affect the rights of another insurer who is not a party to it."); *Zeig v. Mass.

Bonding & Ins. Co.*, 23 F.2d 665, 666 (2d Cir. 1928) (holding that when a policyholder settles

with its primary insurer, the actual amount recovered is irrelevant for purposes of determining

the excess insurer's liability and instead the full limits of the primary policy are deemed to have

been exhausted).

### C.    A Pro Rata Set-Off Accounts For The Undisputed Facts Concerning The Settled Insurers' Liability And Settlements

A pro rata reduction is appropriate because it accounts for (i) the circumstances of the

settled insurers' settlements; and (ii) the total limits of the settled insurers available for the Five

Sites, as well as the total liability owed to Olin for each of the Five Sites during particular years.

*First*, as discussed further in Lamorak's motion for summary judgment, the pro rata set-

off approach established in *Koppers* and embraced by the Second Circuit in *Squibb* is

appropriately applied here given the circumstances of Olin's settlements.  ███████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████   In these circumstances, a pro rata set-off approach should be applied as it appropriately

places the risk of settlement on the settling parties, precludes Olin from obtaining a double

recovery, and does not improperly impose the cost of those settlements on third-party Lamorak.
*See Squibb*, 241 F.3d at 173.

A pro rata reduction also accords with  those amounts LMI owes to Lamorak in contribution are LMI's pro rata shares of liability.

*Second*, a pro rata reduction appropriately takes into account the particular coverage available to Olin for the Five Sites from the settled insurers, as well as the settled insurers' liability for the Five Sites during particular years.  Specifically, as reflected in the calculation set forth in Figure 2 of the Scarcella Declaration, a pro rata reduction accounts for (i) the settled insurers' policy limits; (ii) the period of damage for each of the Five Sites; and (ii) the costs incurred at each of the Five Sites, as stipulated by Olin and Lamorak through December 2014, and as reflected in invoices submitted by Olin through 2016.  A pro rata reduction thus accounts for the particular liabilities at issue, while also ensuring that Lamorak is not inappropriately burdened with more than its share of liability for the particular loss at issue.

For all of these reasons, the Court should reduce the judgment by the pro rata shares of the settling insurers.

## II.    Even If The Court Determines Option 2 Is Viable Under New York Law And Policy, The Judgment Should Be Reduced By The Greater Of Option 1 And Option 2

Option 2 provides a judgment reduction "by first determining what percentage of the policy limits for all the sites released under the settlement is comprised by the policy limits for the five remand sites and then multiplying the total settlement amount by that percentage."  As

the Court recognized in its February 28 Order, Option 2 has not been proposed by either party in the summary judgment briefing submitted to the Court. Option 2 finds no obvious support in New York law addressing co-insurer liability, nor is it an approach that has been approved in other all sums jurisdictions.

Option 2 can be read in several ways, and the precise calculation that the Court intended is not clear. Under one possible reading, the judgment is reduced by the full amount of the settlements by comparing (i) the total limits applicable to the Five Sites based on the trigger periods set forth in the Amended 54(b) judgments to (ii) the total limits released in the settlements (excluding policies that contain pollution exclusions). Under another possible reading, the judgment is reduced by more than 75% by comparing (i) the limits of all settled excess policies to (i) the sum of the limits of policies applicable to the Five Sites (both settled and nonsettled).[6] This latter reading is similar to the mechanism adopted by the United States District Court for the Western District of Pennsylvania on remand from the Third Circuit's decision in *Koppers*. *See Koppers Co. by Beazer East v. Certain Underwriters at Lloyd's*, Civ. Action No. 85-2136, 1997 U.S. Dist. LEXIS 16123 (June 23, 1997), attached hereto as Exhibit D to the Supplemental Geltman Declaration. In that case, the district court determined the pro rata apportioned shares of settled insurers to be set off from the nonsettled insurer's liability by creating a ratio where "[t]he numerator . . . is the sum of applicable coverage limits of all settling excess policies" and "[t]he denominator is the sum of the limits of all applicable 1953–1970

---

[6]　██████████████████████████████████████████████████
██████████████████████████████████████████████████
████████████████████████████ However, there are policies issued by other settled and unsettled insurers that are not part of the record that may be necessary to consider in light of any ruling the Court may issue.

excess policies, both settling and non-settling." *Id.* at *16.  The district court then multiplied that

percentage against the verdict to determine the amount to be reduced from the verdict.[7]

Other potential readings of Option 2 have clear defects. ███████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████[8] and (ii) sites for which

the insurers have no liability because the costs incurred are within Olin's retention. ████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████[9] ████████████████████████████████████

████████████████████████████[10] While in this case those

---

[7] Unlike *Koppers* or any New York case law of which Lamorak is aware, Option 2 states the ratio should be multiplied by the settlement amount, rather than the verdict.  However, the basis for the Court's focus on the settlement amount is not clear.  The set-off should be against the verdict not the settlement to be consistent with New York law.

[8] *See* Suppl. Geltman Decl., Ex. A (determining all policies beginning in 1971 contain pollution exclusions).

[9] *See id.*, Ex. B ███████████████████████████████████


[10] *See id.*, Ex. C ████████████████████████████████
Depending on

policies and sites may have been included in the settlements by lawyers as belt and suspenders, they should not impact Lamorak's judgment reduction.  Option 2 should not be able to lead to gaming and manipulation of the number of sites and the particular policy limits that are included in similar global settlement agreements.

Accordingly, New York courts have long held that apportioning liability among co-insurers should be done on a pro rata basis.  *See* Geltman Decl., ¶ 5 (listing cases).  To the extent Option 2 burdens Lamorak with more than its pro rata share of liability due to "gaming" or otherwise, the approach is inefficient.  If the Court reduces the prior judgments in this case by any amount less than the full pro rata shares of settled insurers, Lamorak will seek the difference from the settled insurers via contribution.  *See e.g.*, *DaimlerChrysler Ins. Co. v. Universal Underwriters Ins. Co.*, Index No. 601238/2008, N.Y. Slip Op. 30775(U), 2010 WL 1459007 (Sup. Ct. N.Y. Cnty. Mar. 31, 2010) ("The contract of settlement an insurer enters into with the insured, cannot affect the rights of another insurer who is not a party to it. Instead, 'whatever obligations or rights to contribution may exist between two or more insurers of the same event flow from equitable principles.'") (quoting *Md. Cas. Co.*, 218 F.3d at 211); *Scotts Co. v. Ace Indem. Ins. Co.*, Index No. 602712/05, 18 Misc. 3d 1139(A), 2008 WL 518062, at *3–*4 (Super. Ct., N.Y. Cnty. 2008), *aff'd*, 61 A.D.3d 464, 465 (1st Dep't 2009) (permitting contribution suit against settled co-insurer); *see also Niske*, 615 N.E.2d at 1007–08 (approving reduction of verdict amount followed by apportionment of equitable shares in tort context).  To avoid paying more than its fair share, Lamorak would have to go through another round of litigation with the co-insurers for contribution, defeating the purpose of applying a set-off in the first place.  In turn, according to Olin, Lamorak's co-insurers could and likely would seek indemnification from Olin

the Court's logic, it also may not make sense to give weight to potential liability of policies that attach in excess of the liability at each site.

for any amounts paid to Lamorak in contribution.  *See* Mem. of Law in Supp. Of  Mot. to

Intervene, Jan. 4, 2018 (Doc. No. 2069) at 1-2.  Thus, far from reducing litigation, Option 2 has

the potential to multiply it.

　　　　To avoid this problem in the tort context, New York General Obligations Law § 15-108,

perhaps uniquely among the states, provides that when one joint tortfeasor enters into a

settlement, the court should reduce the liability of the remaining tortfeasors by the greater of the

equitable share of liability that was settled and released or the settlement amount:

> When a release or a covenant not to sue or not to enforce a
> judgment is given to one of two or more persons liable or claimed
> to be liable in tort for the same injury . . . it reduces the claim of
> the releasor against the other tortfeasors to the extent of any
> amount stipulated by the release or the covenant, or in the amount
> of the consideration paid for it, or in the amount of the released
> tortfeasor's equitable share of the damages . . . , ***whichever is the
> greatest.***

N.Y. Gen. Oblig. L. § 15-108(a)  (emphasis added).  New York courts have regularly applied this

rule, noting the same policies articulated in *Squibb* and *Koppers* described above, namely that the

risk of settlement should fall on the settling parties, and not on a non-settling third party.  For

example, in applying set-offs of equitable shares of settled defendant tortfeasors, pursuant to §

15-108, the New York Court of Appeals affirmed an Appellate Division ruling, which noted:

> Where the amounts received in settlement are less than the
> equitable share collectively attributable to the settling tortfeasors,
> the plaintiff will be undercompensated to the same extent . . .
> however, ***this is entirely attributable to the plaintiff's willingness
> to compromise for less than the full amount of liability ultimately
> assessed by the jury*** . . . and is not the result of any windfall
> received by the nonsettling defendant by virtue of the method of
> computation employed.  Furthermore, ***this outcome encourages
> settlement by holding the nonsettling defendant fully liable for
> his proportionate share of the verdict while allowing the other
> defendants to reach a compromise settlement***.

*In re N.Y.C. Asbestos Litig.*, 593 N.Y.S.2d 43, 44-49 (N.Y. App. Div. 1993), *aff'd*, 625 N.E.2d

588 (N.Y. 1993) (emphasis added); *see also Didner v. Keene Corp.*, 624 N.E.2d 979 (N.Y. 1993)

(applying set-offs under § 15-108 by comparing the aggregates of settlement amounts and

apportioned shares, then reducing damages by the greater of those two aggregate amounts).

Similarly, in allocating damages among joint tortfeasors where all but one had settled in

*Niske*, 615 N.E.2d at 1003, the New York Court of Appeals noted the core policies underlying

New York General Obligations Law § 15-108, namely that the benefits of early settlement

outweigh the "risk of chilling plaintiff's desire to settle," and "the potential windfall to

defendants [are] necessary to ensure that plaintiffs do not in effect have a double recovery

against nonsettling defendants." *Id.* at 1007.  Based on these policies, the Court of Appeals

determined to apportion damages using a method that would avoid holding a non-settling

defendant responsible for damages in excess of its equitable share. *Id.* at 1007–08.

In determining the "effect" of a policyholder's settlement on the liability of a non-settled

insurer, the New York Court of Appeals would undoubtedly consider and make its determination

consistent with this state tort law, and the policies on which it is based.  Indeed, the

determination in *Koppers* that "the apportioned share set-off rule is superior to a rule permitting

(or requiring) suits for contribution and indemnity" was based substantially on the Pennsylvania

Supreme Court's adoption of the apportioned share set-off rule in the joint and several tort

liability context. *Koppers*, 98 F.3d at 1452–53 & n.15 (3d Cir. 1996) (citing *Charles v. Giant

Eagle Mkts.*, 522 A.2d 1, 2–3 (Pa. 1987), for the proposition that the "verdict amount against

litigating defendants shall be reduced by amount of settling defendants' apportioned share of

liability regardless of amount received by plaintiff in settlement").

Confidential Information Governed by Protective Order dated 11/02/17 -- REDACTED VERSION

Here, for efficiency and other good policy reasons, and because New York General Obligations Law § 15-108 applies set-offs based on the greater of (i) the settled insurer's equitable share and (ii) amounts paid in settlement, even if the Court determines that Option 2 is viable under New York law and policy, the Court should provide Lamorak the greater reduction of Option 1 and Option 2.

## **CONCLUSION**

For the foregoing reasons, Lamorak's summary judgment motion should be granted and, at a minimum, the judgment against Lamorak reduced by the pro rata shares of the settled insurers.

Dated:  New York, New York
        March 6, 2018

                     Respectfully submitted,

                     SIMPSON THACHER & BARTLETT LLP

                     By:      */s/ Susannah S. Geltman*
                               Bryce L. Friedman  (BF9108)
                               Susannah S. Geltman  (SG2243)
                               425 Lexington Avenue
                               New York, New York 10017-3954
                               Tel.: (212) 455-2000
                               Fax: (212) 455-2502
                               Email:  bfriedman@stblaw.com
                                      sgeltman@stblaw.com

                     KENNEDYS CMK, LLP

                               Ralph J. Luongo (RL1342)
                               Elaine Whiteman Klinger (EW9967)
                               Bradley J. Mortensen (BM6153)
                               Two Liberty Place
                               50 South 16th Street, Suite 2625
                               Philadelphia, PA 19102
                               Tel.: (267) 479-6700
                               Fax: (267) 479-6710
                               Email:  Ralph.Luongo@Kennedyscmk.com
                                      Elaine.Klinger@Kennedyscmk.com
                                      Bradley.Mortensen@Kennedyscmk.com

                               and: 570 Lexington Avenue, 8th Floor
                               New York, NY 10022
                               Tel.: (646) 625-4000
                               Fax: (646) 625-4044

                     *Attorneys for Lamorak Insurance Company*