**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x

OLIN CORPORATION,                                     :

                Plaintiff,                    :

       v.                                             :                    84 Civ. 1968 (JSR)

LAMORAK INSURANCE COMPANY,           :

              Defendant.                 :

-----------------------------------------------------------------x

## PLAINTIFF OLIN CORPORATION'S RESPONSE TO LAMORAK INSURANCE COMPANY'S OPENING BRIEF IN RESPONSE TO THE COURT'S ORDER DATED FEBRUARY 28, 2018

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND ...................................................................................................................2

ARGUMENT .........................................................................................................................4

I.   The Court Should Base Any Setoff On The Amounts Paid By Other Insurers To Olin. ....4

    A.   Alternative (ii) Is Consistent With Controlling Law, Equity, And Public Policy. .................................................................................................................4

        1.   Controlling Second Circuit and New York Court of Appeals Precedent Strongly Supports Calculating Setoff Based On Amounts Actually Paid. ....................................................................................4

        2.   Precedent From Other Courts Supports Calculating Setoff Based On Amounts Actually Paid. ........................................................................6

        3.   It Makes Sense Both As A Matter Of Law And A Matter Of Policy To Calculate Setoff Based On Amounts Actually Paid. .............................8

    B.   Using An Objective Criteria To Determine What Amounts Were Paid To Olin In Settlement Is A Straightforward Exercise. .................................................10

II.   The Court Should Not Impose A *Pro Rata* Setoff. .........................................................12

    A.   The Third Circuit Cases Predicting Pennsylvania and New Jersey Law That Lamorak Relies Upon Are Inapposite And Unpersuasive............................12

    B.   The New York Authorities Lamorak Cites Are Inapposite. .................................14

        1.   Authorities Dealing With Contribution Between Non-Settling Insurers Are Irrelevant. ..........................................................................14

        2.   Authorities Dealing With Primary Policy Exhaustion Are Irrelevant. .................................................................................................16

    C.   Lamorak's Policy Arguments For *Pro Rata* Setoff Are Unfounded. ...................17

    D.   Lamorak's Approach To *Pro Rata* Setoff Is Methodologically Flawed...............19

III.   Lamorak Cannot Base A Setoff In A Case Arising Under Contracts Of Insurance On A New York Statute That Applies Only To Actions Sounding In Tort. ..............................21

CONCLUSION....................................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Air & Liquid Sys. Corp. v. Allianz Underwriters Ins. Co.*,
  2013 WL 5436934 (W.D. Pa. Sept. 27, 2013) ..........................................................................8

*Atl. Mut. Ins. Co. v. Atl. Nat. Ins. Co.*,
  326 N.Y.S.2d 438 (App. Div. 1971) ...............................................................................14, 16

*Atlas Ins. Co. v. Ciccone*,
  156 N.Y.S.2d 122 (N.Y. Sup. Ct. 1956) ........................................................................ 21-22

*Beazley Ins. Co. v. Ace Am. Ins. Co.*,
  150 F. Supp. 3d 345 (S.D.N.Y. 2015)...................................................................................14

*Bondex Int'l Inc. v. Hartford Accident & Indem. Co.*,
  2007 WL 405938 (N.D. Ohio, Feb. 1, 2007) ........................................................................23

*Brown v. Schneider*,
  299 N.Y.S.2d 965 (App. Div. 1969) ......................................................................................10

*Brown v. Travelers Ins. Co.*,
  610 A.2d 127 (R.I. 1992) .......................................................................................................15

*Cascade Corp. v. Am. Home Assur. Co.*,
  135 P.3d 450 (Or. Ct. App. 2006).......................................................................................7, 9

*Certain Underwriters at Lloyds of London v. Ill. Nat'l Ins. Co.*,
  2017 WL 4326056 (S.D.N.Y. Aug. 31, 2017) ......................................................................21

*Chemical Leaman Tank Lines, Inc. v. Aetna Casualty & Surety Co.*,
  177 F.3d 210 (3d Cir. 1999).................................................................................................13

*Childs v. N.J. Mfrs. Ins. Co.*,
  531 A.2d 723 (N.J. 1987).....................................................................................................23

*Consolidated Edison Co. of N.Y., Inc. v. Allstate Ins. Co.*,
  774 N.E.2d 687 (N.Y. 2002)...................................................................................................5

*DaimlerChrysler Insurance Co. v. Universal Underwriters Insurance Co.*,
  2010 WL 1459007 (N.Y. Sup. Ct. Mar. 31, 2010) ...............................................................23

*E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*,
  241 F.3d 154 (2d Cir. 2001)............................................................................................16, 17

*Eli Lilly & Co. v. Aetna Cas. & Sur. Co.*,
    2002 WL 34478091 (Ind. Super. Ct. July 15, 2002)........................................................8, 9

*Emhart Industries, Inc. v. Century Indemnity Co.*,
    559 F.3d 57 (1st Cir. 2009)...............................................................................................6

*Fed. Ins. Co. v. Atl. Nat. Ins. Co.*,
    250 N.E.2d 193 (N.Y. 1969)......................................................................................14, 16

*Goodrich Corp. v. Commercial Union Ins. Co.*,
    2008 WL 2581579 (Ohio Ct. App. June 30, 2008)........................................................7, 9

*Gould, Inc. v. Cont'l Cas. Co.*,
    585 A.2d 16 (Pa. Super. Ct. 1991)..................................................................................23

*Hartford Underwriters Ins. Co. v. Hanover Ins. Co.*,
    122 F. Supp. 3d 143 (S.D.N.Y. 2015)............................................................................20

*HRH Const. Corp. v. Commercial Underwriters Ins. Co.*,
    783 N.Y.S.2d 351 (App. Div. 2004) ...............................................................................14

*In re Viking Pump*,
    52 N.E.3d 1144 (N.Y. 2016).................................................................................. passim

*Ins. Co. of N. Am. v. Kayser-Roth Corp.*,
    770 A.2d 403 (R.I. 2001) ............................................................................................6, 7

*Ins. Co. of Pa. v. Johnson*,
    2011 WL 13176002 (D. Vt. Jan. 26, 2011) ....................................................................21

*Keene Corp. v. Ins. Co. of N. Am.*,
    667 F.2d 1034 (D.C. Cir. 1981) .....................................................................................19

*Knopick v. Connelly*,
    639 F.3d 600 (3d Cir. 2011)............................................................................................6

*Koppers Co. v. Aetna Casualty & Surety Co.*,
    98 F.3d 1440 (3d Cir. 1996).................................................................................. passim

*Koppers Co. v. Beazer East v. Certain Underwriters at Lloyd's*,
    1997 U.S. Dist. LEXIS 16123 (W.D. Pa. June 23, 1997)............................................19, 20

*Liberty Mutual Insurance Co. v. Black & Decker Corp.*,
    383 F. Supp. 2d 200 (D. Mass. 2004) .............................................................................7

*Lumbermens Mut. Cas. Co. v. Allstate Ins. Co.*,
    417 N.E.2d 66 (N.Y. 1980).........................................................................................14, 16

*Maryland Casualty Co. v. W.R. Grace & Co.*,
   218 F.3d 204 (2d Cir. 2000)............................................................................15

*Mass. Elec. Co. v. Commercial Union Ins. Co.*,
   2005 WL 3489874 (Mass. Super. Ct. Oct. 25, 2005) ..................................8

*Nat. Cas. Co. v. Vigilant Ins. Co.*,
   466 F. Supp. 2d 533 (S.D.N.Y. 2006)..........................................................14

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Essex Ins. Co.*,
   2013 WL 6328792 (W.D. Pa. Dec. 5, 2013)...................................................8

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Hartford Ins. Co. of Midwest*,
   677 N.Y.S.2d 105 (App. Div. 1988) .......................................................14, 16

*Olin Corp. v. Am. Home Assurance Co.*,
   704 F.3d 89 (2d Cir. 2012)........................................................................2, 20

*Olin Corp. v. OneBeacon Am. Ins. Co.*,
   864 F.3d 130 (2d Cir. 2017).............................................................. passim

*One Beacon America Ins. Co. v. American Motorist Ins. Co.*,
   679 F.3d 456 (6th Cir. 2012) ........................................................................23

*Penn. Nat. Mut. Cas. Ins. Co. v. St. John*,
   106 A.3d 1 (Pa. 2014)......................................................................................8

*Puget Sound Energy v. ALBA Gen. Ins. Co.*,
   68 P.3d 1061 (Wash. 2003) .............................................................................9

*Puget Sound Energy v. Certain Underwriters at Lloyd's, London*,
   138 P.3d 1068, 1069 (Wash. Ct. App. 2006) ..........................................23

*Puritan Ins. Co. v. Cont'l Cas. Co.*,
   599 N.Y.S.2d 602 (App. Div. 1993) ..........................................................14

*Reliance Grp. Holdings, Inc. v. Nat'l Union Fire Ins. Co.*,
   594 N.Y.S.2d 20 (App. Div. 1993) ...............................................................6

*Roman Catholic Diocese of Brooklyn v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
   991 N.E.2d 666 (N.Y. 2013)......................................................................2, 5

*RSR Corp. v. International Insurance Co.*,
   2009 WL 927527 (N.D. Tex. Mar. 23, 2009) ..............................................7

*Safeco Ins. Co. of Ill. v. Country Mut. Ins. Co.*,
   267 P.3d 540 (Wash. Ct. App. 2011)..........................................................15

*Scotts Co., LLC v. Pac. Employers Ins. Co.*,
  875 N.Y.S.2d 891 (App. Div. 2009) ...................................................................22

*Scotts Co. v. Ace Indemnity Insurance Co.*,
  2008 WL 518062 (N.Y. Sup. Ct. 2008) ......................................................... 23-24

*Selective Ins. Co. of Am. v. County of Rensselaer*,
  47 N.E.3d 458 (N.Y. 2016) ...............................................................................5

*Spaulding Composites Co., Inc. v. Aetna Cas. & Sur. Co.*,
  819 A.2d 410 (N.J. 2003) .................................................................................13

*Stonewall Ins. Co. v. E.I. du Pont de Nemours & Co.*,
  996 A.2d 1254 (Del. 2010) ...................................................................4, 6, 7, 13

*Tops Markets, Inc. v. Md. Cas.*,
  700 N.Y.S.2d 325 (App. Div. 1999) ........................................................14, 15, 16

*Travelers Ins. Co. v. Gen. Acc., Fire & Life Assur. Corp.*,
  271 N.E.2d 542 (N.Y. 1971) ........................................................................14, 16

*U.S. Fire Ins. Co. v. Fed. Ins. Co.*,
  858 F.2d 882 (2d Cir. 1988) ........................................................................14, 16

*USF&G v. Maggiore*,
  749 N.Y.S.2d 555 (App. Div. 2002) ...................................................................9

*Virginia Sur. Co., Inc. v. Travelers Prop. Cas. Co. of Am.*,
  2012 WL 246087 (N.Y. Sup. Ct. Jan. 12, 2012) ...................................................14

*Westinghouse Elec. Corp. v. Amer. Home Assur. Co.*,
  2004 WL 1878764 (N.J. Super. Ct. App. Div. July 8, 2004) .....................................8

*Weyerhaeuser Co. v. Commercial Union Ins. Co.*,
  15 P.3d 115 (Wash. 2001) ........................................................................6, 7, 8, 9

*Whitelegg v. Standard Accident Ins. Co.*,
  271 N.Y.S.2d 492 (N.Y. Sup. Ct. 1966) .............................................................22

*Williams by Williams v. Niske by Niske*,
  615 N.E.2d 1003 (N.Y. 1993) ..........................................................................24

*Zeig v. Mass. Bonding & Ins. Co.*,
  23 F.2d 665 (2d Cir. 1928) ........................................................................16, 17

*Zurich-Am. Ins. Cos. v. Atl. Mut. Ins. Ins. Cos.*,
  531 N.Y.S.2d 911 (App. Div. 1988) ..................................................................14

**STATUTES**

General Obligations Law § 15-108 ............................................................................21, 22

**OTHER AUTHORITIES**

18 Am. Jur. 2d, Contribution § 23 .................................................................................6

Black's Law Dictionary (10th ed. 2014).......................................................................17

15 Couch on Ins. § 218:46 (2017) ...............................................................................23

Seth A. Tucker,
   *When is Credit Due: Reallocation of Settlements under 'All Sums'*
   7 Ins. Coverage L. Bull., No. 1, Jan. 2009...........................................................12

## INTRODUCTION

Of the two potential methods of calculating a setoff that the Court has proposed in its request for supplemental briefing, *see* Dkt. 2148, Lamorak insists that only the *pro rata* approach is proper. *See* Dkt. 2150 ("Lamorak Supp. Br."). But a *pro rata* setoff is unsupported by the law, contrary to Lamorak's Condition C policies, and would produce an inequitable result.

By contrast, Alternative (ii)—which uses an objective criteria to determine the amounts paid by Olin's other insurers to compensate Olin for its losses at the Five Sites—is consistent with Lamorak's policy language and the Second Circuit's instructions to reduce Olin's judgment by "amounts paid" to Olin to settle the Five Sites.[1] Alternative (ii) also is consistent with the New York Court of Appeals' rejection of *pro rata* allocation. *In re Viking Pump*, 52 N.E.3d 1144, 1151-52 (N.Y. 2016). It also prevents any double recovery by ensuring that Lamorak is credited for any amounts paid to Olin by other insurers in connection with the Five Sites. And it is consistent with the approach to setoff adopted by every state supreme court to consider the question.

Alternative (ii) also leads to an equitable result. Lamorak issued "all sums" policies to Olin. Rather than pay Olin's meritorious claims under those policies, or settle Olin's claims like every other excess insurer, Lamorak chose to litigate. In doing so, Lamorak assumed the risk that it would be the last insurer standing, which it is, and that it would lose, which it did. Now that *Viking Pump* has made clear that Lamorak is liable to Olin for "all sums" and not just its *pro rata* share of the loss, Lamorak must finally own up to that responsibility, for which it collected premiums. By contrast, it would be manifestly inequitable for Lamorak to escape its obligations.

---

[1] Olin preserves its argument, advanced in its briefing on these cross-motions, that Lamorak has not met its burden to prove "amounts paid to settle claims with respect to the five manufacturing sites at issue here." *See Olin Corp. v. OneBeacon Am. Ins. Co.*, 864 F.3d 130, 150 (2d Cir. 2017) ("*Olin IV*").

## BACKGROUND

*Viking Pump* holds that "'in determining a dispute over insurance coverage, courts first look to the language of the policy.'" 52 N.E.3d at 1151 (quoting *Roman Catholic Diocese of Brooklyn v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 991 N.E.2d 666, 671 (N.Y. 2013)) (alterations omitted). When calculating allocation and setoff, the critical policy language is Condition C.

Policy language like Condition C "originated during the shift from 'accident-based' to 'occurrence-based' liability policies in the 1960s and 1970s, and [was] purportedly designed to prevent any attempt by policyholders to recover under a subsequent policy—based on the broader definition of occurrence—for a loss that had already been covered by the prior 'accident-based' policy." *Id.* at 1152 (citations omitted). In Lamorak's policies, Condition C provides as follows:

> It is agreed that if any loss covered hereunder is also covered in whole or in part under any other excess policy issued to the Assured prior to the inception date hereof, the limit of liability hereon ... shall be reduced by any amounts due to the Assured on account of such loss under such prior insurance.

> Subject to the foregoing paragraph and to all the other terms and conditions of this Policy, in the event that personal injury or property damage arising out of an occurrence covered hereunder is continuing at the time of termination of this Policy, Underwriters will continue to protect the Assured for Liability in respect of such personal injury or property damage without payment of additional premium.

Condition C makes Lamorak's policies "all sums" policies. *Id.* at 1149.

The Second Circuit has addressed Condition C twice. In *Olin Corp. v. American Home Assurance Co.*, it held that the Prior Insurance Provision, which is the first paragraph of Condition C, is an anti-stacking provision that limits a policyholder to recovering no more than one policy limit per occurrence from an insurer, even when that insurer has issued multiple consecutive policies at the same level of coverage. 704 F.3d 89, 104 (2d Cir. 2012) ("*Olin III*"). In *Olin Corp. v. OneBeacon America Insurance Co.*, it extended this rule to policies issued by different insurers.

2

*Olin IV*, 864 F.3d at 148.  Thus, even though multiple policies with Condition C may be triggered, Olin may recover only one policy limit per occurrence at each layer of coverage.

With one exception, every policy at Lamorak's layer of coverage in the three towers preceding Lamorak's 1970 Condition C policies has Condition C.  *See* Dkt. 2154 at Ex. 18.[2]



---

[2] Although the Court has not ruled on whether the follow-form excess policies issued by the non-London insurers in these same towers also contained Condition C (and some such insurers have disputed whether their policies contained Condition C), Olin assumes for the purpose of this motion that, with one exception, those policies also contained Condition C.

## ARGUMENT

**I.    The Court Should Base Any Setoff On The Amounts Paid By Other Insurers To Olin.**

Of the two approaches to setoff identified in the Court's February 28 order, setoff should be based on Alternative (ii):  "an amount arrived at by first determining what percentage of the policy limits for all the sites released under the settlement is comprised by the policy limits for the five remand sites and then multiplying the total settlement amount by that percentage."  Dkt. 2148 at 1.  That method would apply an objective test to each global settlement to determine what portion of the settlement can be fairly allocated to the Five Sites.  It is consistent with the Second Circuit's instruction for this Court to calculate the "amounts paid to settle claims with respect to the five manufacturing sites at issue here."  *Olin IV*, 864 F.3d at 150.  It also is consistent with every other all-sums jurisdiction and with New York public policy.  By contrast, the *pro rata* approach favored by Lamorak is entirely disconnected from the amounts received by Olin to settle claims related to the Five Sites.

**A.    Alternative (ii) Is Consistent With Controlling Law, Equity, And Public Policy.**

**1.    Controlling Second Circuit and New York Court of Appeals Precedent Strongly Supports Calculating Setoff Based On Amounts Actually Paid.**

Lamorak's supplemental brief all but ignores *Olin IV*, citing it only for the uncontroversial proposition that a policyholder cannot receive a double recovery.  *See* Lamorak Supp. Br. 1, 8.  But *Olin IV* was explicit that any setoff must be based on the actual amounts paid to Olin, not on a theoretical measure of what Olin's co-insurers could have been forced to pay had they not settled:

- The Second Circuit held that under the Lamorak policies, all sums allocation requires a setoff "*by amounts paid* under any prior insurance policy at the same level of coverage *that did, in fact, provide coverage* to Olin for the same loss."  *Olin IV*, 864 F.3d at 149 (emphasis added).  In support, it cited a Delaware Supreme Court decision holding that a non-settled insurer is entitled to only an amounts-paid setoff.  *Id.* (citing *Stonewall Ins. Co. v. E.I. du Pont de Nemours & Co.*, 996 A.2d 1254, 1260 (Del. 2010)).

- The Second Circuit provided for a setoff "*by amounts paid* to settle claims with respect to the five manufacturing sites at issue here[.]" *Id.* at 150 (emphasis added).

- The Second Circuit acknowledged that Lamorak could "offset its indemnification obligations *by amounts already paid* to cover the loss by another insurer in the same coverage tier." *Id*. at 151 (emphasis added).

- The initial version of the opinion stated that "[j]ust as the all sums allocation method allows Olin to seek recovery from any insurer of its choosing up to the limits of the relevant policy, it also, by the same token, requires reducing the limits of liability of any prior insurance policy providing coverage for the same loss."  But an errata sheet issued the next day amended the sentence to say:  "[j]ust as the all sums allocation method allows Olin to seek recovery from any insurer of its choosing up to the limits of the relevant policy, by the same token, it also requires reducing the limits of liability *on the [Lamorak] policy at issue by amounts paid under any prior insurance policy at the same level of coverage that did, in fact, provide coverage to Olin for the same loss*." Errata Sheet, No. 15-2047 (2d Cir. July 19, 2017) (new text in italics).  Accordingly, far from correcting a simple typographical error, the errata sheet affirmatively shifted from proposing that a setoff be based on "any prior insurance policy providing coverage for the same loss" to a setoff based on "*amounts paid* under any prior insurance policy at the same level of coverage *that did, in fact, provide coverage to Olin* for the same loss."  *Id*. (emphasis added).

Equally glaring is that Lamorak ignores *Viking Pump* entirely, failing to cite it even once in its supplemental brief.  There is a reason for that.  The Court of Appeals in *Viking Pump* rejected the *pro rata* allocation that Lamorak promotes.  52 N.E.3d at 1155-56.  The court grounded its decision in the policy language, explaining that "it would be inconsistent with the language of [Condition C] to use pro rata allocation," and that "pro rata allocation would … render [Condition C] irrelevant."  *Id*. at 1154.  The Court of Appeals emphasized that under well-established New York law, courts should "first look to the language of the policy" and enforce it as written.  *Id*. at 1151 (citations omitted); *accord Selective Ins. Co. of Am. v. County of Rensselaer*, 47 N.E.3d 458, 461 (N.Y. 2016); *Roman Catholic Diocese of Brooklyn*, 991 N.E.2d at 671; *Consolidated Edison Co. of N.Y., Inc. v. Allstate Ins. Co.*, 774 N.E.2d 687 (N.Y. 2002).

For this same reason, this Court should not adopt in the name of setoff a *pro rata* approach to allocation that the New York Court of Appeals held was irreconcilable with Lamorak's policy.

Courts of equity developed contribution, which means it is available only if legal remedies are inadequate. *Reliance Grp. Holdings, Inc. v. Nat'l Union Fire Ins. Co.*, 594 N.Y.S.2d 20, 26 (App. Div. 1993) ("[T]he right to contribution is inherently equitable in nature." (quoting 18 Am. Jur. 2d, Contribution § 23)). A contractual provision like Condition C is an adequate legal remedy, even if Lamorak believes it would fare better if the Court disregarded the terms of the policies.

### 2. Precedent From Other Courts Supports Calculating Setoff Based On Amounts Actually Paid.

A setoff based on the amounts actually paid in settlement—also called a *pro tanto* setoff—is the unanimous rule of the state supreme courts in all-sums jurisdictions that have addressed the issue. *See Ins. Co. of N. Am. v. Kayser-Roth Corp.*, 770 A.2d 403, 413-14 (R.I. 2001); *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 15 P.3d 115, 125-26 (Wash. 2001) (en banc); *Stonewall Insurance*, 996 A.2d at 1260. As a federal court sitting in diversity, this court should consider "other state supreme courts that have addressed the issue." *Knopick v. Connelly*, 639 F.3d 600, 606 (3d Cir. 2011) (quotations and citations omitted).

For example, the Rhode Island Supreme Court in *Kayser-Roth* affirmed a setoff equal to the amounts paid under known settlements and rejected the insurer's claim that it should have been able to show what other insurers on the risk could be required to pay in *pro rata* contribution. 770 A.2d 403 at 413-14. It explained that allowing insurers to obtain "a setoff beyond the credit given for the [settled policy] would have the effect of discouraging insurers from settling in the future and would reward [the insurer] for its conduct in the instant case." *Id*. at 414. In *Emhart Industries, Inc. v. Century Indemnity Co.*, 559 F.3d 57 (1st Cir. 2009), the First Circuit applied *Kayser-Roth* in rejecting an insurer's argument that, despite having an all sums policy obligation, it "was only responsible for a pro rata share of the underlying defense costs" based "upon the time-on-the-risk." *Id*. at 70 (quotations and citations omitted). The First Circuit explained that under *Kayser-Roth*,

the appropriate setoff equaled the amount of "the only known settlement" from a co-insurer, rather than the *pro rata* setoff the insurer sought.  *Id.* at 73.

Similar is the Washington Supreme Court's decision in *Weyerhaeuser*.  There, in holding that an insurer with all sums liability may receive *pro tanto* setoffs for the amounts the policyholder received in settlement with other insurers for the same loss, the court explained that the policyholder "must first be fully compensated … before any setoff is ever allowed."  15 P.3d at 125.  The court explained that a different rule of setoff "would encourage litigation and reward the non-settling insurer for refusing to settle."  *Id.* at 126.  And in *Stonewall Insurance*, the Delaware Supreme Court held that, for any insurer with an all sums obligation and a policy that includes language similar to Condition C, a setoff based on prior settlements must be based on "any amounts received by or payable to [the insured] from prior excess insurers."  996 A.2d at 1260.

Many other courts have likewise held that a setoff for a settlement of a co-insurer at the same level of coverage must be based on amounts paid to the policyholder, not amounts that could have been required under a scheme of *pro rata* allocation.  Both *Liberty Mutual Insurance Co. v. Black & Decker Corp.*, 383 F. Supp. 2d 200, 216-17 (D. Mass. 2004), and *RSR Corp. v. International Insurance Co.*, No. 3:00-cv-0250, 2009 WL 927527, at *15 (N.D. Tex. Mar. 23, 2009), impose setoffs based on amounts paid, not on a *pro rata* calculation.  The Ohio Court of Appeals refused to provide any setoff to non-settling insurers, absent a showing that the amounts paid in settlement would result in a double recovery. *Goodrich Corp. v. Commercial Union Ins. Co.*, Nos. 23585, 23586, 2008 WL 2581579, at *24-25 (Ohio Ct. App. June 30, 2008) (unreported). And the Oregon Court of Appeals reversed a trial court's application of the *pro rata* method because that approach would have left the policyholder with a loss despite having contracted to receive all sums protection.  *Cascade Corp. v. Am. Home Assur. Co.*, 135 P.3d 450, 455-56 (Or.

Ct. App. 2006).  Trial courts in Massachusetts and Indiana also have held that setoffs for settled policies should be *pro tanto*, not *pro rata*.  *Mass. Elec. Co. v. Commercial Union Ins. Co.*, No. 9900467B, 2005 WL 3489874, at *2 (Mass. Super. Ct. Oct. 25, 2005); *Eli Lilly & Co. v. Aetna Cas. & Sur. Co.*, No. 49D12-0102-CP-243, 2002 WL 34478091 (Ind. Super. Ct. July 15, 2002).

The only contrary authorities Lamorak cites are the Third Circuit's decision in *Koppers Co. v. Aetna Casualty & Surety Co.*, 98 F.3d 1440 (3d Cir. 1996), which predicts what the Pennsylvania Supreme Court would do if confronted with the *pro rata / pro tanto* question, and federal district courts bound by *Koppers*.[3]  Notably, Pennsylvania courts have never embraced the *pro rata* rule of *Koppers* and the Pennsylvania Supreme Court has declined to embrace other aspects of the *Koppers* decision.  *See Penn. Nat. Mut. Cas. Ins. Co. v. St. John*, 106 A.3d 1, 38-39 (Pa. 2014) (refusing to follow *Koppers* on different issue of Pennsylvania law).

### 3. It Makes Sense Both As A Matter Of Law And A Matter Of Policy To Calculate Setoff Based On Amounts Actually Paid.

A setoff based on amounts paid in settlement not only is the unanimous rule of state supreme courts to have considered the question, but also promotes the relevant legal and policy considerations that drive this area of the law.  A setoff based on amounts paid both ensures that the policyholder can be made whole (up to the policy limits) and also prevents a double recovery.  Under an amounts-paid setoff, the policyholder ultimately recovers all its losses—all sums—but cannot double-count any loss for which the insurer can prove that settlement payments have already been made.  *See Olin IV*, 864 F.3d at 151 (assigning burden to prove double recovery to

---

[3] *See* Lamorak Supp. Br. 10 (citing *Nat'l Union Fire Ins. Co. of Pittsburgh v. Essex Ins. Co.*, No. 13-32, 2013 WL 6328792, at *9 (W.D. Pa. Dec. 5, 2013); *Air & Liquid Sys. Corp. v. Allianz Underwriters Ins. Co.*, No. 11-247, 2013 WL 5436934, at *57-58 (W.D. Pa. Sept. 27, 2013)). Lamorak also cites a New Jersey case that relies on *Koppers* in purporting to apply Pennsylvania law, *id.* at 10 (citing *Westinghouse Elec. Corp. v. Amer. Home Assur. Co.*, Nos. A-6706-01T5 & A-6720-01T5, 2004 WL 1878764, at *9-*13 (N.J. Super. Ct. App. Div. July 8, 2004).

Lamorak); *accord Weyerhaeuser*, 15 P.3d at 126 ("Were we to hold the insured bears the burden of proving it has not received a double recovery, such a rule would encourage litigation and reward the nonsettling insurer for refusing to settle."); *Puget Sound Energy v. ALBA Gen. Ins. Co.*, 68 P.3d 1061, 1064 (Wash. 2003) ("[I]f a non-settling insurer seeks to offset its responsibility for a claim using proceeds from such a settlement, it has the burden of establishing what part of the settlement was attributable to the claim it seeks to offset."); *Goodrich Corp.*, 2008 WL 2581579, at *8 (refusing to provide settlement credits to non-settling insurers that had not satisfied burden to prove that without a setoff, the policyholder would receive a double recovery).

In contrast, a *pro rata* setoff undermines the legal and policy considerations that support the all sums regime of *Viking Pump*.   First, it "effectively eliminate[s] early or piecemeal settlements" because it requires the policyholder to bear the risk of how a court might later apportion liability among insurers.   *Eli Lilly*, 2002 WL 34478091.   Second, it compels the policyholder "to self-insure a loss for which it had paid insurance" because any settlement for what later proves to be less than the settled insurer's *pro rata* share will be borne by the policyholder. *Id*.; *see also Cascade Corp.*, 135 P.3d at 455-56.   Third, part of the rationale for "all sums" is that it allows the policyholder to recover fully, irrespective of any litigation about the division of responsibility among the policyholder's insurers.   That benefit that is lost if a court takes a *pro rata* approach to discerning the effect of settlements.

For these reasons, allowing an insurer with all sums liability to effectuate a *pro rata* reallocation of losses through setoff or contribution produces "a result with resounding consequences and one which has been firmly rejected."   *Eli Lilly*, 2002 WL 34478091.   It is fundamental to New York law that a non-breaching policyholder be made whole, *e.g.*, *USF&G v. Maggiore*, 749 N.Y.S.2d 555, 558 (App. Div. 2002), that the law should encourage settlement,

*e.g.*, *Brown v. Schneider*, 99 N.Y.S.2d 965, 966-67 (App. Div. 1969), and that the policyholder is not required to bear the burden of litigating the proper allocation of responsibility among its co-insurers, *e.g.*, *Viking Pump*, 52 N.E.3d at 1153-54.  A *pro rata* setoff contravenes each of these policy goals, while an amounts-paid setoff advances each of them.

### B. Using An Objective Criteria To Determine What Amounts Were Paid To Olin In Settlement Is A Straightforward Exercise.

Lamorak criticizes the Court's explanation of Alternative (ii) as "not clear."  Lamorak Supp. Br. 2, 15, 16 n.7.  But there is no real confusion here.  The Court instructed the parties to calculate a setoff in two sequential, straightforward steps:

(1) Determine the "percentage of the policy limits for all the sites released under [each] settlement [that] is comprised by the policy limits for the five remanded sites," and

(2) "multiply[ ] the total settlement amount by that percentage."

Dkt. 2148 at 1.  Those instructions are clear.  Indeed, Lamorak acknowledges that "one possible reading" of Alternative (ii) is to "compar[e] (i) the total limits applicable to the Five Sites based on the triggered periods set forth in the Amended 54(b) judgments to (ii) the total limits released in the settlements (excluding policies that contain pollution exclusions)."  Lamorak Supp. Br. 15. That is essentially what Olin did in its opening brief in its "Alternative (ii) – Adjusted Policy Limits" approach.  Dkt. 2157 at 6-7 ("Olin Supp. Br.").  Although Lamorak did not do the math in its brief, Olin did:  it results in a judgment reduction of $█████████  *Id.* at 7, 24.[4]

Dissatisfied with the reduction Alternative (ii) yields, Lamorak seeks to twist it to become a *pro rata* setoff.  Lamorak claims "another possible reading" of Alternative (ii) is to reduce the

---

[4] Recognizing that the "triggered periods" of damage at the Five Sites set forth in the 2015 judgments were not known at the time of the settlements, Olin's "Alternative (ii) – Total Policy Limits" calculated the reduction under Alternative (ii) using all settled policy limits that potentially could have been applicable to the Five Sites.  Olin Supp. Br. 5-6.  This approach results in a judgment reduction of $█████.  *Id.* at 5, 24.

judgment by "more than 75%" by applying a setoff based on "settled *and nonsettled*" policy limits[5]—in other words, allocating the loss among all insurers in proportion to their policy limits (rather than allocating the *settlement amount* among the settled sites). Lamorak Supp. Br. 15 (emphasis added). Lamorak's reading cannot be reconciled with the Court's order, which instructed the parties to determine a setoff under Alternative (ii) based on the amount of the settlements and the policy limits "released under the settlement." Dkt. 2148 at 1.

Lamorak further claims that the Court should ███████████████████████ from its calculation of an Alternative (ii) setoff because, according to Lamorak, ███████████ ███████████████████████████████████████████████████ ███████████████. Lamorak Supp. Br. 16. First, this cannot be squared with the Court's ███████████████████████████████████████████████ Dkt. 2148 at 1 (emphasis added). Second, this ignores that ███████████████████████ ███████. That is significant because, given the nature of long-tail environmental liabilities, ███ ███████████████████████████████████████████████ ███████████████. So the only "gaming and manipulation" here is Lamorak's attempt ███████████████████████████. *See* Lamorak Supp. Br. 17.[6]





In any event, to the extent the Court shares Lamorak's concern  , as Lamorak does.  Rather, the Court should adopt the approach of renowned insurance law expert, Professor Kenneth Abraham, .  *See* Olin Supp. Br. 7-8.  That approach results in a judgment reduction of $ .  *Id*. at 24.

## II.     The Court Should Not Impose A *Pro Rata* Setoff.

### A.     The Third Circuit Cases Predicting Pennsylvania and New Jersey Law That Lamorak Relies Upon Are Inapposite And Unpersuasive.

Lamorak claims *pro rata* setoff is "the preferred approach to account for the effect of those settlements on the non-settling insurer's liability."  Lamorak Supp. Br. 7.  Not so: no state supreme court has adopted it.  *See generally* Seth A. Tucker, *When is Credit Due:  Reallocation of Settlements under 'All Sums'*, 7 Ins. Coverage L. Bull., No. 1, Jan. 2009, at 7 (noting that "pro tanto" setoff, where "non-settling insurers receive at most a credit in the amount that the policyholder actually obtained from the settled carriers . . . [,] is the majority rule").  Lamorak does claim that two jurisdictions follow its preferred rule, Pennsylvania and New Jersey, *see* Lamorak Supp. Br. 10, but it is wrong even about those jurisdictions, *see supra* Part I.A.2.

Primarily, Lamorak asks this Court to predict that the New York courts would do what the Third Circuit predicted in *Koppers* that the Pennsylvania Supreme Court would do.  Lamorak Supp. Br. 8-10.  But not even the Pennsylvania Supreme Court has adopted *Koppers*.  *See supra* Part I.A.2.  Moreover, despite the emphasis Lamorak places on *Koppers*, that case does not get Lamorak anywhere.  A fundamental rule of New York insurance law is that "in determining a dispute over insurance coverage, courts first look to the language of the policy."  *Viking Pump*, 52 N.E.3d at 1151 (quotation omitted).  So it is significant that *Koppers* did not construe a policy with

language like the Prior Insurance Provision of Condition C, which expressly addresses how to account for payments by prior insurers.  Instead, *Koppers* dealt with the question of how to credit payments by prior insurers in the *absence* of such a provision.

Indeed, the only case cited by either party addressing how to credit payments by prior insurers in light of Condition C is the Delaware Supreme Court's decision in *Stonewall Insurance*, 996 A.2d 1254.  And the Delaware Supreme Court there concluded that a setoff based on "any amounts received by or payable to [the insured] from prior excess insurers [ ] is the only proper interpretation" of Condition C.  *Id.* at 1260.  So as the Delaware Supreme Court noted in *Stonewall*, a *pro rata* setoff is simply not consistent with the policy language of Condition C.  In accord with New York law, this Court therefore should give effect to that policy language, which limits Lamorak to the amounts-paid setoff the Court proposed under Alternative (ii).  Dkt. 2148 at 1.

Lamorak also claims that New Jersey law supports its view, based principally on *Chemical Leaman Tank Lines, Inc. v. Aetna Casualty & Surety Co.*, 177 F.3d 210 (3d Cir. 1999).  But that case is inapposite.  First, New Jersey uses *pro rata* allocation, not all sums.  *Spaulding Composites Co., Inc. v. Aetna Cas. & Sur. Co.*, 819 A.2d 410, 422 (N.J. 2003).  Second, like other authorities Lamorak cites, *see infra* Part II.B.2, *Chemical Leaman Tank Lines* addresses the effect of a policyholder's settlement with a primary insurer on a non-settling excess insurer.  177 F.3d at 227.  But as discussed *infra* Part II.B.2, accounting for primary insurance differs from a setoff for prior excess insurance at the same level of coverage, which is at issue here.  A primary insurer's policy limits must be setoff to ensure (a) that a settlement for less than the policy limits does not result in an excess insurer being forced to "drop down" to provide coverage below its contracted attachment point and (b) that the insured is not left without the ability to reach the attachment point of its excess insurance.  Crediting a primary insurance settlement as exhausting the full amount of a

13

primary policy thus effectuates the attachment-point bargain the excess insurer struck with the insured.  Here, by contrast, Lamorak is trying to evade that bargain.  It contracted for "all sums" liability, to be reduced only by amounts paid by prior insurance in the same layer of coverage.

**B.      The New York Authorities Lamorak Cites Are Inapposite.**

> **1.      Authorities Dealing With Contribution Between Non-Settling Insurers Are Irrelevant.**

In Lamorak's brief, as well as in a declaration submitted by one of Lamorak's attorneys attached to its reply brief in support of summary judgment purporting to represent "based upon … my personal knowledge" that "New York courts have long applied a pro rata approach in allocating liability among co-insurers" (Dkt. 2133 ¶ 5), Lamorak cites a litany of cases it claims support its position.  *See* Lamorak Supp. Br. 11-12.  None does.

Lamorak does not cite any cases like this one:  with a non-settling co-insurer either suing for contribution from a settled co-insurer or seeking a setoff based on a settled co-insurer's settlement with the policyholder.  Of the fourteen cases Lamorak cites, thirteen involve an insurer that provided coverage seeking contribution from a non-settling alleged co-insurer that did not provide coverage.[7]  That is an important distinction because the defendant insurer paid nothing, so

---

[7] *U.S. Fire Ins. Co. v. Fed. Ins. Co.*, 858 F.2d 882, 883-84 (2d Cir. 1988); *Beazley Ins. Co. v. Ace Am. Ins. Co.*, 150 F. Supp. 3d 345, 350-51, 357 (S.D.N.Y. 2015); *Nat. Cas. Co. v. Vigilant Ins. Co.*, 466 F. Supp. 2d 533, 535-36 (S.D.N.Y. 2006); *Lumbermens Mut. Cas. Co. v. Allstate Ins. Co.*, 417 N.E.2d 66, 67-68 (N.Y. 1980); *Travelers Ins. Co. v. Gen. Acc., Fire & Life Assur. Corp.*, 271 N.E.2d 542, 543 (N.Y. 1971); *Fed. Ins. Co. v. Atl. Nat. Ins. Co.*, 250 N.E.2d 193, 193-94 (N.Y. 1969); *HRH Const. Corp. v. Commercial Underwriters Ins. Co.*, 783 N.Y.S.2d 351, 353 (App. Div. 2004); *Tops Markets, Inc. v. Md. Cas.*, 700 N.Y.S.2d 325, 326 (App. Div. 1999); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Hartford Ins. Co. of Midwest*, 677 N.Y.S.2d 105, 107-08 (App. Div. 1988); *Puritan Ins. Co. v. Cont'l Cas. Co.*, 599 N.Y.S.2d 602, 602-03 (App. Div. 1993); *Zurich-Am. Ins. Cos. v. Atl. Mut. Ins. Ins. Cos.*, 531 N.Y.S.2d 911, 912-13 (App. Div. 1988); *Atl. Mut. Ins. Co. v. Atl. Nat. Ins. Co.*, 326 N.Y.S.2d 438, 439 (App. Div. 1971); *Virginia Sur. Co., Inc. v. Travelers Prop. Cas. Co. of Am.*, 34 Misc. 3d 1216(A), 2012 WL 246087, *2 (N.Y. Sup. Ct. Jan. 12, 2012).

there were no "amounts paid" to setoff.  There also was no risk of double recovery, as the plaintiff insurer made the policyholder whole.  Further, unlike when a non-settling insurer seeks contribution from a settled insurer, when a settled insurer sues a non-settled co-insurer, the non-settled co-insurer has not bargained for an end to litigation.  Because that factor is absent, even the jurisdictions that permit setoffs or contribution actions against settled insurers based on "amounts paid," rather than "*pro rata* shares," allow for *pro rata* recovery in contribution actions brought against non-settling insurers.  *E.g. Safeco Ins. Co. of Ill. v. Country Mut. Ins. Co.*, 267 P.3d 540, 543-44 (Wash. Ct. App. 2011); *Brown v. Travelers Ins. Co.*, 610 A.2d 127, 128-31 (R.I. 1992).

The only other case cited by Lamorak, *Maryland Casualty Co. v. W.R. Grace & Co.*, 218 F.3d 204 (2d Cir. 2000), is also inapposite.  For one thing, the rule Lamorak gleans from that case is that an insurer's obligations to its policyholder should not be affected by contracts between the policyholder and other insurers.  Lamorak Supp. Br. 13, 17 ("The contract of settlement an insurer enters into with the insured cannot affect the rights of another insurer who is not a party to it," quoting *Md. Cas.*, 218 F.3d at 211).  But that rule supports Olin.  Lamorak agreed to cover Olin for "all sums," and is now seeking to reduce its obligations to Olin because Olin had settlements with other insurers.  Moreover, to the extent Lamorak reads *Maryland Casualty* as adopting a general rule favoring *pro rata* allocation among insurers, including settled insurers, its reliance on the case is misplaced, because *Maryland Casualty* did not involve insurance policies with Condition C.  Rather, that case involved a mix of concurrent and successive primary policies, each containing "other insurance" clauses requiring that defense costs be apportioned on a *pro rata* basis.  *Id.* at 212.  By contrast, the Lamorak policies have Condition C, providing a method of apportionment based on amounts actually paid by prior insurers.  As *Viking Pump* has since held, "other insurance" clauses like those in *Maryland Casualty* "have nothing to do" with allocating

liability among successive—as opposed to concurrent—excess policies. *Viking Pump*, 52 N.E.3d at 1157.[8]

### 2.     Authorities Dealing With Primary Policy Exhaustion Are Irrelevant.

Lamorak also emphasizes two Second Circuit decisions separated by 83 years addressing the effect of settlements with *primary* insurers, rather than excess insurers. Lamorak Supp. Br. 12-13 (citing *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154 (2d Cir. 2001) and *Zeig v. Mass. Bonding & Ins. Co.*, 23 F.2d 665 (2d Cir. 1928)). Again, these authorities do not support Lamorak's position because there is a profound difference between primary and excess insurers.

According to Lamorak, these cases hold "that where a policyholder settles with its primary insurer, the non-settling excess insurers are entitled to a set-off of the primary insurers' pro rata shares of liability, rather than a set-off of the amounts paid under the settlement." Lamorak Supp. Br. 12. This both ignores the reasoning of the authorities themselves and overstates their holdings.

*First*, *Squibb* does not even apply the rule Lamorak supports. It does not hold, as Lamorak contends, that a non-settling insurer may receive a setoff equal to the *pro rata* share of a settled insurer. It holds that a non-settling excess insurer cannot be required to drop down and provide coverage below its contractual attachment point because a primary insurer settled for less than the attachment point. *Squibb*, 241 F.3d at 172-73. The reason for that holding is straightforward: an excess insurer has no coverage obligation until primary insurance is exhausted, so if a policyholder must prove that the primary insurer paid out in full to exhaust the primary layer and trigger excess

---

[8] Including *Maryland Casualty*, eight of the fourteen cases Lamorak cites involve the application of an "other insurance" clause in which multiple insurers concurrently covered the same policy period and each purported to make its policy excess of the other insurers' policies. *See U.S. Fire Ins. Co.*, 858 F.2d at 883-84; *Lumbermens Mut. Cas. Co.*, 417 N.E.2d at 67; *Travelers Ins. Co.*, 271 N.E.2d 542 at 543; *Fed. Ins. Co.*, 250 N.E.2d at 193-94; *Tops Markets, Inc.*, 700 N.Y.S.2d at 326; *Nat'l Union Fire Ins. Co.*, 677 N.Y.S.2d at 105; *Atl. Mut. Ins. Co.*, 326 N.Y.S.2d at 439.

16

coverage, the policyholder could not settle with its primary insurer without also giving up its excess coverage.  As *Zeig* explains, that result is "unnecessarily stringent" and "[a] result harmful to the insured, and of no rational advantage to the insurer" because an insurer has "no rational interest in whether the insured collected the full amount of the primary policies, so long as it was only called upon to pay such portion of the loss as was in excess of the limits of those policies."  23 F.2d at 666; *see Squibb*, 241 F.3d at 173-74 (noting that treating primary policy settlements as exhausting coverage treats excess insurers "exactly as if there had been no settlements").  That rule has no bearing on this case, which involves a series of excess insurers all at the same layer of coverage.

*Second*, Lamorak's claim that these cases embrace *pro rata* setoff is simply not true.  *Zeig* does not even involve successive periods of insurance coverage and thus does not deal with setoff at all.  *See Zeig*, 23 F.2d at 666.  And *Squibb* relied on *pro rata* allocation because that was the law pre-*Viking Pump*.  *See Squibb*, 241 F.3d at 172-74.  But New York is now an "all sums" jurisdiction—as Lamorak well knows.  *Viking Pump*, 52 N.E.3d at 1150-52.

### C.    Lamorak's Policy Arguments For *Pro Rata* Setoff Are Unfounded.

Lamorak also offers a series of policy arguments regarding the equities of the Court's two proposals.  But these arguments cannot withstand scrutiny, as they all depend on the circular and baseless assumption that requiring Lamorak to pay more than its *pro rata* share is inequitable.  For example, throughout its brief, Lamorak conflates its "fair share" of the liability with a *pro rata* share of the liability.  *E.g.* Lamorak Supp. Br. 1, 2, 8, 11, 17.  But as discussed, *see supra* Part I.A.2, the state supreme courts that have addressed the issue have uniformly determined that the equitable share of liability for a settling insurer is *pro tanto*, not *pro rata*.

Moreover, Lamorak never explains why it is unfair for it to be made to do what it promised to do in its contract:  pay Olin's all-sums damages.  Lamorak accepted premiums from Olin to provide that coverage.  The fact that Olin had other excess insurers is, from the standpoint of

Lamorak, a fortuity; and it is entirely fair to apply the terms of the insurance contract and reduce Olin's coverage only by the amount actually received by Olin from those insurers, so as to prevent double recovery.[9]

What is more, when asked to live up to its side of the bargain, Lamorak spent decades raising dozens of frivolous defenses and refusing to pay even for the portion of coverage it did not dispute.  It did so pursuant to a general claims determination standard where payment depended not on whether the claim was covered, but on whether payment would allow claims handlers to hit financial targets.  *See* Dkts. 1792 at 10-11; 1832 ¶¶ 75-78.  This was based on the view that "it's cheaper to litigate than pay a claim."  Dkts. 1793-94, Ex. 25 at 97:20-22.  Thus, Lamorak went decades without bothering to conduct any investigation of Olin's claims for the Five Sites.  *Olin IV*, 864 F.3d at 141-42; *see also* Dkts. 1792 at 7-8; 1832 ¶¶ 47-51, 55-57.  Especially in light of Lamorak's conduct, there is no inequity in requiring Lamorak to make Olin whole.

Lamorak argues that "the risk of settlement should be placed on the settling parties."  Lamorak Supp. Br. 12-13.  But even assuming the validity of that maxim, it ignores that Olin did not take a risk by settling with its other insurers.  As *Viking Pump* held, the all-sums nature of its policies allowed Olin to "collect its total liability … under any policy in effect during the periods that the damage occurred."  *Viking Pump*, 52 N.E.3d at 1149 (quotations omitted).  Thus, by settling with other of its insurers, Olin did not risk losing any coverage:  it still had policies issued by Lamorak under which it could recover all sums, less any amounts actually paid in prior

---

[9] A "double recovery" is one that exceeds "the maximum recoverable loss that the party has sustained."  Black's Law Dictionary (10th ed. 2014).  Here, Olin's loss is all sums it expended remediating the Five Sites (or, more precisely, the lesser amount of all sums in excess of the Lamorak policies' attachment point and covered by the Lamorak policies).  Granting Olin recovery of that amount minus what it received from other insurers for the Five Sites would leave it fully compensated and not a penny more.  So in claiming that Olin seeks a double recovery, Lamorak assumes that Olin's maximum recovery is Lamorak's *pro rata* share.  That argument is baseless.

settlements.  To argue that Olin took a risk by settling rests on the mistaken assumption that Olin always faced the prospect of *pro rata* allocation—a proposition *Viking Pump* rejected.

Lamorak also argues that *pro rata* serves the purpose of avoiding a double recovery.  But in this case, *pro rata* uses a hatchet where a scalpel is required—it avoids double recovery by ensuring Olin's under-recovery.  That is contrary not only to New York's policy of ensuring that policyholders are made whole (*see supra* Part I.A.3), but to the purpose of all sums, which places the burden on Lamorak to provide Olin with its entire recovery (up to its policy limits) irrespective of how liability might be apportioned among other insurers.  *Viking Pump*, 52 N.E.3d at 1150-52, 1156; *see Keene Corp. v. Ins. Co. of N. Am.*, 667 F.2d 1034, 1050 (D.C. Cir. 1981).

### D.      Lamorak's Approach To *Pro Rata* Setoff Is Methodologically Flawed.

If the Court nevertheless holds that *pro rata* setoff is required by New York law, Lamorak's calculation of that setoff should be rejected.  In its supplemental brief, Lamorak largely abandons ███████████████████████ submitted by its expert, Marc C. Scarcella (a calculation that in any event is flawed, *see* Olin Supp. Br. 20-22).  Instead, Lamorak now argues for a *pro rata* allocation based on policy limits.  And indeed, as Olin explained in its supplemental brief, that is the type of *pro rata* allocation *Koppers* endorses:  "the applicable rule of allocation among excess policies" is "a *pro rata* allocation based on the *limits of each policy* and the *total limits of all triggered policies*."  98 F.3d at 1456 (emphasis added).  However, Lamorak's implementation of the *pro rata* allocation endorsed by *Koppers*, which is based on the district court's decision on remand in that case, *see Koppers Co. v. Beazer East v. Certain Underwriters at Lloyd's*, 1997 U.S. Dist. LEXIS 16123 (W.D. Pa. June 23, 1997), is itself flawed.

In the *Koppers* remand, the district court described setoff as "a three-part process":  "First, we must identify all policies that covered Koppers' loss.  Second, we must interpret the 'other insurance' clauses in the applicable policies and resolve any conflict between them.  Finally we

must determine the pro rata share of the reduced verdict for which these settled policies are responsible[.]"   *Id.* at *11.   The first step is consistent with the method set forth in Olin's supplemental brief.   Olin used the period of property damage (to the extent known) to determine which policies within the relevant layers of coverage potentially could cover the losses at each of the Five Sites.   *See* Olin Supp. Br. 14-19; *see also Hartford Underwriters Ins. Co. v. Hanover Ins. Co.*, 122 F. Supp. 3d 143, 150 (S.D.N.Y. 2015) (applying New York law and explaining that a policy must be triggered for there to be any right of equitable contribution against that policy).

The second step applied by the *Koppers* remand court also is consistent with Olin's supplemental brief.   In determining available policy limits, the *Koppers* district court looked to the policies to see what direction they provided.   It determined that the policies contained only "other insurance" clauses but, because the clauses appeared in multiple policies, they were mutually repugnant under Pennsylvania law.   *Koppers*, 1997 U.S. Dist. LEXIS 16123, at *14-*16.   Here, the Court should similarly look to the policy language.   If it does, it will conclude that, as Olin's calculation reflects, the policies here are different than in *Koppers*.   In addition to "other insurance" clauses (which, like *Koppers*, cancel each other out and have no effect), Olin's policies contain Condition C, which means that under *Olin III* and *Olin IV* all of the policies on the risk are construed to create a single set of shared policy limits, rather than multiple policy limits that are all separately available and may be aggregated.   *See Olin III*, 704 F.3d at 104; *Olin IV*, 864 F.3d at 148.   So under Condition C, Lamorak's suggestion ██████████████████████████ is wrong.   *See* Lamorak Supp. Br. 15 n.6.   Rather, as Olin explains in its supplemental brief, the proper basis for calculating a *pro rata* setoff for a Condition C policy is the maximum policy limits of the policies that could actually be triggered.   Olin Supp. Br. 14-19.

20

Finally, the last step of the *Koppers* remand analysis—determining the *pro rata* share of the verdict based on triggered and available policy limits—also accords with the analysis in Olin's supplemental brief. Because of Condition C, the proper way to determine Lamorak's *pro rata* share is to compare Lamorak's maximum exposure to the total maximum exposure of its co-insurers. That calculation appears in Olin's supplemental brief. Olin Supp. Br. 19, 24.

## III. Lamorak Cannot Base A Setoff In A Case Arising Under Contracts Of Insurance On A New York Statute That Applies Only To Actions Sounding In Tort.

Finally, Lamorak argues that the Court should follow General Obligations Law § 15-108, which relates to jointly and severally liable tortfeasors and provides for a set-off "in the amount of the consideration paid" by other tortfeasors in settlement, or by "the released tortfeasor's equitable share of the damages," whichever is greater. As it does throughout its brief, Lamorak conflates its "equitable share of the damages" with a "*pro rata* share of the damages," without any explanation or precedent to support that conflation. Lamorak Supp. Br. 18-19. In fact, as discussed above, the equitable share is *pro tanto*, not *pro rata*. *See supra* Part II.C.

In any event, Lamorak's reliance on General Obligations Law § 15-108 is misplaced. It is a statutory rule of tort law, and there is no reason or precedent to support its application to an equitable and common law contract case. *See Certain Underwriters at Lloyds of London v. Ill. Nat'l Ins. Co.*, No. 09-CV-4418 (LAP), 2017 WL 4326056, at *5 (S.D.N.Y. Aug. 31, 2017) ("Insurance coverage questions are not controlled by tort liability concepts." (quotations and citations omitted)); *see also Ins. Co. of Pa. v. Johnson*, No. 2:06-CV-195, 2011 WL 13176002, at *4 (D. Vt. Jan. 26, 2011) ("Put simply, tort liability and liability insurance are distinct concepts."). Indeed, New York courts "have recognized the distinction between insurance coverage and tort liability and have ruled that the one does not control the other." *Atlas Ins. Co. v. Ciccone*, 156

21

N.Y.S.2d 122, 124 (N.Y. Sup. Ct. 1956); *see also Whitelegg v. Standard Accident Ins. Co.*, 271 N.Y.S.2d 492, 496 (N.Y. Sup. Ct. 1966).

That is why New York courts have declared that "[Section] 15–108 applies only to joint tortfeasors, not to co-insurers." *Scotts Co., LLC v. Pac. Employers Ins. Co.*, 875 N.Y.S.2d 891, 892 (App. Div. 2009) (citations omitted). That makes sense. In the tort context, a tortfeasor's equitable share is based on the tortfeasor's comparative fault as found by a jury. So the statute is rooted in the principle that it is unfair to hold a person liable for damage in excess of their share of fault. That does not translate to insurance, where comparative fault is not assigned to various wrongdoers—there is only loss to be covered by insurance companies that accepted premiums in exchange for agreeing to provide coverage. And when each of those insurance companies contracted to cover "all sums," there is no unfairness in requiring the one that chose to deny its obligations and litigate to pay an amount that is greater than its *pro rata* share—but still less than the "all sums" it agreed to cover—in order to make the policyholder whole.

Lamorak claims it is "inefficient" to set Section 15-108 aside because "[i]f the Court reduces the prior judgments in this case by any amount less than the full pro rata shares of settled insurers, Lamorak will seek the difference from the settled insurers via contribution." Lamorak Supp. Br. 17. The Court should not succumb to Lamorak's threat to prolong this litigation.

If the Court grants Lamorak a setoff, regardless of how it is calculated, Lamorak cannot use contribution to get a second bite at the apple. That is clear from *Koppers*, which explains that a court "must *either* (1) reduce the judgment to account for the settling insurers' apportioned shares of liability, or (2) permit the non-settling insurers to seek contribution from the settling insurers and, in turn, permit the settling insurers to seek reimbursement from Koppers." 98 F.3d at 1452 (emphasis added). *Koppers* then underscores that a party can only receive *either* setoff or

contribution by relying on a Pennsylvania Superior Court decision holding that "where two insurers are obligated to cover the same loss and one insurer settles but one does not, the litigating insurer *cannot* seek contribution from the settling insurer," but *can* get a setoff.  *Id.* at 1453 (citing *Gould, Inc. v. Cont'l Cas. Co.,* 585 A.2d 16, 19 (Pa. Super. Ct. 1991)); *see also Childs v. N.J. Mfrs. Ins. Co.*, 531 A.2d 723, 728 (N.J. 1987) (expressing "serious doubts" as to whether non-settling party may seek contribution from settling party after receiving *pro tanto* setoff).

*Koppers* is not unique.  Many courts have justified prohibiting a non-settling insurer from seeking contribution from a settled insurer based on the non-settling insurer's right to seek a setoff. *E.g.*, *One Beacon America Ins. Co. v. American Motorist Ins. Co.,* 679 F.3d 456, 463 (6th Cir. 2012); *Bondex Int'l Inc. v. Hartford Accident & Indem. Co.*, 2007 WL 405938, at *4-5 (N.D. Ohio, Feb. 1, 2007); *Puget Sound Energy v. Certain Underwriters at Lloyd's, London*, 138 P.3d 1068, 1069 (Wash. Ct. App. 2006); *see also* 15 Couch on Ins. § 218:46 (2017) ("The right to offset the amount the injured party has received from the other tortfeasor or its insurer is an equitable solution to the joint tortfeasor's loss of the right to contribution as a result of the settlement and release."). And even among courts that do not categorically prohibit non-settled insurers from seeking contribution from settled insurers, Lamorak cites no precedent for allowing a non-settled insurer that received a setoff to then seek an additional contribution from settled insurers.

None of the authorities Lamorak cites implies that New York law is different. *DaimlerChrysler Insurance Co. v. Universal Underwriters Insurance Co.* did not address whether a contribution action may go forward *after* a court already had granted the party seeking contribution a setoff; indeed, the court made no mention of setoff at all.  Index No. 601238/2008, N.Y. Slip Op. 30775(U), 2010 WL 1459007 (N.Y. Sup. Ct. Mar. 31, 2010).  Nor did *Scotts Co. v. Ace Indemnity Insurance Co.*, Index No. 602712/05, 18 Misc. 3d 1139(A), 2008 WL 518062 (N.Y.

23

Sup. Ct. 2008).   And the other case Lamorak cites actually rejects Lamorak's argument.   In *Williams by Williams v. Niske by Niske*, 615 N.E.2d 1003 (N.Y. 1993), a plaintiff settled tort claims against four defendants before trial and three defendants during trial, leaving one non-settling defendant.   *Id*. at 1004.   The jury found for the plaintiffs and apportioned defendants' fault on a percentage basis.   *Id*.   The court then held that the amounts paid in pre-trial settlement would be setoff against the verdict, while the remainder of the verdict would be apportioned among the defendants that did not settle before trial according to the jury verdict.   *Id*. at 1007-08.   Far from granting equitable contribution after a setoff for the same loss, *Williams* applied an amounts paid setoff to pre-trial settlements.   *Id*.

Lamorak thus has failed to identify a single instance of an insurer obtaining equitable contribution *after* it already received a setoff for the same loss.   None exists.   Accordingly, if Lamorak receives a setoff—whatever that may be—it cannot double dip by seeking further contribution in another forum.

## CONCLUSION

For the reasons explained above, any reduction in the judgment the Court enters for Olin should be by "an amount arrived at by first determining what percentage of the policy limits for all the sites released under the settlement is comprised by the policy limits for the five remand sites and then multiplying the total settlement amount by that percentage," rather than "the *pro rata* shares of the settled insurers."   Dkt. 2148.   The amounts of any such reduction are set forth in Olin's supplemental brief.   Alternatively, if the Court applies a setoff based on "the *pro rata* shares of the settled insurers" (*id.*), it should calculate those shares based on the insurers' policy limits, as Olin has proposed.

Respectfully submitted,

OLIN CORPORATION

Dated:  March 13, 2018                    */s/ Craig C. Martin*

**JENNER & BLOCK LLP**
Craig C. Martin
Peter J. Brennan
Matthew J. Thomas
Matthew E. Price
353 N. Clark Street
Chicago, Illinois 60654
312-222-9350

-- and --

**HUSCH BLACKWELL LLP**
David W. Sobelman
Jerry Ronecker
Joel B. Samson
190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105
314-480-1500

*Attorneys for Plaintiff Olin Corporation*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was served on the following Counsel of Record via CM/ECF (redacted) and by email (unredacted) on March 13, 2018:

Ralph J. Luongo
Elaine Whiteman Klinger
Bradley J. Mortensen
Benjamin A. Blume
Erik B. Derr
Victoria Allen
Elizabeth A. Sutton
Diana M. Karnes
Gary S. Kull
KENNEDYS CMK, LLP
Two Liberty Place, Suite 2625
Philadelphia, PA 19102
Ralph.Luongo@kennedyscmk.com
Elaine.Klinger@kennedyscmk.com
Bradley.Mortensen@kennedyscmk.com
Benjamin.Blume@kennedyscmk.com
Erik.Derr@kennedyscmk.com
Victoria.Allen@kennedyscmk.com
Elizabeth.Sutton@kennedyscmk.com
Diana.Karnes@kennedyscmk.com
Gary.Kull@kennedyscmk.com

Bryce L. Friedman
Susannah S. Geltman
SIMPSON THACHER & BARTLETT  LLP
425 Lexington Avenue
New York, NY 10017-3954
bfriedman@stb.com
sgeltman@stb.com

Michael J. Balch
BUDD LARNER, P.C.
150 John F. Kennedy Parkway
Short Hills, NJ  07078
mbalch@buddlarner.com

Matthew B. Anderson
John McAndrews
William Seo
MENDES & MOUNT, LLP
750 Seventh Avenue
New York, NY  10019-6829
Matthew.Anderson@mendes.com
john.mcandrews@mendes.com
William.seo@mendes.com

Michael L. Anania
Gregory R. Bruno
FORD, MARRIN, ESPOSITO,
WITMEYER & GLESER, LLP
Wall Street Plaza
New York, NY  10005
manania@fordmarrin.com
gbruno@fordmarrin.com

Robert J. Bates , Jr.
BATES & CAREY LLP
191 North Wacker Drive
Suite 2400
Chicago, IL 60606
rbates@batescarey.com

Miranda H. Turner
James P. Ruggeri
Joshua P. Mayer
SHIPMAN & GOODWIN LLP
1875 K Street NW, Suite 600
Washington, DC  20006
mturner@goodwin.com
jruggeri@goodwin.com
jmayer@goodwin.com

_/s/ Gabriel K. Gillett_