# THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| OLIN CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 84 CIV 1968 (JSR) |
| | ) | |
| LAMORAK INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| ------------------------------------------------------------------X | | |
| LAMORAK INSURANCE COMPANY | ) | |
| f/k/a OneBeacon America Insurance Company | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CERTAIN UNDERWRITERS AT LLOYD'S, | ) | |
| LONDON and LONDON MARKET | ) | |
| INSURANCE COMPANIES, et al., | ) | |
| | ) | |
| CONTINENTAL CASUALTY COMPANY, | ) | |
| | ) | |
| GENERAL REINSURANCE CORPORATION, | ) | |
| | ) | |
| FIREMAN'S FUND INSURANCE COMPANY, | ) | |
| | ) | |
| MUNICH REINSURANCE AMERICA, INC., | ) | |
| f/k/a AMERICAN RE-INSURANCE COMPANY | ) | |
| | ) | |
| -and- | ) | |
| GREAT AMERICAN INSURANCE COMPANY, | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

**LAMORAK INSURANCE COMPANY'S REPLY BRIEF
IN RESPONSE TO THE COURT'S ORDER DATED FEBRUARY 28, 2018**

## **TABLE OF CONTENTS**

Argument .................................................................................................................................. 1

    I.      Pro Rata Set-Off Is The Only Option Supported By New York Law And Policy ........................................................................................................................ 1

    II.     Olin's Out Of State Cases Are Inapposite And Efforts To Distinguish *Koppers* Fail............................................................................................................ 6

          A.     Olin's Out of State Cases Are Inapposite .................................................... 6

          B.     Olin's Effort To Distinguish *Koppers* Fails................................................ 8

    III.    Lamorak's Methods Of Calculating Options 1 And 2 Are The Only Ones Consistent With New York Law And The Facts Of This Case ............................. 8

    IV.    Policies Underlying New York General Obligations Law Section 15-108 Apply Here......................................................................................................... 10

Conclusion ............................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*DaimlerChrysler Ins. Co. v. Universal Underwriters Ins. Co.*,
   Index No. 601238/008, 2010 WL 1459007 (N.Y. Cnty. Mar. 31,
   2010). ............................................................................................................................ 3

*E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*,
   241 F.3d 154 (2d Cir. 2001)....................................................................................... 3, 4, 5, 8

*Eli Lilly & Co. v. Aetna Cas. & Sur. Co.*,
   No. 49D12-0102-CP-243, 2002 WL 34478091 (Ind. Super. Ct. July
   15, 2002). ........................................................................................................................ 7

*Emhart Indus., Inc. v. Century Indem. Co.*,
   559 F.3d 57 (1st Cir. 2009)..................................................................................................... 7

*Fed. Ins. Co. v. Atl. Nat. Ins. Co.*,
   250 N.E.2d 193 (N.Y. 1969)................................................................................................... 2

*In re Viking Pump, Inc.*,
   52 N.E.3d 1144 (N.Y. 2016)...................................................................................... 1, 2, 4, 6

*Insurance Co. of North America v. Kayser-Roth Corp.*,
   770 A.2d 403 (R.I. 2001) ....................................................................................................... 8

*Koppers Co. by Beazer East v. Certain Underwriters at Lloyd's*,
   Civ. No. 85-2136, 1997 U.S. Dist. LEXIS 16123 (W.D. Pa. June 23,
   1997). ................................................................................................................................... 9

*Koppers Co., Inc. v. Aetna Cas. & Sur. Co.*,
   98 F.3d 1440 (3d Cir. 1996)................................................................................................ 8, 9

*Md. Cas. Co. v. W.R. Grace & Co.*,
   218 F.3d 204 (2d Cir. 2000)........................................................................................... 2, 3, 4

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hartford Ins. Co. of
   Midwest*,
   677 N.Y.S.2d 105 (N.Y. App. Div. 1998), *aff'd*, 717 N.E.2d 1077
   (1999)................................................................................................................................... 2

*Olin Corp. v. OneBeacon Am. Ins. Co.*,
   864 F.3d 130 (2d Cir. 2017)......................................................................................... 4, 5, 6

*Penn. Nat. Mut. Cas. Ins. Co. v. St. John*,
   106 A.3d 1 (Pa. 2014). .......................................................................................................... 8

Case 1:84-cv-01968-JSR   Document 2167   Filed 03/16/18   Page 4 of 15
**Contains Confidential Information Governed By Protective Order dated 11/02/17 -- REDACTED VERSION**

*Stonewall Ins. Co. v. E.I. du Pont de Nemours & Co.*
  996 A.2d 1254 (Del. 2010) .................................................................................................. 8

*U.S. Fid. & Guar. Co. v. Treadwell Corp.*,
  58 F. Supp. 2d 77 (S.D.N.Y. 1999). ..................................................................................... 8

*Weyerhaeuser Co. v. Commercial Union Ins. Co.*,
  15 P.3d 115 (Wash. 2001)..................................................................................................... 7

*Zeig v. Mass. Bonding & Ins. Co.*,
  23 F.2d 665 (2d Cir. 1928)............................................................................................... 3, 4

*Zurich-Am. Ins. Companies v. Atl. Mut. Ins. Companies*,
  531 N.Y.S.2d 911 (N.Y. App. Div. 1988), *aff'd*, 539 N.E.2d 1098
  (1989) .................................................................................................................................... 2

**Statutes**

N.Y. Gen. Oblig. L. § 15-108. .......................................................................................... 10, 11

**Other Authorities**

Seth A. Tucker, When is Credit Due: Reallocation of Settlements under
  'All Sums', 7 Ins. Coverage L. Bull., No. 1, Jan. 2009 ............................................................ 7

# ARGUMENT

## I.    Pro Rata Set-Off Is The Only Option Supported By New York Law And Policy

All of the New York case law and policy cited in Lamorak's prior briefing confirms that if and when the New York Court of Appeals faces the question of the effect of a policyholder's settlement on a non-settling insurer's all sums liability, it will apply a pro rata set-off.

*First*, the New York Court of Appeals' decision in *Viking Pump* supports a pro rata approach to apportioning insurer liability. *Viking Pump* held that a policyholder is entitled to all sums allocation of its liability and can select a single insurer from which to recover its losses, *but expressly limited the scope of that all sums recovery*. According to *Viking Pump*, in addition to a reduction of policy limits in accordance with the prior insurance provision set forth in Condition C, a selected all sums insurer is also entitled to contribution from its co-insurers. Thus, contrary to Olin's contentions, all sums allocation following *Viking Pump* does *not* mean one insurer will ultimately bear all of the insured's liability alone when other insurers covered damages during the relevant period. Instead, the "all sums" insurer is expected only to front the money to the insured; it is then entitled to "contribution from the insurers that issued the other triggered policies." *In re Viking Pump*, 52 N.E.3d 1144, 1150 (N.Y. 2016). Further, Olin's assertion that *Viking Pump* held a pro rata approach is "irreconcilable with Lamorak's policy" is intentionally misleading. While *Viking Pump* held that all sums allocation should apply to determine the front-end allocation of liability *between a policyholder and its insurer*, nothing in *Viking Pump* mandates application of Condition C or otherwise precludes a pro rata distribution of liability in the context of a back-end apportionment of liability among Olin's insurers.[1]

---

[1] Olin objects to application of a pro rata set-off on the grounds that the rationale for all sums is it allows policyholders to recover their liability from a single insurer and not be tied up in litigation concerning division of that liability among its insurers. While that is true in the typical all sums case, this case is unique because Olin settled with most of its relevant insurers

*Second*, every New York state and federal court that has addressed co-insurer liability has held that apportionment of liability should be done on a pro rata basis. This includes cases from the New York Court of Appeals, the Second Circuit, and this Court.[2] Olin attempts to dismiss this longstanding caselaw but without success. The fact that these cases came before *Viking Pump*'s determination that an all sums allocation should apply, in certain circumstances, to determine allocation of liability between a policyholder and insurer has no bearing on the back-end allocation of liability among the policyholder's insurers. In other words, that an all sums allocation may apply on the front end in no way precludes a pro rata apportionment of liability among insurers on the back end. To the contrary, many of the New York cases that Lamorak has cited are "all sums" cases because they involve co-insurers that have concurrent liability, meaning they are jointly and severally liable for the same loss.[3] In each of those cases, even though both insurers were jointly and severally liable for the entire loss to the policyholder the way Lamorak and its co-insurers are liable to Olin here, the courts nonetheless held that apportioning liability between those joint and several insurers should be on a pro rata basis.

███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████.
This does not mean that Lamorak is not living up to its obligation to pay "all sums," but rather ███████████████████████████████████████████████████████████.

---

[2] *See* Geltman Decl. ¶ 5, Feb. 9, 2018, Doc. No. 2133 (listing cases reflecting New York courts' longstanding application of the pro rata approach in allocating liability among co-insurers).

[3] *See, e.g.*, *Fed. Ins. Co. v. Atl. Nat. Ins. Co.*, 250 N.E.2d 193, 196 (N.Y. 1969) ("As both policies assumed the same risk, both were obligated to defend . . . and both must contribute, pro rata, toward payment of the cost of the settlement and legal fees and other expenses of the litigation."); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hartford Ins. Co. of Midwest*, 677 N.Y.S.2d 105, 111 (N.Y. App. Div. 1998), *aff'd*, 717 N.E.2d 1077 (1999) (two insurers were coinsurers because they insured the same risk, and thus one owed equal contribution of the costs of defending and settling those claims); *Zurich-Am. Ins. Companies v. Atl. Mut. Ins. Companies*, 531 N.Y.S.2d 911, 916 (1988), *aff'd*, 539 N.E.2d 1098 (1989) ("If several insurers bind themselves to the same risk and one insurer pays the whole loss, the one so paying has a right of action against his coinsurers for a ratable proportion of the amount paid by him because he has paid a debt which is equally and currently due by the other insurers.").

Olin also claims these New York pro rata cases are not relevant because they do not involve a settlement of one or more insurers. Of course, in so asserting, Olin ignores (1) *DaimlerChrysler Ins. Co. v. Universal Underwriters Ins. Co.*, Index No. 601238/008, 2010 WL 1459007 (N.Y. Cnty. Mar. 31, 2010), in which the court allowed a contribution claim to proceed against a settled co-insurer and imposed "ratable contribution" where, as here, the parties' other insurance clauses both claimed to be excess; and (2) *Grace*, 218 F.3d at 212, which held that under New York law settled insurers may be subject to contribution and that, based on the respective other insurance clauses, pro rata contribution was required under the policies.

In any case, whether or not a settlement is at issue in the New York pro rata contribution cases is neither here nor there. The Second Circuit has confirmed on several occasions in *Squibb*, *Zeig*, and *Grace*, that the fact of a settlement by one insurer does not change the liability of another insurer because the policyholder and settling insurer bear the risk of their settlement.[4] Thus, while Lamorak may be liable to cover "all sums" of Olin's liability on the front end, it is not responsible for more than its pro rata share of that liability on the back end simply because Olin's other insurers settled. Indeed, New York courts (including this one) have expressly recognized the right to recover contribution against settled insurers so as to avoid a situation where the non-settling insurer is inappropriately left to cover more than its pro rata share of liability.[5] *See* Mem. re: 2000 Order 6–8, Nov. 29, 2017, Doc. No. 2024 ("Lamorak is not barred

---

[4] *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 172–73 (2d Cir. 2001) (determining liability of non-settling excess insurers "regardless of the actual settlement amounts" because "the settling parties are the ones who took the risk of the settlement"); *Zeig v. Mass. Bonding & Ins. Co.,* 23 F.2d 665, 666 (2d Cir. 1928) (amount of policyholder settlement with insurer is irrelevant for purposes of determining non-settling insurer's liability); *Md. Cas. Co. v. W.R. Grace & Co.*, 218 F.3d 204, 211 (2d Cir. 2000) ("[T]he contract of settlement an insurer enters into with the insured cannot affect the rights of another insurer who is not a party to it.").

[5] Importantly, Olin does not dispute (because it cannot) that if Lamorak is entitled to pro rata contribution, that means it is also entitled to a pro rata setoff.

3

from seeking contribution simply because the other insurers have settled their claims"); Lamorak's Mem. Supp. Mot. Leave, Sept. 26, 2017, Doc. No. 1991 (citing cases).

Olin tries to distinguish *Squibb* and *Zeig* on the grounds that they addressed settlements between policyholders and primary insurers rather than excess insurers.[6] It also claims *Grace* is not relevant because it did not involve Condition C. These are distinctions without a difference. The indisputable fact is that these Second Circuit cases confirm New York's policy (since 1928) that settling parties bear the risk of their settlements so the non-settling party's liability should be treated as though there had been no settlement. The existence or non-existence of Condition C, or the type of insurer settlement (primary or excess) does not change this basic policy, which applies equally here.[7]

*Third*, Olin entirely ignores *Olin IV*'s citation to the Second Circuit's decision in *Squibb* in connection with providing guidance on the effect of Olin's settlements with certain of its insurers. *Olin Corp. v. OneBeacon Am. Ins. Co.*, 864 F.3d 130, 150 (2d Cir. 2017). Unable to explain away *Olin IV*'s reference to *Squibb*, Olin instead continues to resort to citing every instance in which *Olin IV* uses the term "amounts paid." But in doing so, Olin intentionally

---

[6] Olin is also wrong that these cases do not apply a pro rata set-off. *See Squibb*, 241 F.3d at 172–73 (affirming district court's decision to set off settled insurers' "pro rata shares . . . as if there had been no settlements" and then "simply treat[] the settling insurers' portions as satisfied by the settlements, regardless of the actual settlement amounts"); *Zeig*, 23 F.2d at 666 (rejecting notion that effect of settlement is limited to amounts paid in cash because "[t]here is no need of interpreting the word 'payment' as only relating to payment in cash. It often is used as meaning the satisfaction of a claim by compromise, or in other ways").

[7] [REDACTED]

4

ignores the context in which the Second Circuit used the phrase. Not only did it relate to the Second Circuit's analysis of a *limits reduction* under Condition C (and *not* to a determination of the method of calculating Lamorak's right to contribution or set-off): Lamorak had argued that it merely had to demonstrate that there was a prior policy; the Second Circuit disagreed and held that Lamorak had to show that the prior insurer had acknowledged coverage through judgment or settlement.[8] There is thus nothing in *Olin IV* that supports Olin's position that in calculating the contribution or set-off amount owed to Lamorak on the back-end, the Court should consider the settlement amounts paid in cash by Olin's settled insurers.

*Fourth*, Olin misconstrues New York insurance policy. While it may be true that New York courts encourage settlement and the concept of making a policyholder "whole," those policies are not as black and white as Olin claims, and are regularly balanced with countervailing policies like those described above, namely that settling parties bear the risks of settlement, and a policyholder's settlement cannot change the rights of a non-settled insurer. *See* Lamorak Opp'n Br. 8, Mar. 13, 2018, Doc. No. 2160 (under New York law, policyholders can be "made whole" by virtue of amounts received and released through settlement); *id.* at 9–10 (pro rata set-off would encourage, not discourage, settlement). The New York Court of Appeals has recognized that recovery by the policyholder is not always a priority next to other dominant principles. *See Viking Pump*, 52 N.E.3d at 1152 ("Significantly, we have enforced non-cumulation clauses in accordance with their plain language . . . , *despite the limiting impact that such clauses may have*

---

[8] Oddly, Olin continues to highlight an errata sheet issued by the Second Circuit to try to show that *Olin IV* was specifically focused on "amounts paid." But as Lamorak has previously explained, the errata sheet simply addressed a typo and does not support Olin's argument. The Second Circuit's slip opinion provided for "reducing the limits of liability of any *prior insurance policy*," slip op. at *33 (emphasis added), but this made no sense because the issue before the Second Circuit was how Condition C would reduce the limits of the *later* policy issued by Lamorak. Thus, the errata sheet simply corrected sentence to reflect that Lamorak's policy limits (not the prior insurers' policy limits) may be reduced.

5

*on an insured's recovery.*" (emphasis added) (citations omitted)). Finally, Olin's definition of "double recovery" is not based in New York law or policy, which makes clear that Olin would receive an *effective* double recovery if the only reduction were for amounts paid in settlement and was less than the settling party's equitable share. *See* Lamorak Opp'n Br. 9.

*Fifth*, Olin attempts to recharacterize Lamorak's argument in favor of contribution and set-off as based on "fairness" and claims it is not fair for Lamorak to avoid its contractual obligations to pay "all sums" "in light of Lamorak's conduct" in handling Olin's claims.[9] Olin is flat wrong. Lamorak's right to a pro rata set-off is not based on "fairness," but on the supportive New York caselaw and policy described above, all of which confirms that even an insurer providing "all sums" liability coverage is entitled to contribution or set-off for its co-insurers' pro rata shares. Lamorak's conduct in handling the claims is thus irrelevant; in any case, Olin's baseless complaints about Lamorak's conduct have already been rejected by this Court.[10]

## II.     Olin's Out Of State Cases Are Inapposite And Efforts To Distinguish *Koppers* Fail

### A.     Olin's Out of State Cases Are Inapposite

Olin claims that a so-called "pro tanto" approach to set-off is the "unanimous rule of [] state supreme courts" outside of New York (although it cites just three cases) and is otherwise supported by other out of state cases. Of course, the only courts that matter here are New York courts (including the New York Court of Appeals), which have held exactly the opposite – that a

---

[9] Olin also argues that Lamorak is not entitled to contribution because Condition C provides an adequate damages remedy. Even if that were the appropriate standard (it is not), Condition C is not an adequate remedy if the Court does not apply it to prevent a double recovery, among other reasons.

[10] *See* 9/4/14 Hr'g Tr. at 74:4–7, Doc. No. 1796 (rejecting Olin's statutory "bad faith" claims against Lamorak finding there was "no substance, whatsoever"); Order, Sept. 9, 2014, Doc. No. 1795 (granting Lamorak's summary judgment motion on Olin's unfair practices claims), *aff'd*, *Olin IV*, 864 F.3d at 153–54.

6

pro rata (not a pro tanto) apportionment of liability among co-insurers is the rule.[11]  The reasoning behind the cases Olin cites make clear their holdings should not be applied here in contravention of longstanding New York law and policy.

Some of Olin's out-of-state cases apply a pro tanto settlement credit because the applicable state law applies the same rule to joint tortfeasors.[12]  But those cases are irrelevant here because New York tort law is very different; as discussed in Lamorak's prior briefing, General Obligations Law § 15-108 requires that a nonsettling tortfeasor's liability be reduced "*by the greater*" of the settling tortfeasor's equitable share or the amount actually paid in settlement. Other of Olin's out of state cases are based on policies that do not apply the same way in New York.  For example, in *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 15 P.3d 115, 125–27 (Wash. 2001), the Washington State court relied on that state's strong public policy in favor of making the policyholder whole—a policy that, as described above, is more nuanced in New York and, at least in the context of insurer settlements, is overruled by policies that place the risk of settlement on the settling parties, and prevent a defendant from paying more than its share.  Still other of Olin's out of state cases have unique distinguishing facts that render them inapplicable.[13]

---

[11] Olin's contention that pro tanto is the majority rule is based exclusively on a non-peer reviewed bulletin written by a lawyer whose own biography states he "represents policyholders."  Seth A. Tucker, *When is Credit Due: Reallocation of Settlements under 'All Sums'*, 7 Ins. Coverage L. Bull., No. 1, Jan. 2009.  Just like Olin's brief, this advocacy piece relies on cherry-picked cases that do not take into account New York law or policy.

[12] *See, e.g.*, *Emhart Indus., Inc. v. Century Indem. Co.*, 559 F.3d 57 (1st Cir. 2009) (affirming district court's application of pro tanto setoff pursuant to Massachusetts law on joint tortfeasor contribution); *Eli Lilly & Co. v. Aetna Cas. & Sur. Co.*, No. 49D12-0102-CP-243, 2002 WL 34478091 (Ind. Super. Ct. July 15, 2002) (applying pro tanto setoff to be consistent with the rule applied in the joint tortfeasor context in Indiana).

[13] *See, e.g.*, *Stonewall Ins. Co. v. E.I. du Pont de Nemours & Co.* 996 A.2d 1254, 1259–61 (Del. 2010) (addressing a *limits reduction*, not a set-off or contribution claim among co-insurers); *Ins. Co. of N. Am. v. Kayser-Roth Corp.*, 770 A.2d 403, 413–14 (R.I. 2001) (declining to apply *Koppers*' pro rata set-off rule solely because the non-settled insurer had been sanctioned by the

### B. Olin's Effort To Distinguish *Koppers* Fails

Olin asks this Court to disregard *Koppers* on the ground that the Pennsylvania Supreme Court has never affirmed *Koppers*' pro rata set-off holding. This makes no sense. Under Olin's theory, no jurisdiction should consider Second Circuit precedent applying New York law. Further, if anything, Olin's assertion proves that *Koppers* remains valid law, and for over twenty years the Pennsylvania Supreme Court has seen no reason to change course on its application of set-off in the all sums context.[14] Moreover, notably, courts applying New York law *have* cited *Koppers* concerning all sums allocation and general principles related to set-offs for settled insurers. *See, e.g.*, *Squibb*, 241 F.3d at 173 (citing *Koppers* in holding that proper set-off was for settling insurers' pro rata shares rather than settlement amounts because risks and benefits of settlement should accrue to settling parties); *U.S. Fid. & Guar. Co. v. Treadwell Corp.*, 58 F. Supp. 2d 77, 96–97 (S.D.N.Y. 1999) (citing *Koppers* in explaining that front-end all sums and pro rata allocation results in same net liability for selected insurer once contribution is accounted for). *Koppers* is thus not only valid law but also of particular relevance to New York courts.

### III. Lamorak's Methods Of Calculating Options 1 And 2 Are The Only Ones Consistent With New York Law And The Facts Of This Case

The Court should calculate a pro rata set-off according to a time on the risk method because New York courts have applied this method in the long-tail context and it appropriately accounts for the risks assumed by insurers, namely (1) the amount of exposure, as reflected in

---

court for misconduct during discovery and settlement negotiations, but noting that "a setoff may be applied in an appropriate case").

[14] Olin also claims that notes the Pennsylvania Supreme Court has disapproved of other portions of *Koppers* unrelated to its holding on pro rata set-off. This is irrelevant and in any case the case Olin cites does not say what Olin claims. Instead, that case expressly states that the rule at issue was *not* contrary to *Koppers*. *See Penn. Nat. Mut. Cas. Ins. Co. v. St. John*, 106 A.3d 1, 38–39 (Pa. 2014) ("*Koppers Co., Inc.* addressed a different issue regarding joint and several liability of insurers whose policies were triggered by an indivisible loss.").

8

policy limits, and (2) the risk that coverage will be triggered, as reflected in the policy period. Both risks are relevant because both factor into the size of the policyholder's premiums. *See* Lamorak Opp'n Br. 12–13. Although calculating a pro rata set-off according to a limits-ratio set-off is less equitable because it ignores the duration of coverage that the insurer signed up to provide and for which it received premiums, it is nonetheless a viable alternative under New York law. *Id.* at 15–16. It is also consistent with the method applied in the *Koppers* case on remand. *Id.* (citing *Koppers Co. by Beazer East v. Certain Underwriters at Lloyd's*, Civ. No. 85-2136, 1997 U.S. Dist. LEXIS 16123, at *16–*17 (W.D. Pa. June 23, 1997)).

Olin claims that its own pro rata by limits approach is consistent with the approach taken by the *Koppers* trial court on remand. In fact, Olin's approach looks nothing like that court's because Olin's is based on Condition C, which has no application in the back-end apportionment of liability among insurers and, as Olin itself claims, did not play a role in *Koppers*. Nor does Olin apply Condition C appropriately in creating the coverage towers that form the basis of its calculation. *Id.* at 17–18. In any case, Olin's calculation of a similar limits-ratio method comes to materially the same judgment reduction dollar figure as Lamorak's. *Id.* at 16.

For the reasons set forth in Lamorak's briefs pursuant to the Court's Feb. 28 Order, if this Court chooses to apply a set-off following Option 2, only Lamorak's proposed approach properly accounts for the released policies. Option 2 requires the determination of the percentage of released policy limits that is comprised by Five Sites policy limits. Lamorak does just that by multiplying the cash settlement by the limits applicable to the Five Sites divided by the sum of the total policy limits. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[15] Lamorak

---

[15] Olin claims that its second Option 2 proposal ▮▮▮▮▮ is the same as Lamorak's. This is wrong. Lamorak's method follows the Court's directive, while Olin's method departs from it

9

Opening Br. 15, Mar. 6, 2018, Doc. No. 2150.  Finally, Olin's methods of calculating Option 2 are flawed, do not comport with the Court's February 28 order, and invite gaming.

## IV.     Policies Underlying New York General Obligations Law Section 15-108 Apply Here

For the reasons set forth in Lamorak's prior briefing, the Court should apply the greater of the reduction calculations under Options 1 and 2, based on policies underlying General Obligations Law § 15-108, which apply equally here.  Olin asks the Court to ignore those policies, despite advocating for § 15-108 in a prior brief before this Court:  "Although § 15-108 speaks in terms of joint tortfeasors, the policy underlying that section applies with equal force in other contexts."  Olin Opp'n Lamorak Mot. Leave 8 n.2, Sept. 29, 2017, Doc. No. 1994.  Further, Olin endorsed Continental's motion to dismiss Lamorak's contribution claims in state court, which relied on § 15-108 to argue that contribution was improper because Lamorak was entitled to seek "something else"—a set-off.  *See* 2/14/18 Hr'g Tr. 46:1–15, Doc. No. 2146.[16]

## CONCLUSION

For the foregoing reasons, Lamorak's summary judgment motion should be granted and, at a minimum, the judgment against Lamorak reduced by the pro rata shares of the settled insurers.

---

by multiplying the fraction's denominator by the total number of sites, drastically reducing the setoff value.

[16] Moreover, contrary to Olin's assertion, an equitable share under § 15-108 *is* a pro rata share. *See Hager v. Hutchins*, 398 N.Y.S.2d 316 (Orange Cnty. 1977) (using "equitable share" and "pro rata share" interchangeably), and *Williams v. Niske*, 615 N.E.2d 1003 (N.Y. 1993), does not support Olin's position but rather explains that the Legislature's priority with respect to § 15-108 to prevent a defendant from paying more than its pro rata share, not making whole a plaintiff who had chosen to settle for a lesser amount.

10

Dated: New York, New York
March 16, 2018

    Respectfully submitted,

    SIMPSON THACHER & BARTLETT LLP

    By:   /s/ *Susannah S. Geltman*
         Bryce L. Friedman  (BF9108)
         Susannah S. Geltman  (SG2243)
         425 Lexington Avenue
         New York, New York 10017-3954
         Tel.: (212) 455-2000
         Fax: (212) 455-2502
         Email: bfriedman@stblaw.com
               sgeltman@stblaw.com

    KENNEDYS CMK, LLP

        Ralph J. Luongo (RL1342)
        Elaine Whiteman Klinger (EW9967)
        Bradley J. Mortensen (BM6153)
        Two Liberty Place
        50 South 16th Street, Suite 2625
        Philadelphia, PA 19102
        Tel.: (267) 479-6700
        Fax: (267) 479-6710
        Email: Ralph.Luongo@Kennedyscmk.com
             Elaine.Klinger@Kennedyscmk.com
             Bradley.Mortensen@Kennedyscmk.com

        and: 570 Lexington Avenue, 8th Floor
        New York, NY 10022
        Tel.: (646) 625-4000
        Fax: (646) 625-4044

*Attorneys for Lamorak Insurance Company*