UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------- x
OLIN CORPORATION,                   :
                                    :   84-cv-1968 (JSR)
        Plaintiff,                  :
                                    :
        -v-                         :   MEMORANDUM ORDER AND
                                    :   JUDGMENT
LAMORAK INSURANCE COMPANY,          :
                                    :
        Defendant.                  :
---------------------------------- x

JED S. RAKOFF, U.S.D.J.

        In an Opinion and Order dated February 4, 2021 (the "Opinion
and Order"), the Court granted in part the motion of plaintiff
Olin Corporation ("Olin") for summary judgment on the Crab Orchard
costs in the amount of $25,177,789 plus prejudgment interest. Dkt.
No. 2458 at 53. The Court ordered the parties to submit "a written
statement of how much prejudgment interest would be added were the
Court to enter judgment on the Crab Orchard site as of February
12, 2021, on which date the Court will enter judgment and close
the case." Id. Now before the Court are the parties' written
statements on prejudgment interest. Also before the Court is the
motion of defendant Lamorak Insurance Company ("Lamorak") for
partial reconsideration of the Opinion and Order.

        The Court first determines the amount of prejudgment interest
and total judgment to which Olin would be entitled under the
Opinion and Order, before addressing Lamorak's motion for partial

reconsideration. Olin states that prejudgment interest should be awarded in the amount of $25,571,531 for a total judgment of $50,749,320. See Plaintiff Olin Corporation's Corrected Statement of Prejudgment Interest ("Olin Statement"), Dkt. No. 2462, at 3. Lamorak states that, assuming the Court were to deny its motion for partial reconsideration, prejudgment interest should be awarded in the amount of $24,785,399 for a total judgment of $49,963,188. See Lamorak Insurance Company's Statement Calculating Prejudgment Interest and Memorandum Supporting its Motion for Reconsideration of the Court's February 4, 2021 Rulings Affecting that Calculation ("Lamorak Mem."), Dkt. No. 2461, at 1; Supplemental Report of Marc C. Scarcella, M.A. ("Scarcella Supp."), Dkt. No. 2461-1, ¶ 10.

The parties' respective calculations differ by $786,132. This difference appears to reflect a disagreement between the parties as to whether Lamorak must pay the prejudgment interest that accrued on the $1,289,338 of Olin's past Crab Orchard costs that were released in the 2018 Settlement. Olin's expert previously estimated that this disagreement led the parties to prejudgment interest calculations that differed by "approximately $786,000." See Declaration of Craig C. Martin in Support of Olin Corporation's Motion for Summary Judgment, Dkt. No. 2414, Ex. 141, at 6. Olin argues that Lamorak must cover the prejudgment interest

obligations on those costs during the roughly 13 years prior to the 2018 Settlement.

The Court disagrees with Olin and adopts Lamorak's methodology that excludes these costs from the prejudgment interest calculation. Olin's approach effectively assumes that the 2018 Settlement carved out prejudgment interest on Olin's past Crab Orchard costs. But Olin points to no such carve out in the 2018 Settlement. If Olin felt it were entitled to prejudgment interest on those costs, it could have bargained for them in the 2018 Settlement. Accordingly, before addressing Lamorak's motion for reconsideration, the Court holds that Olin's prejudgment interest should be awarded in the amount of $24,785,399 for a total judgment of $49,963,188.

As mentioned, however, along with its statement on prejudgment interest, Lamorak filed a motion for reconsideration of three elements of the Court's Opinion and Order, which, according to Lamorak, "directly affect how prejudgment interest is calculated." Lamorak Mem. at 1. The standard for granting such a motion "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp. Inc., 70 F.3d 255, 257 (2d Cir.

1995). This strict standard is intended to "ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." Carolco Pictures Inc. v. Sirota, 700 F. Supp. 169, 170 (S.D.N.Y. 1988). Accordingly, "[a] motion for reconsideration should be granted only when the [moving party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr., 729 F.3d 99, 104 (2d Cir. 2013).

First, Lamorak asks the Court to reconsider its holding that that "prejudgment interest will run from the date each invoice was paid." Opinion and Order at 42. Lamorak argues that, even if, as this Court previously held, Lamorak breached its policy obligations to Olin in the 1990's, Lamorak was not aware of, let alone presented with, the GD-OTS costs before 2018. Id. at 2. Lamorak argues that, in starting prejudgment interest at the date each invoice was paid, the Court's holding "constitutes a finding that had Olin or GD-OTS made a claim for GD-OTS' Crab Orchard liabilities and costs sometime prior to trial, Lamorak would have 'breached and repudiated' its policy obligations." Id. Lamorak argues that, in so ruling, the Court overlooked the Second

Circuit's controlling holding that, although the policies "do[] not require Olin to submit a 'definite claim' along with a 'sum certain' of such claim," they still require "a definite claim along with a description of the insurer's potential liability with respect to that claim." Olin Corp. v. OneBeacon Am. Ins. Co. ("Olin IV"), 864 F.3d 130, 152 (2d Cir. 2017).

The Court disagrees with Lamorak's argument and reaffirms the holding of the Opinion and Order. There, the Court observed that "Lamorak breached and repudiated its policy obligations for Olin's Crab Orchard site claim in the 1990's by failing to respond to Olin's timely notice letter and disclaiming coverage. That the policies were thereafter assigned to GD-OTS does not undo Lamorak's breach." Opinion and Order at 42 (citation omitted). Implicit in the Court's holding is that Olin's notice letter of Lamorak's potential liability with respect to the Crab Orchard site satisfied Olin IV's notice requirement -- even if, as here, the identity of the policies' holder has changed. It is clear that if Olin had not assigned the policies to GD-OTS, and instead had incurred the costs itself, prejudgment interest would run from the date each invoice was paid. The assignment from Olin to GD-OTS -- after the insured-against loss has already occurred and after Lamorak has already breached its obligations with respect to that loss -- does not

require Olin or GD-OTS to make a new claim for the Crab Orchard site.

Next, Lamorak asks the Court to reconsider its holding that "hopscotching between policy towers is permissible." Opinion and Order at 46. Lamorak directs the Court -- for the first time -- to particular policy language that, Lamorak contends, precludes hopscotching between policy towers. Specifically, Lamorak points to the Loss Payable Condition, which provides, in relevant part, that:

> Liability under this policy with respect to any occurrence shall not attach unless and until the Assured, or the Assured's underlying insurer, shall have paid the amount of the underlying limits on account of such occurrence. The Assured shall make a definite claim for any loss for which the Underwriters may be liable under the policy within twelve (12) months after the Assured shall have paid an amount of ultimate net loss in excess of the amount borne by the Assured . . . .

Martin Support Decl. Ex. 10, at 10. Lamorak contends that allowing hopscotching conflicts with the Loss Payable Condition's requirement that either the Assured or the Assured's underlying insurer pay "the amount of the underlying limits on account of such occurrence." Lamorak Mem. at 6. That is because hopscotching would enable Olin to "(i) pay the amount of the underlying limits (here $20.3 million), (ii) be reimbursed by Lamorak for that sum under the 1970s tower policies, and then (iii) use that same amount to trigger the 1965 tower policy, despite having been reimbursed

by Lamorak." Id. Lamorak also seeks to distinguish -- again for the first time -- the Kaiser Aluminum opinions cited by the Court on the ground that those opinions do not address language like that contained in the Loss Payable Condition. Id. at 6. n.4.

As a threshold matter, motions for reconsideration do not allow a losing party to "examin[e] a decision and then plug[] the gaps of a lost motion with additional matters." Carolco Pictures, 700 F. Supp. at 170. Lamorak had every opportunity to make these points in the voluminous briefing at the summary judgment stage. Instead, Lamorak generally argued that hopscotching would violate "Insurance 101" and was without support in the "policy language or the law." See Lamorak Insurance Company's Brief in Opposition to Olin Corporation's Motion for Summary Judgment on the Crab Orchard Site, Dkt. No. 2435, at 24-25. Nor did Lamorak address the Kaiser Aluminum opinions, both of which were cited in Olin's moving papers. See Memorandum of Law in Support of Olin Corporation's Motion for Summary Judgment ("Olin Mem."), Dkt. No. 2412, at 18.

In any event, the Loss Payable Condition does not change the Court's analysis. Under a hopscotching allocation, as Lamorak recognizes, the insured must still, at least initially, pay the underlying amount. That is enough to satisfy the Loss Payable Condition, even if it is the insurer, rather than the insured, who ultimately might be on the hook for the underlying amount. Cf.

Kaiser Aluminum & Chem. Corp. v. Certain Underwriters at Lloyd, No. 312415, Decision on Group IIA Trial Issues, at 9 (Cal. Super. Ct., S.F. Cnty., June 13, 2003) (explaining that "the excess insurer is not prejudiced where underlying amounts are paid by other than vertically underlying sources").

Finally, Lamorak asks the Court to rule on whether $3.6 million paid by GD-OTS to the United States Fish and Wildlife Service (the "FWS") in stipulated penalties for certain alleged violations of the AOC is indemnifiable under the policies.[1] Lamorak contends that the $3.6 million cost is not recoverable for either of two reasons: (1) it is not covered under Lamorak's policies because it is "not property damage"; and (2) it is "uninsurable as a matter of public policy." Lamorak Mem. at 5 n.3. Olin disagrees on both counts. See Plaintiff Olin Corporation's Response to Lamorak's Argument Regarding the Recoverability of GD-OTS' $3.6 Million Payment to the U.S. Fish and Wildlife Service ("Olin Opp."), Dkt. No. 2463. The Court holds that the cost is not covered under the policies and declines to reach whether they are uninsurable as a matter of public policy.

---

[1]     Because Olin and GD-OTS have incurred more than $3.6 million in excess of the policy limits, this cost has no effect on Lamorak's liability for the full amount of its policy limits: $25,177,789. But it affects the timing of when Olin incurred certain costs and therefore the amount of prejudgment interest owed to Olin.

The operative question is whether civil penalties paid by the insured are covered under the "all sums" provision found in the policies. As discussed in the Opinion and Order, the policies require Lamorak to cover "all sums" the insured becomes obligated to pay for the "ultimate net loss" that the insured incurs on account of property damage "caused by or arising out of" a covered occurrence, including "all sums paid . . . for litigation, settlement, adjustment and investigation of claims and suits which are paid as a consequence of any occurrence covered." Opinion and Order at 36.

Lamorak cites to R & D Maidman Family L.P. v. Scottsdale Ins. Co., 783 N.Y.2d 205, 214-215 (Sup. Ct. 2004) for the proposition that "fines for violations are not damages in this context." In that case, "plaintiffs had begun demolition on property they owned. After a brick or piece of masonry was dislodged and fell onto an adjoining roof, the New York City Department of Buildings ["DOB"] issued notices of violation. In order to cure the condition, the plaintiffs erected a sidewalk bridge, scaffolding and net meshing, and then filed a claim with their insurer to recover the costs expended on their property to mitigate or prevent future damage." Castle Village Owners Corp. v. Greater New York Mut. Ins. Co., 878 N.Y.S.2d 311, 315-16 (1st Dep't 2009) (discussing R&D Maidman). The court held that the "notices of violation did not give rise to

a legal obligation to bear the costs for remedial work that would trigger the indemnification provisions of the commercial general liability policy issued to the plaintiffs." Id. at 316. The reason why these notices of violation were insufficient was because "any failure of plaintiffs to remedy the violations would not result in liability for remedial costs either imposed by the DOB or as a result of any proceeding by DOB, but instead, would result in a fine. R&D Maidman, 783 N.Y.2d at 214. The court explained that "[u]nlike 'response costs' for which indemnification is often sought in environmental pollution cases, fines for violations are not damages in this context." Id. at 214-15.[2]

Olin attempts to distinguish R&D Maidman in three ways, but none is persuasive. Olin first argues that the policies at issue in that case did not provide for "all sums" coverage. Olin Opp. at 2 n.3. While that might be true, R&D Maidman itself relies on cases holding that even policies with "all sums" coverage do not cover civil penalties. For example, R&D Maidman cites for support to A.Y. McDonald Industries, Inc. v. Insurance Co. of North America, 475 N.W.2d 607, 626 (Iowa 1991). In that case, the Supreme Court of Iowa explained that a "civil penalty . . . imposed because of

---

[2]     The court subsequently reversed itself on other grounds. See Castle Village, 878 N.Y.S.2d at 316; R&D Madman Family L.P. v. Scottsdale Ins. Co., 2004 WL 5707880 (Sup. Ct. Sept. 24, 2004).

[the insured's] failure to comply with notification, permit, and groundwater monitoring regulations under [federal law] . . . is far different from government mandated response costs resulting from property damage." Accordingly, the court held that "the term 'damages' under the . . . policies [which contained an "all sums" provision] does not include the civil penalty imposed." See also Independent Petrochemical Corp. v. Aetna Casualty and Surety Co., 944 F.2d 940, 947 (D.C. Cir. 1991) (explaining that, unlike response costs, a civil penalty "is not understood to be dollar-for-dollar recompense").

Olin's second and third arguments are non-sequiturs. It contends that the plaintiffs in R&D Maidman did not face the "immediate threat of action to enforce remedial action" and that the notices of violation allowing for fines "were not sufficiently adversarial to require plaintiff to incur remedial costs." Olin Opp. at 2 n.3. But the reason why the plaintiffs in R&D Maidman were not faced with remedial action is because the notices of violation threatened only fines, not remedial costs. 878 N.Y.S.2d at 214-15. In other words, Olin is simply restating the reason why fines are not covered under the policies in the first place.

Olin also cites for support to Ispat Inland Inc. v. Kemper Env't, Ltd., 2009 WL 4030858, at *8 (S.D.N.Y. Nov. 20, 2009). That case, however, is distinguishable. In holding that the policies

-11-

might cover "fines or penalties," the court made an inference from the fact that "[a]n endorsement attached to the Policy removed a clause originally in the Policy that excluded coverage for sums incurred due to 'civil, administrative or criminal fines or penalties, assessments, punitive, exemplary or multiplied damages, or non-pecuniary relief.'" Id. No such negative inference is available here.

Finally, Olin points out that the stipulation between GD-OTS and the FWS provides that it does not "represent any admission of violation of the AOC." Olin Opp. at 2 (quoting Stipulation and Agreement Regarding the Assessment and Payment of Certain Stipulated Penalties, Dkt. 2414-50, ¶ 4). That is correct, but irrelevant to the question at hand.[3] The stipulation calls the payments "stipulated penalties." And, for the reasons already discussed, such penalties are not covered under the policies.

Accordingly, the Court holds that the 3.6 million paid by GD-OTS to the FWS in stipulated penalties is not covered under the

---

[3]     That GD-OTS did not admit to violating the AOC might be relevant to the question whether the penalties are independently uninsurable as a matter of public policy. See La. Generating LLC v. Ill. Union Ins. Co., 2014 WL 12769615, at *4 (M.D. La. Sept. 30, 2014) (applying New York law and distinguishing between punitive and non-punitive penalties). Because the Court holds that the stipulated penalties are not covered under the policies, however, the Court does not reach the question whether they are also uninsurable as a matter of public policy.

-12-

policies. Lamorak's expert concludes that removing the $3.6 million cost reduces prejudgment interest from $24,785,399 to $24,169,014. <u>See</u> Scarcella Supp. ¶ 10.[4] Therefore, Olin is entitled to prejudgment interest in the amount of $24,169,014.

* * * * *

For the foregoing reasons, Lamorak's motion for reconsideration is denied in part and granted in part, and prejudgment interest is awarded to Olin in the amount of $24,169,014. Judgment is therefore hereby entered requiring Lamorak to promptly pay Olin the sum of $49,346,803. The Clerk of the Court is directed to close the entry at docket number 2460 and to close the case.

SO ORDERED.

Dated:    New York, NY

February 12, 2021                           _____
                                            JED S. RAKOFF, U.S.D.J.

---

[4]    By Olin's calculation, removing the $3.6 million cost would reduce prejudgment interest from $25,571,531 to $24,913,377. Olin Opp. at 1 n.2. For the reasons discussed above, however, the Court adopts Lamorak's approach to calculating prejudgment interest.